Oral Argument Not Yet Scheduled
**Nos. 20-5106/5129**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

M.M.V. et al**,**
*Plaintiffs-Appellants,*
v.
WILLIAM P. BARR, et al**,**
*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
Case No. 1:19-cv-02773-ABJ
The Honorable Amy Berman Jackson

## BRIEF OF PLAINTIFFS-APPELLANTS M.M.V. ET AL.

RAPID DEFENSE NETWORK

Gregory P. Copeland
Sarah T. Gillman
Rapid Defense Network
11 Broadway, Suite 615
New York, NY 10004

GREENBERG TRAURIG LLP

Steven G. Barringer
2101 L. Street, N.W.
Washington, D.C. 20037

Caroline J. Heller
200 Park Ave.
New York, New York 10166

James E. Gillenwater
333 SE 2nd Avenue, #4400
Miami, FL 33131

*Attorneys for Plaintiffs-Appellants*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), counsel for Plaintiffs makes the following certification:

**(A) Parties.** Plaintiffs-Appellants in this case, listed pseudonymously in the Notice of Appeal, include: A.A.M., A.A.Q., A.B.C., A.G.D., A.G.H., A.G.L., A.L.V., A.O.V., A.P.O, A.R.A., A.R.G., A.R.M., B.S.C., C.A.A., C.C.N., C.G.M., C.L.A., C.P.G., C.S.M., D.C.V., D.G.A., D.L.O., D.M.S., E.A.N., E.C.B., E.E.C., E.M.R., E.P.C., E.P.G., E.P.V., F.G.U., G.A.Q., G.M.A., H.C.P., H.J.J., I.A.D., I.F.L., I.G.L., I.P.P., J.A.L., J.C.P., J.F.P., J.M.H., J.M.R., J.S.M., J.S.O., J.S.P., K.N.E., K.P.P., L.C.R., L.H.H., L.O.R., M.A.A., M.A.M., M.A.S., M.B.P., M.C.D., M.C.M., M.D.E., M.F.L., M.G.V., M.H., M.J.V., M.M.B., M.M.V., M.P.G., M.P.P., M.R.A., M.R.A., N.A.Q., N.M.L., N.M.M., N.P., R.D.P., R.F.L., R.P.F., S.G.H., S.L.V., S.M.C., S.V.C., V.L.O., W.P.R., Y.F.H., Y.O.T. and Y.U. Defendants-Appellees are William P. Barr, the Attorney General of the United States; James McHenry, the Director of the Executive Office for Immigration Review; Chad F. Wolf, the Acting Secretary of the Department of Homeland Security; Matthew T. Albence, the Acting Director of Immigrations and Customs Enforcement; Mark Morgan, the Acting Commissioner of Customs and Border Protection; Kenneth T. Cuccinelli, the Senior Official Performing the Duties of the Director of USCIS; and Andrew Davidson, the Acting USCIS Asylum Division Chief.

**(B)** **Ruling Under Review.** The ruling at issue in this appeal is the April 27, 2020 Order and accompanying Memorandum Opinion, docket numbers 96 and 97 in Civ. No. 19-2773, issued by the Honorable Amy Berman Jackson of the United States District Court for the District of Columbia granting Defendants' partial motion to dismiss Plaintiffs' Second Amended Complaint. The Memorandum Opinion is included in the appendix at Apx.469-512.

**(C)** **Related Cases.** This case has not previously been before this Court or any other court for appellate review. Plaintiffs are unaware of any related case involving substantially the same parties and the same or similar issues.

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION..................................................................1

    I.     Subject Matter Jurisdiction in the District Court. ....................................1

    II.    Jurisdiction in this Court. ........................................................................2

    III.   Timely Notice of Appeal of Final Judgment............................................2

STATEMENT OF ISSUES PRESENTED FOR REVIEW ....................................4

STATUTES AND REGULATIONS INVOLVED ...............................................6

STATEMENT OF THE CASE.........................................................................6

    I.     Introduction ...........................................................................................6

    II.    Prior Expedited Removal and Credible Fear Process .............................9

    III.   Creation and Effectuation of the Challenged Actions............................12

    IV.   Procedural History................................................................................15

    V.    Disposition Below ................................................................................18

    VI.   The Memorandum Opinion ...................................................................19

SUMMARY OF ARGUMENT .......................................................................21

    I.     The District Court's Incorrect Application of Section 1252(a)(2)(A) .....21

    II.    The District Court's Incorrect Application of Section 1252(e)(3)...........24

STANDARD OF REVIEW .............................................................................26

    I.     There is a Presumption of Judicial Review of Plaintiffs' Claims............26

    II.    Plaintiffs Assert a Distinct, Retaliation-Based First Amendment Claim.28

    III.   The Court Has Jurisdiction Over Plaintiffs' Fourth Claim for Violations
         of the APA. ..........................................................................................31

    IV.   Plaintiffs' Remaining Claims are Not Barred By 8 U.S.C. §
         1252(a)(2)(A)(iv)..................................................................................34

         A.    The Unwritten Challenged Actions Could Not Have Been Adopted
             As Required for Section 1252(a)(2)(A)(iv) to Apply. ...................34

         B.    The District Court Erred by Failing to Address that a Bar of
             Judicial Review of the Unwritten Challenged Actions Is
             Unconstitutional. ..........................................................................38

C. Defendant Cuccinelli Lacked the Authority to "Adopt" the Challenged Actions As Required Under 8 U.S.C. § 1252(a)(2)(A)(iv). ..............................................41

V. 8 U.S.C. § 1252(e)(3) Supplies Jurisdiction for All of Plaintiffs' Claims. ..............................................45

    A. The Court Erred by Barring Later-Joined Plaintiffs' Claims as to Challenged Action No. 9. ..............................................46

    B. Plaintiffs' Claims Are Timely. ..............................................49

        1. Equitable Tolling Applies ..............................................49

        2. Plaintiffs' Claims Were Brought Within 60 Days ....51

    C. Plaintiffs Have Identified Written Policies. ..............................................54

CONCLUSION ..............................................56

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*32BJ N. Pension Fund v. Nutrition Mgmt. Servs. Co.*,
935 F.3d 93 (2d Cir. 2019) ...........................................................................34

*Am. Nat. Ins. Co. v. Fed. Deposit Ins. Co.*,
642 F.3d 1137 (D.C. Cir. 2011) ...................................................................26

*Andrx Pharm., Inc. v. Biovail Corp. Int'l*,
256 F.3d 799 (D.C. Cir. 2001) .....................................................................31

*Aracely v. Nielsen*,
319 F. Supp. 3d 110 (D.D.C. 2018) ..............................................................56

*Aref v. Holder*,
774 F. Supp. 2d 147 (D.D.C. 2011) ..............................................................28

*Bd. of Governors of the Fed. Reserve Sys. v. MCorp. Fin., Inc.*,
502 U.S. 32 (1991) ........................................................................................27

*Bill Johnson's Restaurants, Inc. v. N.L.R.B.*,
461 U.S. 731 (1983) ......................................................................................29

*Borough of Duryea, Pa. v. Guarnieri*,
564 U.S. 379 (2011) ......................................................................................29

*Bowsher v. Synar*,
478 U.S. 714 (1986) ......................................................................................47

*Brown v. Cox*,
387 P.3d 1040 (Utah 2017) ...........................................................................35

*Clinton v. City of New York*,
524 U.S. 417 (1998) ......................................................................................47

*Crawford-El v. Britton*,
93 F.3d 813 (D.C. Cir. 1996), *rev'd on other grounds*, 523 U.S.
574 (1998) ....................................................................................................29

*Crowell v. Benson*,
285 U.S. 22 (1932)...................................................................39

*Disparte v. Corporate Executive Bd.*,
223 F.R.D. 7 (D.D.C. 2004)....................................................48

*E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*,
950 F.3d 177 (3d Cir. 2020) (per curiam) ...............................8

*\*Grace v. Whitaker*,
344 F. Supp. 3d 96 (D.D.C. 2018)......................11, 15, 49, 53

*\*Guerrero-Lasprilla v. Barr*,
140 S. Ct. 1062 (2020)..............................................26, 27, 36

*Herbert v. Nat'l Acad. of Scis.*,
974 F.2d 192 (D.C. Cir. 1992).................................................55

*INS v. Cardoza-Fonseca*,
480 U.S. 421 (1987)................................................................11

*INS v. St. Cyr*,
533 U.S. 289 (2001)................................................................26

*Jafarzadeh v. Duke*,
270 F. Supp. 3d 296 (D.D.C. 2017)..................................40, 41

*Khan v. Holder*,
608 F.3d 325 (7th Cir. 2010) ..................................................38

*United States ex rel. Knauff v. Shaughnessy*,
338 U.S. 537 (1950)................................................................40

*\*L.M.-M. v. Cuccinelli*,
No. 19-cv-2676, 2020 WL 1905063 (D.D.C. Apr. 16, 2020) ............................43

*\*L.M.-M. v. Cuccinelli*,
No. 19-cv-2676, 2020 WL 985376 (D.D.C. Mar. 1, 2020)..............37, 42, 43, 44

*Laird v. Tatum*,
408 U.S. 1 (1972)....................................................................30

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)............................................................27

*Make the Rd. New York v. McAleenan*,
405 F. Supp. 3d 1 (D.D.C. 2019)..............................33, 50, 51, 52

*McNary v. Haitian Refugee Center, Inc.*,
498 U.S. 479, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991) ..............26, 27

*Mirabella v. Villard*,
853 F.3d 641 (3d Cir. 2017) .....................................29

*Mons v. McAleenan*,
No. 19-cv-1593, 2019 WL 4225322 (D.D.C. Sept. 5, 2019) ............33, 40

*Nat'l Air Traffic Controllers Ass'n, AFL-CIO v. Fed. Serv. Impasses
Panel*,
606 F.3d 780 (D.C. Cir. 2010).....................................26

*National Credit Union Admin. v. First Nat'l Bank & Trust Co.*,
522 U.S. 479 ...................................................8, 35

*O.A. v. Trump*,
404 F. Supp. 3d 109 (D.D.C. 2019).............................47, 48, 52

*Padilla v. ICE*,
2019 WL 7486849 (W.D. Wash. Feb. 12, 2019).....................34, 52

*Perry v. Sindermann*,
408 U.S. 593 (1972)............................................29, 30

*Pub. Emps. Benefits Program v. Las Vegas Metro. Police Dep't*,
179 P.3d 542 (Nev. 2008).......................................35

*Ragbir v. Homan*,
923 F.3d 53 (2d Cir. 2019) .......................................29

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*,
547 U.S. 47 (2006)..............................................47

*Sec'y of the Interior v. California*,
464 U.S. 312 (1984).............................................47

*United States v. Kwai Fun Wong*,
575 U.S. 402 (2015)..................................................24, 49, 50, 51

*Wilkie v. Robbins*,
551 U.S. 537 (2007)..................................................................29

**Constitutions**

U.S. Const. amend. I ...................................... 4, 17, 20, 21, 28, 29, 30, 31

U.S. Const. amend. V ..................................................................17

U.S. Const. Article I, § 8, cl. 4 .........................................................38

U.S. Const. Article III, § 1 .............................................................39

U.S. Const. Article III, § 2 .............................................................39

**Statutes**

5 U.S.C. § 551(4) .....................................................................32

5 U.S.C. § 553(b) ..................................................................31, 32

5 U.S.C. § 553(c) ..................................................................31, 32

5 U.S.C. § 553(d) .....................................................................32

5 U.S.C. § 553(d) .....................................................................32

5 U.S.C. § 701 *et seq.*..................................................................1

5 U.S.C. § 706(2)(D)..................................................................32

5 U.S.C. § 3348(d)(1)..................................................................44

6 U.S.C. § 271(b)(3)...................................................................42

6 U.S.C. § 275(a)(1)...................................................................42

6 U.S.C. § 557.........................................................................42

8 U.S.C. § 1224(b)(1)(B)...............................................................9

8 U.S.C. § 1225(b)(1)(A)(i)............................................................9

8 U.S.C. § 1225(b)(1)(B)(ii) ...................................................................9, 11

8 U.S.C. § 1225(b)(1)(B)(iii)(II) ...............................................................11

8 U.S.C. § 1225(b)(1)(B)(iii)(III) ...............................................................12

8 U.S.C. § 1225(b)(1)(B)(iv) .................................................................10, 15

8 U.S.C. § 1225(b)(1)(B)(v) .......................................................................11

8 U.S.C. § 1225(b)(1)(E) .............................................................................9

8 U.S.C. § 1225(b)(1)(E)(ii) .......................................................................12

8 U.S.C. § 1225(e) .....................................................................................15

8 U.S.C. § 1231 ......................................................................................1, 15

8 U.S.C § 1252(a)(2)(A) ................................... 2, 4, 7, 8, 9, 21, 33, 34, 38

8 U.S.C. § 1252(a)(2)(A)(i)-(iv) ..................................................................32

8 U.S.C. § 1252(a)(2)(A)(iv) ................... 4, 5, 19, 21, 22, 23, 28, 31, 32, 34, 35, 36, 41, 42, 44, 45

8 U.S.C. § 1252(e)(3) .............. 2, 5, 18, 20, 23, 24, 35, 36, 45, 46, 47, 49, 50, 51, 53

8 U.S.C. § 1252(e)(3)(A)(ii) ..................................................................36, 37

8 U.S.C. § 1252(e)(3)(B) ...........................................................................37

28 U.S.C. § 1291 .........................................................................................2

28 U.S.C. § 1331 ............................................... 1, 22, 23, 25, 27, 33, 54

28 U.S.C. § 1346 .........................................................................................1

28 U.S.C. §§ 2201–2202 ............................................................................1

Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. No. 105-277, div. G, Title XXII, § 2242, 112 Stat. 2681, 2681-822 (1998) ...................................................................................................1

Homeland Security Act of 2002, Pub. L. 107-296, § 451(b)(3), 116 Stat. 2135, 2196 (2002) .............................................................................42

**Court Rules**

Fed. R. Civ. P. 12(b)(1)..................................................................26, 53, 54, 55

Fed. R. Civ. P. 54(b) ...........................................................................2, 19, 43

**Regulations**

8 C.F.R. § 208.1 ....................................................................................10, 15

8 C.F.R. § 208.2(a)......................................................................................10

8 C.F.R. § 208.9(d) .....................................................................................10

8 C.F.R. § 208.30(d) ..............................................................................10, 15

8 C.F.R. § 208.30(d) .....................................................................................15

8 C.F.R. § 208.30(d)(2)................................................................................15

8 C.F.R. § 208.30(e)(1) ...............................................................................15

8 C.F.R. §§ 208.30(e)(2)-(4)........................................................................12

8 C.F.R. § 208.30(e)(4) ...............................................................................10

8 C.F.R. § 208.30(e)(7) ...............................................................................15

8 C.F.R. § 208.30(e)(8) ...............................................................................11

8 C.F.R. § 208.30(f) ..................................................................................9, 11

8 C.F.R. § 208.30(g)(1)................................................................................12

8 C.F.R. § 208.30(g)(2)................................................................................12

8 C.F.R. § 208.31(c).....................................................................................13

8 C.F.R. § 235.3(b)(2)..................................................................................15

8 C.F.R. § 235.3(b)(4), 208.30(d)(2) ...........................................................15

8 C.F.R. § 235.3(b)(7)..................................................................................15

8 C.F.R. § 1208.30(g)(2)(iv)(A) ..................................................................12

84 Fed. Reg. 33,829 (July 16, 2019)..........................................................................1

84 Fed. Reg. 33,837 ....................................................................................12, 13

**Other Authorities**

Merriam-Webster's Collegiate Dictionary 16 (10th ed. 1999)...............................34

Merriam-Webster's Collegiate Dictionary 624 (11th ed. 2003) .............................52

Oxford English Dictionary, Second Edition, J.A. Simpson & E.S.C.
    Weiner, Volume XIII, Carendon Pess – Oxford, 1989, p. 525 ..........................37

# GLOSSARY OF ABBREVIATIONS

APA ........................................................................ Administrative Procedure Act

Apx .............................................................................................. Appendix

CAT .......................................................................... Convention Against Torture

CFI .............................................................................. Credible Fear Interview

ECF .................................................................. Docket Entry for the District Court

FVRA ...................................................................... Federal Vacancies Reform Act

INA ..................................................................... Immigration and Nationality Act

RFI ............................................................................ Reasonable Fear Interview

SAC ........................................................................... Second Amended Complaint

Transit Ban ......................................... Asylum Eligibility and Procedural Modifications

USCIS ..................................................... U.S. Citizenship and Immigration Services

# STATEMENT OF JURISDICTION

## I. Subject Matter Jurisdiction in the District Court.

This case arises under the United States Constitution; the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 553, 701 *et seq.*; the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.* and its implementing regulations; and the Convention Against Torture ("CAT"), *see* Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. No. 105-277, div. G, Title XXII, § 2242, 112 Stat. 2681, 2681-822 (1998) (codified as Note to 8 U.S.C. § 1231).

The District Court has jurisdiction pursuant to 28 U.S.C. § 1331, based upon federal question jurisdiction with a waiver of sovereign immunity pursuant to the APA, 5 U.S.C. §701 *et seq.* and 28 U.S.C. § 1346 (United States as defendant). Plaintiffs-Appellants (hereinafter, "Plaintiffs") allege violations of the First and Fifth Amendments of the United States Constitution. Plaintiffs also challenge the lawfulness of regulations issued by the U.S. Citizenship and Immigration Services ("USCIS") crafted to implement and enforce the Asylum Eligibility and Procedural Modifications, 84 Fed. Reg. 33,829 (July 16, 2019), as (i) contrary to the law, (ii) arbitrary and capricious under the APA, (iii) enacted without the notice and comment procedures required by the APA, and (iv) unconstitutional for failure to afford necessary due process to noncitizens. Jurisdiction lies to grant declaratory relief pursuant to 28 U.S.C. §§ 2201–2202 (Declaratory Judgment Act). To the

1

extent 8 U.S.C § 1252(a)(2)(A) strips the District Court of jurisdiction to review any of Plaintiffs' claims, the District Court has jurisdiction under 8 U.S.C. § 1252(e)(3).

## II.   Jurisdiction in this Court.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and Federal Rule of Civil Procedure 54(b).

## III.   Timely Notice of Appeal of Final Judgment.

In an Order dated and entered April 27, 2020, in accordance with an accompanying Memorandum Opinion dated and entered April 27, 2020, the United States District Court for the District of Columbia (Judge Amy Berman Jackson) granted Defendants' partial motion to dismiss Plaintiffs' Second Amended Complaint. Apx.467-512. The District Court also denied five motions for joinder of other possible plaintiffs, (the "Joinder Plaintiffs," hereinafter included in all references to Plaintiffs unless specifically distinguished). Apx.467-512. Plaintiffs filed a timely Notice of Appeal from the Opinion & Order on April 28, 2020, docketed in this Court as Case No. 20-5106. Apx.513.

On May 7, 2020, Plaintiffs filed a Motion for Rule 54(b) Certification and Entry of Final Judgment with the District Court seeking a certificate of appealability pursuant to Federal Rule of Civil Procedure 54(b). ECF 110 (Rule 54(b) Motion). On May 7, 2020, the District Court granted Plaintiffs' Rule 54(b) Motion, certifying the challenged ruling as final and expressly noting "there is no reason why the

remaining plaintiffs' claims should delay the appealability of the dismissed plaintiffs' and proposed plaintiffs' claims." Apx.514-16.  Plaintiffs filed a Notice of Appeal from this final judgment on May 7, 2020, docketed in this Court as Case No. 20-5129.  Apx.517

On May 8, 2020, Plaintiffs filed an unopposed motion with this Court to consolidate Case Nos. 20-5106 and 20-5129, which was granted and entered in a Clerk's Order dated May 11, 2020.  *See* United States Court of Appeals for the District of Columbia Circuit docket no. 1842151.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

I.      Whether the District Court erred in holding that 8 U.S.C. § 1252(a)(2)(A) stripped it of jurisdiction to review Plaintiffs' First Amendment retaliation claim where the plain language of § 1252(a)(2)(A) does not evince a clear intent to preclude such jurisdiction.

II.     Whether the District Court erred in dismissing Plaintiffs' Fourth Claim —which alleges that Defendants failed to follow the APA's notice-and-comment requirements as to the written and unwritten, secret regulations challenged by Plaintiffs and to publish the regulations 30 days before their effective date—where the plain language of Section 1252(a)(2)(A) does not evince a clear intent to preclude jurisdiction.

III.    Whether the District Court erred in holding that the plain language of 8 U.S.C. § 1252(a)(2)(A)(iv) strips it of jurisdiction to review unwritten, secret regulations, even though unwritten, secret regulations cannot be formally "adopted" within the meaning of the statute.

IV.     Whether the District Court erred in holding that the plain language of 8 U.S.C. § 1252(a)(2)(A)(iv) strips it of jurisdiction to review unwritten, secret regulations, without addressing whether a bar on judicial review of unwritten, secret regulations would violate the United States Constitution.

V.     Whether, even if unwritten secret regulations can be "adopted," the District Court erred in holding that the plain language of 8 U.S.C. § 1252(a)(2)(A)(iv) strips it of jurisdiction to review such regulations where they were purportedly adopted by Defendant Kenneth Cuccinelli, whose appointment as Director of USCIS has been found to violate the Federal Vacancies Reform Act, depriving him of any authority to adopt the challenged regulations.

VI.     Whether the District Court erred in concluding that 8 U.S.C. § 1252(e)(3) does not provide an independent jurisdictional basis for all Plaintiffs' claims as to "Challenged Action No. 9," where there is no dispute that the original Complaint challenging that Action was timely filed by at least one Plaintiff.

VII.     Whether the District Court erred in concluding that 8 U.S.C. § 1252(e)(3)'s 60-day filing deadline (i) is not susceptible to equitable tolling; and (ii) bars challenges to written policies that were *dated* more than 60 days before filing but not *implemented* until within the filing period.

VIII.     Whether the District Court erred in concluding that 8 U.S.C. § 1252(e)(3)'s requirement that challenged policies and procedures be "written" warrants pre-discovery dismissal of all claims than cannot be linked to a writing, despite circumstantial evidence suggesting that writings exist.

5

## STATUTES AND REGULATIONS INVOLVED

Relevant statutes and regulations are included in an addendum.

## STATEMENT OF THE CASE

### I.      Introduction

As the District Court recognized, "this case is not about illegal immigrants.  It is about women and children who have travelled great distances, under extraordinarily difficult circumstances, to request legal admission to this country of immigrants through the long-standing process of applying for asylum[.]"  Apx.470-71.  Plaintiffs are asylum-seeking families, looking for protection in the United States from persecution and torture, each of whom were issued negative "credible fear" and "reasonable fear" determinations.  Apx.7-33, 85, 90, 422-23, 436-39, 446-48, 452-54, 461-64.  Plaintiffs are currently detained either at the South Texas Family Residential Facility in Dilley, Texas or at the Berks County Residential Center in Leesport, Pennsylvania.[1]  They bring systemic challenges to clandestine but uniformly-applied regulations (the "Challenged Actions") that have deprived Plaintiffs of any meaningful opportunity to apply for asylum protection.

Defendants-Appellees are William P. Barr, the Attorney General of the United States; James McHenry, the Director of the Executive Office for Immigration

---

[1] Since the action was filed, a few families have been released pending removal for, among other things, medical reasons.

6

Review; Chad F. Wolf, the Acting Secretary of the Department of Homeland Security; Matthew T. Albence, the Acting Director of Immigrations and Customs Enforcement; Mark Morgan, the Acting Commissioner of Customs and Border Protection; Kenneth T. Cuccinelli, the Senior Official Performing the Duties of the Director of USCIS; and Andrew Davidson, the Acting USCIS Asylum Division Chief (collectively, "Defendants").

On July 19, 2019, the government published a new and immediately effective interim final rule titled "Asylum Eligibility and Procedural Modifications," which renders most individuals who arrive in the United States via the southern border ineligible for asylum (the "Transit Ban"). Thereafter, Defendants and those operating under their supervision or control created and effectuated eleven Challenged Actions, clandestine directives and regulations intended to eviscerate the "credible fear" process. Apx.33-35, 44-52. The Challenged Actions had their intended effect, subjecting Plaintiffs to hostile, adversarial interrogations by untrained, non-neutral Border Patrol Agents, resulting in negative credible fear determinations. Apx.7-33, 85, 90, 422-23, 436-39, 446-48, 452-54, 461-64.

Defendants have not repudiated the intent behind or the effect of the Challenged Actions. Rather, they moved to dismiss for lack of subject matter jurisdiction, arguing that § 1252(a)(2)(A) barred the District Court from reviewing all Challenged Actions that Defendants implemented in secret or did not

7

memorialize in writing, precluding Plaintiffs from challenging them within the 60-day statutory filing deadline.

The District Court, despite expressing grave "concerns" over the "deeply troubling" "facts amassed by the plaintiffs," found itself compelled to accept Defendants' damned-if-you-do, damned-if-you-don't argument. Apx.500. The District Court dismissed all claims other than a handful of Plaintiffs' claims to a single Challenged Action. Apx.467-512. As a result, hundreds of Plaintiffs face imminent removal and almost certain danger in their home countries. This is not, and cannot be, the law. Indeed, Plaintiffs raise just the sort of life-or-death, "now-or-never" pleas for protection that the Third Circuit recently held reviewable in spite of § 1252. *See E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 186, 189 (3d Cir. 2020) (Section 1252 "does not strip jurisdiction" over claims that otherwise "cannot be meaningfully . . . review[ed]") (per curiam).

Plaintiffs have established two independent bases for jurisdiction over their claims. *First*, starting from the presumption in favor of judicial review, deeply rooted in our history, no clear statement of congressional intent exists to permit Defendants to insulate themselves from review while acting without legal authorization or transparency, and thus Plaintiffs' challenges to Defendants' legal authority falls outside of the ambit of § 1252(a)(2)(A). *Second*, even if § 1252(a)(2)(A) barred review of Plaintiffs' claims, § 1252(e) provides an alternative

8

basis for jurisdiction because Plaintiffs have identified evidence of written policies and brought timely challenges to those policies. Congress could not have meant 8 U.S.C. § 1252(a)(2)(A) to strip the courts of the power to review, nor Plaintiffs' ability to challenge, secret policies contrary to law.

## II.     Prior Expedited Removal and Credible Fear Process

In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act, establishing the highly truncated "expedited removal" process for certain noncitizens seeking admission. Apx.39. Noncitizens subject to "expedited removal" are ordered removed by an immigration officer "without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i). Apx.39. Congress, however, expressly carved out an exception for individuals who express a fear of return to their home countries or an intention to apply for asylum. *See* 8 U.S.C. § 1224(b)(1)(B); 8 C.F.R. § 208.30(f).

If an individual subject to expedited removal indicates a fear of returning to his or her home country or an intent to apply for asylum, the immigration officer must refer the individual for a "credible fear" interview. 8 U.S.C. § 1225(b)(1)(B)(ii). Congress expressly provided procedural protections for those undergoing a credible fear interview, including that the asylum officers must have "professional training in country conditions, asylum law, and interview techniques comparable to that provided to full-time adjudicators." 8 U.S.C. § 1225(b)(1)(E);

9

*see also* 8 C.F.R. § 208.1. The applicable regulations to this interview process also clearly provide that the asylum officer "must conduct the interview in a non-adversarial manner." 8 C.F.R. § 208.9(d). This role has been performed by the Refugee, Asylum, and International Operation division within USCIS. *E.g.*, 8 C.F.R. § 208.2(a).

If the noncitizen is referred to an asylum officer, the officer conducts a "credible fear interview" ("CFI"). Apx.39. The CFI is designed "to elicit all relevant and useful information bearing on whether the applicant has a credible fear of persecution or torture." 8 C.F.R. § 208.30(d). Thus, CFIs include procedural protections. Apx.39-40. In evaluating whether credible fear is satisfied, the officer must "consider whether the alien's case presents novel or unique issues that merit consideration in a full hearing before an immigration judge." 8 C.F.R. § 208.30(e)(4). The interviewee is entitled to "information concerning the asylum interview" (*i.e.,* what process and standards apply) and to "consult with a person or persons of the alien's choosing prior to the interview or any review." 8 U.S.C. § 1225(b)(1)(B)(iv).

At the end of the interview, the asylum officer determines whether the interviewee has a credible fear of persecution, to wit: "a significant possibility, taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the officer, that the alien could

10

establish eligibility for asylum[.]" 8 U.S.C. §1225(b)(1)(B)(v). To ultimately prevail on an asylum claim itself, the applicant need only establish that there is a 10% chance that he or she will be persecuted based on one of the five protected grounds for asylum. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 439-40 (1987); *Grace v. Whitaker*, 344 F. Supp. 3d 96, 127 (D.D.C. 2018).

Once an asylum officer determines that the noncitizen has established a "credible fear," the applicant is taken out of the expedited removal process and referred for a removal hearing before an immigration judge. Apx.40-41. Unlike in expedited removal, the noncitizen will have a full opportunity to develop a record before the immigration judge and may appeal a decision to the Board of Immigration Appeals and relevant federal court of appeals. 8 C.F.R § 208.30(f); *see also* 8 U.S.C. § 1225(b)(1)(B)(ii).

If, however, the asylum officer makes a negative credible fear determination, the officer must provide a written record of the decision which "shall include a summary of [all] material facts stated by the applicant, such additional facts (if any) relied upon by the officer, and the officer's analysis why in light of [the] facts, the alien has not established a credible fear of persecution." 8 U.S.C. § 1225(b)(1)(B)(iii)(II). "A copy of the officer's interview notes shall be attached to the written summary." 8 U.S.C. § 1225(b)(1)(B)(iii)(II). Supervisory asylum officers then review and approve the negative credible fear determination. *See* 8

11

C.F.R. § 208.30(e)(8); *cf.* 8. U.S.C. § 1225(b)(1)(E)(ii). Upon the individual's request, the agency must provide for prompt review of the asylum officer's negative credible fear determination by an immigration judge. 8 U.S.C. § 1225(b)(1)(B)(iii)(III); *see also* 8 C.F.R. § 208.30(g)(1). In conducting that review, the immigration judge has access to "the record of the negative credible fear determination." 8 C.F.R. § 208.30(g)(2). The immigration judge's decision is administratively "final and may not be appealed." 8 C.F.R. § 1208.30(g)(2)(iv)(A). Thus, the integrity of the record developed by the asylum officer interviewing the noncitizen is of paramount importance.

### III. Creation and Effectuation of the Challenged Actions

On July 16, 2019, the government implemented the Transit Ban (which is not a subject of this litigation). Although the Transit Ban states it "does not change the credible-fear standards for asylum claims," a noncitizen subject to it "would be ineligible for asylum and would thus not be able to establish a 'significant possibility . . . [of] eligibility for asylum under Section 1158.'" 84 Fed. Reg. 33,837 (quoting 8 U.S.C. § 1225(b)(1)(B)(v)). A noncitizen deemed ineligible for asylum per the Transit Ban may only obtain review regarding whether the asylum officer correctly determined that he or she was subject to a limitation imposed by the Transit Ban and whether the noncitizen has a viable claim for statutory withholding or protection under CAT pursuant to 8 C.F.R. §§ 208.30(e)(2)-(4) and 1208.16. *See* 84 Fed. Reg.

33,837. Thus, if a noncitizen is determined ineligible for asylum pursuant to the Transit Ban, the noncitizen is summarily found not to have a credible fear of persecution, and the asylum officer then assesses whether "further proceedings on a possible statutory withholding or CAT protection claim are warranted," which imposes a higher "reasonable fear" standard, rather than the "credible fear" standard. 84 Fed. Reg. 33,837.

Reasonable fear is defined by regulation as "a reasonable possibility that [the applicant] would be persecuted on account of his or her race, religion, nationality, membership in a particular social group or political opinion, or a reasonable possibility that he or she would be tortured in the country of removal." 8 C.F.R. § 208.31(c). If the interviewing officer determines that the noncitizen has not met that standard, a written notice of decision is issued, subject to review by an immigration officer under the heightened "reasonable fear" standard. Under this new procedure, individuals like Plaintiffs are categorically unable to avoid persecution by establishing a significant possibility of asylum under the more lenient credible fear standard. Apx.43-44.

After issuing the Transit Ban, Defendants effectuated the Challenged Actions, and since then the credible fear passage rates at Dilley diminished from approximately 97% of credible fear applicants, to around 10% or fewer of applicants. Apx.4, 44. Each of the Plaintiffs has been subjected to eleven Challenged Actions,

which are fully set forth in the Second Amended Complaint, and are summarized

here:

| **Prior Regime** | **Defendants' New Illegal Regime** |
|---|---|
| 1. Migrants received an orientation on the process and standards for CFIs. | Migrants get no meaningful orientation as required by, *e.g.*, 8 C.F.R. §§ 235.3(b)(4), 208.30(d)(2). |
| 2. CFIs were conducted by experienced, trained asylum officers. | CFIs are conducted by improperly trained Border Patrol agents, violating, *e.g.*, 8 U.S.C. § 1225(e); 8 C.F.R. § 208.1. |
| 3. CFI determinations were issued after a full discussion of facts and meaningful supervisory review. | Agents make summary decisions mid-interview, ending further discussion or meaningful supervisory review, thwarting, *e.g.*, 8 C.F.R. §§ 208.30(d), 208.30(e)(7), 235.3(b)(2), (b)(7). |
| 4. Asylum officers developed a complete factual record, permitting meaningful later review. | Agents do not probe all relevant facts, leaving an incomplete record on review, contrary to, *e.g.*, 8 C.F.R. §§ 208.30(d), 208.30(e)(7), 235.3(b)(2), (b)(7). |
| 5. Interviews were conducted in a neutral, non-adversarial manner. | Interviews are conducted using adversarial interrogation techniques, violating, *e.g.*, 8 C.F.R. § 208.30(d). |
| 6. Migrants were given meaningful advance notice of interviews and a chance to consult with counsel. | Interrogations occur without meaningful notice, prejudicing the right of consultation under, *e.g.*, 8 U.S.C. §§ 1225(b)(1)(B)(iv), 208.30(d)(4). |
| 7. If migrants are evaluated under the higher reasonable fear interview ("RFI") standard, they were given advance notice, advance orientation, and access to counsel. | RFI-standard interrogations proceed without meaningful advance notice, orientation, or consultation with counsel afforded to 8 U.S.C. § 1231 interviewees. |

| Prior Regime | Defendants' New Illegal Regime |
|---|---|
| 8. Asylum officers applied the most favorable legal precedent in determinations as required by law. | Agents ignore the injunction in *Grace v. Whitaker*, 344 F. Supp. 3d 96 (D.D.C. 2018) and apply law of their choosing. |
| 9. Review for fraud was conducted where reasonable cause existed. | Every positive fear determination is pretextually reviewed for "fraud" without any basis, resulting in arbitrary rescission. |
| 10. Asylum officers disclosed the bases for their determinations. | Agents withhold bases on which negative determinations are made, violating, *e.g.*, 8 C.F.R. § 208.30(e)(1). |
| 11. Asylum officers were trained in and applied child-sensitive interviewing procedures. | Children (including as young as toddlers) are subjected to law-enforcement style interrogations, often for hours, in violation of, *e.g.*, 8 C.F.R. § 208.30(d). |

Apx.45-54.

## IV. Procedural History

On September 16, 2019, Plaintiffs filed their initial complaint. ECF 1 (Original Complaint). On September 25, 2019, Plaintiffs moved for entry of a temporary restraining order to stay Plaintiffs' removal from the United States until the court had an opportunity to rule on the merits of the complaint, which was fully briefed and submitted on October 10, 2019. ECF 13, 26, 27 (Motion Papers on Temporary Restraining Order). The emergency motions judge entered a temporary administrative stay to preserve the status quo until reassignment of the case. The case was assigned to Judge Amy Berman Jackson. ECF 16 (Stay Order).

As the litigation progressed, Plaintiffs identified additional proposed plaintiff-immigrants and detainees who, like the Plaintiffs, had received negative credible fear determinations and were facing deportation because of the same Challenged Actions. Thus, on October 17, 2019, Plaintiffs filed an amended complaint adding thirty-one additional plaintiffs to the action, ECF 28 (Amended Complaint), and a second motion for a temporary restraining order to stay their removal. ECF 29 (Second Motion for Temporary Restraining Order). The emergency motions judge extended the administrative stay in place to apply to the new Plaintiffs. ECF Minute Order (Oct. 17 2019).

On December 5, 2019, Plaintiffs filed a motion for leave to file a Second Amended Complaint (the "SAC"), along with a motion for joinder to include additional Plaintiffs subject to the Challenged Actions, and a companion motion for entry of a temporary restraining order to stay the removal of the proposed-plaintiffs. ECF 46 (Motion for Leave to File Second Amended Complaint), ECF 47 (Motion to Add Plaintiffs), ECF 48 (Motion for Stay). After learning of Defendants' consent to Plaintiffs' motion for joinder and motion for leave to file the SAC, the District Court granted those motions. ECF Minute Order (Dec. 16, 2019).

On December 18, 2019, the court held oral argument on Plaintiffs' motions for a temporary restraining order. Both parties filed supplemental memoranda in support of their positions. ECF 59 (Defendants' Supplemental Memorandum), ECF

16

65 (Plaintiffs' Supplemental Memorandum). Based on the District Court's concerns regarding certain Plaintiffs' standing to participate in the lawsuit, Plaintiffs voluntarily dismissed fifty-five plaintiffs, including all who were no longer in expedited removal proceedings after review by an immigration judge. ECF 25, 30, 33, 37, 38, 44 (Notices of Voluntary Dismissal).

In the SAC, Plaintiffs' asserted five claims for relief: (1) the Challenged Actions violate the Immigration and Nationality Act and the Refugee Act and are contrary to law under the APA because, *inter alia*, they conflict with various provisions of those Acts; (2) the Challenged Actions are arbitrary and capricious, thwart the purposes of the INA and Refugee Acts, and constitute abuses of discretion, and thus are unlawful under the APA; (3) the Challenged Actions violate the First Amendment, based upon Defendants' retaliatory conduct against Plaintiffs after the original Complaint was filed, and the Due Process Clause of the Fifth Amendment, based upon the failure to hold a fair hearing of Plaintiffs' claims; (4) the Challenged Actions are rules subject to the APA's requirements of notice-and-comment and publication 30 days before taking effect, and Defendants failed to comply with these requirements, and; (5) the Challenged Actions fail to provide the safeguards required in the 1951 Refugee Convention and the 1967 Protocol relating to Status of Refugees, and thus are unlawful under the APA. Apx.60-66.

On February 14, 2020, Defendants moved to partially dismiss the SAC for lack of jurisdiction. Apx.124-25. The motion to partially dismiss the SAC was fully briefed on March 6, 2020. ECF 73 (Plaintiffs' Opposition to Partial Motion to Dismiss); ECF 75 (Defendants' Reply Memorandum of Law in Further Support of Partial Motion to Dismiss). While the Motion to Dismiss was pending, Plaintiffs identified additional plaintiffs and filed five motions for joinder with companion emergency motions to extend the administrative stay to the proposed plaintiffs. Apx.422-66; ECF 79, 85, 89, 92, 95 (Motions to Add Plaintiffs). Recognizing that deportation of the proposed plaintiffs was imminent, the District Court granted Plaintiffs' emergency motions to stay removal of the proposed additional Plaintiffs while it considered the merits of Plaintiffs' motions for joinder and the motion to dismiss. Apx.486.

## V.  **Disposition Below**

On April 27, 2020, the District Court granted Defendants' Partial Motion to Dismiss, holding that Plaintiffs' claims were subject to § 1252(a)(2)(A)(iv)'s jurisdictional limitation and that § 1252(e)(3) only provided a basis for exercising jurisdiction over one of the eleven Challenged Actions. Apx.467-512 (the "Opinion"). The District Court also denied Plaintiffs' motions for joinder, finding that the later-added Plaintiffs' claims could not be joined to the timely-filed claims of the original Plaintiffs. Apx.509-12. That same day, to preserve their rights and

18

allow a meaningful opportunity for appellate review of the District Court's order before deportation, Plaintiffs filed a Notice of Appeal. Apx.513.

On May 7, 2020, to affirm the finality of the Memorandum Opinion, Plaintiffs filed a Motion for Rule 54(b) Certification and Entry of Final Judgment, which the Court granted, expressly stating "there is no reason why the remaining plaintiffs' claims should delay the appealability of the dismissed plaintiffs' and proposed plaintiffs' claims." Apx.514-16. This appeal followed.

## VI. The Memorandum Opinion

Instead of addressing each of Plaintiffs' Claims individually to determine whether it had jurisdiction to review the claims, the District Court erred by lumping the Claims together for jurisdictional purposes. Without analyzing the applicability of § 1252(a)(2)(A)(iv) to the substance of each individual claim, the Court found that all of the Challenged Actions fell within that jurisdiction-limiting provision because they were all adopted by the Attorney General, despite Acting Director Cuccinelli's unlawful appointment and regardless of whether the Challenged Actions were reduced to writing. Apx.487-91. In finding that § 1252(a)(2)(A)(iv) precluded judicial review of "procedures and policies adopted by the Attorney General," (*id.*) the District Court also failed to address Plaintiffs' APA claim as to the *manner in which* those procedures and policies were purportedly adopted (Claim

4) as well Plaintiffs' First Amendment claim of subsequent retaliation for challenging those procedures or policies (Claim 3). Apx.469-512.

Based upon the Declaration of Ashley B. Caudill-Mirillo, ECF 59-1 (Declaration of Caudill-Mirillo), the Opinion found that Challenged Actions numbers 3, 4, 5, 7, 8, 10, and 11 were not reduced to writing ("Unwritten Challenged Actions"). Apx.493-500. The District Court thus held that judicial review was unavailable under § 1252(e)(3) as to those Unwritten Challenged Actions because that provision only allows for review of written policies and procedures. Apx.499-500. The District Court expressed concern regarding Plaintiffs' argument that "a bar on review of unwritten policies would mean that actions by asylum officers are effectively unreviewable, which would be an unconstitutional result," but still found itself "constrained to find that it does not have jurisdiction," without expressly deciding the Constitutional conflict inherent in its ruling. Apx.499-500.

As to the remaining, written Challenged Action numbers 1, 2, 6, and 9 ("Written Challenged Actions"), the District Court held that § 1252(e)(3) precluded review of Challenged Actions 1, 2, and 6 because the original Complaint was not brought within 60 days of those Actions being implemented. Apx.500-06. The District Court rejected Plaintiffs' argument that equitable tolling applied to that filing deadline. As to Challenged Action 9, the District Court recognized that the original Plaintiffs had filed a timely challenge to that Action, but held that the later-

20

added Plaintiffs' claims could not be related back to that timely-filed challenge. The Court thus denied the motions for joinder and lifted the stay of removal as to all later-added Plaintiffs. Apx.506-12.

## SUMMARY OF ARGUMENT

### I.    The District Court's Incorrect Application of Section 1252(a)(2)(A)

The District Court incorrectly applied § 1252(a)(2)(A) to limit its own jurisdiction, creating a gaping loophole for Defendants to engage in "off the book" policy making without accountability through judicial review.   This Court should reverse that decision.

Section 1252(a)(2)(A) was created to insulate four specific, discretionary types of decisions from judicial review—not all claims that arise from § 1225(b)(1). The District Court erred in holding that the plain language of subsection (iv) precluded judicial review of Plaintiffs' claims.  Subsection (iv) only divests federal district courts of jurisdiction to review "procedures and policies ***adopted*** by the Attorney General to implement the provisions of section 1225(b)(1)."  8 US.C. § 1252(a)(2)(A)(iv) (emphasis added).  In lumping all of Plaintiffs' claims together to find that they all challenged "policies and procedures adopted by the Attorney General," the District Court erred for multiple independent reasons.

First, the District Court improperly dismissed Plaintiffs' well-pled First Amendment claim challenging Defendants' retaliation subsequent to, and thus

21

independent from, the "adopt[ion]" of any procedures and policies. At the Motion to Dismiss stage, Plaintiffs were entitled to have all inferences construed in their favor and the District Court improperly narrowed Plaintiffs' distinct claim in its dismissal. The District Court's footnote rejection of Plaintiffs' retaliation claim as a mere restatement of the Challenged Action claims—without even analyzing the applicability of § 1252(a)(2)(A)(iv)—is thus entirely unsupported. Apx.481.

Second, the District Court similarly ignored that Plaintiffs' Fourth Claim under the APA does not challenge adopted policies and procedures or require judicial review of the Challenged Actions themselves. Rather, it challenges the *process*, *i.e.*, the manner in which the Challenged Actions were created and publicized (or not publicized), as contrary to the APA's requirements of notice-and-comment and publication. There is no support for barring such an APA claim under the plain language of § 1252(a)(2)(A)(iv), and 28 U.S.C. § 1331 provides a well-established jurisdictional basis for such a claim.

Third, as to Plaintiffs' claims regarding the Challenged Actions themselves, those claims fall outside the scope of § 1252(a)(2)(A)(iv)'s jurisdictional bar because no Challenged Action stems from a policy "adopted" by the Attorney General. The District Court's conclusion that Defendants' unwritten policies evade judicial review yields an absurd and troubling result, inherently rewarding the Defendants for skirting established policy making procedures and secretly eliminating legal

protections for those most vulnerable. Analyzing the plain meaning of the word "adopt"—"to accept formally and put into effect"—it is clear that none of the Challenged Actions meet that threshold. Defendants' secret policies have been at most informally accepted; they have not been "accepted formally" which, for proposed policies like those at issue, would require publication in the Federal Register and a period of notice and comment. Where no policy has been "adopted," § 1252(a)(2)(A)(iv) is not in play, and Plaintiffs' claims present classic federal questions subject to jurisdiction under 28 U.S.C. § 1331.

Fourth, the District Court erred in ignoring the unconstitutional paradox that would result from finding that unwritten policies could be formally adopted, such that § 1252(a)(2)(A)(iv) applied to strip jurisdiction, but that those adopted policies were unreviewable under the exception for judicial review provided in § 1252(e)(3) because they were not reduced to writing.

Fifth, even if clandestine policies could be formally adopted, the Challenged Actions were not adopted here because their purported adopter, Defendant Cuccinelli, was unlawfully appointed as "Acting Director" of USCIS at the time. Because Defendant Cuccinelli's appointment has been found to have violated the Federal Vacancies Reform Act ("FVRA"), and any actions taken by officials appointed in violation of that act "have no force and effect," the Challenged Actions cannot have been "adopted" as contemplated by § 1252(a)(2)(A)(iv).

## II. The District Court's Incorrect Application of Section 1252(e)(3)

*Even if* § 1252(a)(2)(A) applied to Plaintiffs' claims, the District Court erroneously interpreted § 1252(e)(3), which supplies an independent basis for jurisdiction over Plaintiffs' claims. Despite Plaintiffs identifying multiple bases for jurisdiction under § 1252(e)(3), which permits judicial review on "challenges to the validity of the system," 8 U.S.C. § 1252(e)(3), the District Court found that all but one of Plaintiffs' claims was barred as brought outside the statute's 60-day filing deadline or because Defendants claimed that some of the Challenged Actions were not reduced to writing.

First, the court correctly concluded it has jurisdiction over Challenged Action No. 9 (Mandatory Fraud Review) as to the original Plaintiffs who filed timely claims. The Court erred, however, in barring the later-joined Plaintiffs' claims regarding Challenged Action 9 as untimely. There is no basis to preclude additional Plaintiffs from joining a timely-filed "action," which is all that § 1252(e)(3)(B)'s "Deadline[] for bringing actions" requires. To the contrary, the law requires only *one plaintiff* to bring a viable claim to invoke the court's jurisdiction. The Court's denial of Plaintiffs' motions for joinder is erroneous for this same reason.

Second, the district court misapplied binding Supreme Court precedent to conclude that equitable tolling does not apply to § 1252(e)(3)'s 60-day filing deadline. Under *United States v. Kwai Fun Wong*, 575 U.S. 402 (2015), most time

24

bars, like filing deadlines, are non-jurisdictional. Where, as here, there is no clear statement of Congressional intent to the contrary, equitable tolling applies.

Third, the District Court erred in holding that writings underlying Challenged Action No. 1 and Challenged Action No. 2 were "implemented," so as to trigger § 1252(e)(3)(B)'s 60-day filing deadline, on the day those writings were *signed*, rather than the date they were put into practice. This cannot be squared with the plain meaning of "implement" and would create yet another loophole to avoid judicial review, allowing Defendants to insulate all written policies from scrutiny merely by signing them sixty days before putting them into effect.

Fourth, and finally, the District Court erred in rejecting Plaintiffs' claims as to Challenged Action Nos. 3, 4, 5, 6, 7, 10, and 11, based on a finding that the policies at issue in each challenge were not "in writing." The record is replete with references to the Defendants' systematic, uniform changes in policies after the Transit Ban was implemented. At the Motion to Dismiss stage, the District Court erred by refusing to draw all inferences in favor of the Plaintiffs, instead taking the government's representation that no relevant writings exist at face value and precluding further discovery to test that representation.

The correct interpretation of § 1252(a)(2)(A), § 1252(e)(3), and 28 U.S.C. § 1331 confirms that there are multiple, independent bases for subject matter jurisdiction over all Plaintiffs' claims. Accordingly, this Court should reverse the

District Court's Opinion in its entirety, and remand this case for the Plaintiffs to rejoin the proceedings below.

**ARGUMENT**

**STANDARD OF REVIEW**

A district court's order dismissing a complaint for lack of subject matter jurisdiction is reviewed *de novo*. *Nat'l Air Traffic Controllers Ass'n, AFL-CIO v. Fed. Serv. Impasses Panel*, 606 F.3d 780, 786 (D.C. Cir. 2010); *see* Fed. R. Civ. P. 12(b)(1). In determining a jurisdictional question, the court will "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat. Ins. Co. v. Fed. Deposit Ins. Co.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (collecting cases) (internal quotations omitted).

**I.      There is a Presumption of Judicial Review of Plaintiffs' Claims.**

In March of 2020, the United States Supreme Court reaffirmed in an immigration case "'a familiar principle of statutory construction: the presumption favoring judicial review of administrative action.'" *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1069 (2020) (quoting *Kucana v. Holder*, 558 U.S. 233, 251 (2010)); *INS v. St. Cyr*, 533 U.S. 289, 298 (2001) (there is a "strong presumption in favor of judicial review.") "Under that 'well-settled' and 'strong presumption,' *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 496, 498, 111 S.Ct. 888, 112 L.Ed.2d

26

1005 (1991), when a statutory provision 'is reasonably susceptible to divergent interpretation, we adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review.'" *Guerrero-Lasprilla*, 140 S. Ct. at 1069 (quoting *Kucana*, 558 U.S. at 251); *see also McNary*, 498 U.S. at 496 ("[G]iven [that] presumption ..., it is most unlikely that Congress intended to foreclose all forms of meaningful judicial review"). "The presumption can only be overcome by 'clear and convincing evidence' of congressional intent to preclude judicial review." *Guerrero-Lasprilla*, 140 S. Ct. at 1069 (quoting *Reno v. Catholic Social Services, Inc.*, 509 U.S. 43, 64 (1993)); *see also Bd. of Governors of the Fed. Reserve Sys. v. MCorp. Fin., Inc.*, 502 U.S. 32, 44 (1991) (the government may overcome that presumption only by pointing to "clear and convincing evidence of a contrary legislative intent.") (internal quotation marks omitted). "We have 'consistently applied' the presumption of reviewability to immigration statutes." *Guerrero-Lasprilla*, 140 S. Ct. at 1069 (quoting *Kucana*, 558 U.S. at 251).

Plaintiffs bear the burden of establishing jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Here, Plaintiffs' claims uniformly allege that Defendants' actions violate either the Constitution or federal statutes. Apx.6-7, 60-66. The claims present classic federal questions over which this Court has jurisdiction under 28 U.S.C. § 1331 and related statutes. Apx.6-7, 60-66. Thus,

starting with the presumption of judicial review, it is necessary to determine if Congress intentionally stripped the District Court of jurisdiction to review Plaintiffs' claims. As set forth below, it did not, and the District Court erred in holding otherwise.

## II. Plaintiffs Assert a Distinct, Retaliation-Based First Amendment Claim.

The District Court has jurisdiction over the First Amendment branch of Plaintiffs' Third Claim, which alleges that after Plaintiffs filed this lawsuit, Defendants engaged in retaliatory actions against them. Apx.58-61. In a footnote, the District Court found that it did not have jurisdiction over this claim because it erroneously viewed the claim as an attack on the Challenged Action, over which it held § 1252(a)(2)(A)(iv) barred review. Apx.481.

To state a First Amendment retaliation claim, a plaintiff must allege "(1) he engaged in conduct protected under the First Amendment; (2) the defendant took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again; and (3) a causal link between the exercise of a constitutional right and the adverse action taken against him." *Aref v. Holder*, 774 F. Supp. 2d 147, 169 (D.D.C. 2011) (collecting cases) (denying motion to dismiss first amendment claim based on allegations of retaliation for plaintiff's continued litigation against defendants) (quoting *Banks v. York*, 515 F. Supp. 2d 89, 111

28

(D.D.C. 2007); *cf. Crawford-El v. Britton*, 93 F.3d 813, 825-26 (D.C. Cir. 1996), *rev'd on other grounds*, 523 U.S. 574 (1998).

The right to petition the government is "one of 'the most precious of the liberties safeguarded by the Bill of Rights," *Mirabella v. Villard*, 853 F.3d 641, 653 (3d Cir. 2017) (quoting *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 524 (2002)), and that right includes the right to petition the courts (to file lawsuits). *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011) ("'[T]he right of access to the courts for redress of wrongs is an aspect of the First Amendment right to petition the government.'" (quoting *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 896-97 (1984)); *see also Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 741 (1983) (similar). Defendants may not retaliate against Plaintiffs because they exercised their First Amendment rights. *E.g.*, *Wilkie v. Robbins*, 551 U.S. 537, 555 (2007); *Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (Government may not take action against an individual "because of his constitutionally protected speech or associations," even if it could lawfully take action for other reasons).

These First Amendment protections extend to detained immigrants, and protect those individuals from punishment, including selective enforcement of removal orders, in retaliation for exercising First Amendment Rights. *See, e.g., Ragbir v. Homan*, 923 F.3d 53 (2d Cir. 2019). Even actions "that fall short of a direct prohibition against the exercise of First Amendment rights" still violate the

Constitution.  *Laird v. Tatum*, 408 U.S. 1, 11 (1972).  Allowing such retaliatory actions would permit Defendants to silence their critics, when the government has no right to silence its critics at all.  *See, e.g., Perry*, 408 U.S. at 597-98.

Plaintiffs' SAC alleges all the required elements of a First Amendment retaliation claim.  Plaintiffs allege that they engaged in conduct protected by the First Amendment when they filed the original action.  Apx.58-59.  Plaintiffs allege that, subsequent to the filing of this lawsuit, Defendants took retaliatory action sufficient to deter a person of ordinary firmness in Plaintiffs' position from speaking again by: impairing Plaintiffs' ability to consult with counsel; refusing to release, parole, or even remove numerous Plaintiffs unless they dropped their claims against Defendants; informing Plaintiffs that they could be detained for years because of the lawsuit; encouraging or coercing Plaintiffs to drop their claims and coercing other detainees not to assert claims; issuing decisions to "Continue Detention" expressly identifying the detainee's status as "a participant in the case MMV vs. Barr 19-2773"; and; failing to follow the *Flores* Settlement and rulings for any minor Plaintiffs by continuing to illegally detain them based on their status as Plaintiffs in this case.  Apx.58-61.  Finally, Plaintiffs allege that these adverse actions are being taken against them because they exercised their First Amendment rights to file this litigation.  Apx.58-61.

A motion to dismiss, must be "liberally construe[d] … in the plaintiff's favor" and Plaintiffs should have "the benefit of all inferences that can be derived from the facts alleged." *Andrx Pharm., Inc. v. Biovail Corp. Int'l*, 256 F.3d 799, 805 (D.C. Cir. 2001). Plaintiffs plead the elements required for a First Amendment Claim and it is evident that the First Amendment Claim is a separate claim over which the District Court has jurisdiction. The District Court cited no authority suggesting that such a First Amendment Claim is precluded by § 1252(a)(2)(A)(iv) because there is none. This error alone warrants reversal.

### III. The Court Has Jurisdiction Over Plaintiffs' Fourth Claim for Violations of the APA.

The Court independently erred when, instead of addressing each of Plaintiffs' Claims individually to determine whether it had jurisdiction to review the claims, the District Court lumped the Claims together and dismissed them, including the Fourth Claim, over which it has clearly has jurisdiction. Plaintiffs' Fourth Claim is that, in implementing the Challenged Actions, Defendants failed to comply with the APA's rulemaking requirements. Apx.64-65. Thus, Plaintiffs' Fourth Claim (the "APA Claim") challenges the *process* by which the Challenged Actions were created and does not challenge their substance. Specifically, as set forth in the SAC, the APA requires notice and opportunity for comment prior to substantive agency action or promulgation of a rule. 5 U.S.C. § 553(b), (c); Apx.64-65. The APA also requires that a substantive rule be published "no less than 30 days before its effective date."

31

5 U.S.C. § 553(d); Apx.64-65. The Challenged Actions, which were designed to implement the Transit Ban, constitute rules that are subject to the notice-and-comment requirements of the APA. *See* 5 U.S.C. § 551(4) ("'[R]ule' means the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy."). Defendants failed to provide for notice-and-comment before implementing their new Challenged Actions. Defendants also failed to appropriately publish any of the Challenged Actions 30 days before their effective date. Thus, the Challenged Actions should be declared unlawful and set aside due to Defendants' failure to observe the procedure required by the APA. *See, e.g.*, 5 U.S.C. §§ 553(b), (c), (d), 706(2)(D); Apx.64-65.

Plaintiffs' APA Claim is not subject to the jurisdiction-stripping provisions of § 1252(a)(2) of the INA. Subsections (i), (ii) and (iii) address individual, as-applied challenges to determinations or decisions made under § 1225(b)(1). *See* 8 U.S.C. § 1252(a)(2)(A)(i)-(iv). Plaintiffs' APA Claims are not individual, as-applied challenges to Defendants' decisions concerning each Plaintiff's assertion of credible fear, thus the jurisdiction limiting provisions in § 1252(a)(2)(A)(i)-(iii) are categorically inapplicable to this case.

Section 1252(a)(2)(A)(iv) is similarly inapplicable. "[I]t is by now well established that 'while many APA claims are brought pursuant to a separate

substantive statute, a court may alternatively have jurisdiction under § 1331 over a claim under the APA, based on allegations that an agency action was arbitrary and capricious or that an agency took action without observing procedures required by law.'" *Make the Rd. New York v. McAleenan*, 405 F. Supp. 3d 1, 26 (D.D.C. 2019) (quoting *Seeger v. Dep't of Defense*, 306 F. Supp. 3d 265, 276 (D.D.C. 2018)); *see also Mons v. McAleenan*, No. 19-cv-1593, 2019 WL 4225322, at *4 (D.D.C. Sept. 5, 2019) (challenge to process by which parole was determined did not fall "within the scope of section 1252(a)").

Here, the APA Claim does not ask the Court to review the Challenged Actions themselves, but rather Defendants' creation and implementation of the Challenged Actions without observing the procedures required by law: the opportunity for public notice-and-comment on the Challenged Actions and publication of the Challenged Actions 30 days before their effective date. Apx.63-64. Thus, the APA Claim does not fall within the ambit of the jurisdiction-limiting language in § 1252(a)(2)(A) and the District Court erred in summarily dismissing it without examination or analysis. *See Make the Rd. New York*, 405 F. Supp. 3d at 26; *Mons*, 2019 WL 4225322, at *4.

**IV.** **Plaintiffs' Remaining Claims are Not Barred By 8 U.S.C. § 1252(a)(2)(A)(iv).**

**A. The Unwritten Challenged Actions Could Not Have Been Adopted As Required for Section 1252(a)(2)(A)(iv) to Apply.**

The District Court's Order grants immunity to any unwritten rule or directive made by Defendants concerning expedited removal. The District Court erroneously concluded that so long as the government's actions concerning expedited removal are conducted in secret, using unwritten directives, it can act wholly beyond judicial review. Specifically, the District Court found that § 1252(a)(2)(A)(iv) barred its review of the Unwritten Challenged Actions, holding that "a policy can certainly be 'adopted' without being reduced to writing, and the provision itself does not include the word 'formally' or any other narrowing term." Apx.490. This finding, without precedential support or analysis, misconstrues § 1252 and allows the government to "insulate itself from review merely by declining to . . . commit its policies to writing." *Padilla v. ICE*, 2019 WL 7486849, at *1 (W.D. Wash. Feb. 12, 2019) (rejecting the government's argument that 8 U.S.C. § 1252(a)(2)(A) barred judicial review because "defendants ha[d] not adopted any formal procedure or policy"). Indeed, the Unwritten Challenged Actions could not have been adopted for the purposes of the statute.

To "adopt" is "to accept formally and put into effect." *See* Merriam-Webster's Collegiate Dictionary 16 (10th ed. 1999); *accord, e.g., 32BJ N. Pension*

*Fund v. Nutrition Mgmt. Servs. Co.*, 935 F.3d 93, 101 (2d Cir. 2019); *Brown v. Cox*, 387 P.3d 1040, 1045 (Utah 2017); *Pub. Emps. Benefits Program v. Las Vegas Metro. Police Dep't*, 179 P.3d 542, 550 n.31 (Nev. 2008). A "policy" that USCIS—or any other federal agency—purports to apply but does not commit to writing has not been "accept[ed] formally." After all, an unwritten "policy" is one that has not been formalized as a written regulation, otherwise published in the Federal Register, made part of a policy memorandum or similar document, or even placed in an email. If such a "policy" has been applied by agents, it has been, at most, informally accepted, but such informal acceptance is not tantamount to adoption.

The District Court stated that to the extent there was any ambiguity, § 1252(e)(3) demonstrated that Congress knew how to differentiate between written and unwritten materials because that exception to § 1252(a)(2)(A)(iv)'s bar on judicial review specifically mentions review of "'a written policy directive, written policy guideline, or written procedure.'" Apx.490 (quoting 8 U.S.C. § 1252(e)(3)(A)(i)). But this analysis is self-defeating. Section 1252(a)(2)(A)(iv) expressly incorporates "subsection (e)," such that its reference to "procedures and policies" must be read harmoniously with Section 1252(e)(3)(A)'s requirement that such policies and procedures be "written." *See, e.g., National Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 501(1998) ("[S]imilar language within the same statutory section must be accorded a consistent meaning").

Section 1252(e)(3)(A) provides an *exception* to § 1252(a)(2)(A)(iv)'s jurisdictional bar—it cannot be read to impose a *further limitation* on the plain language of § 1252(a)(2)(A)(iv). Otherwise, these provisions, read together, would create the absurd result of insulating all unwritten "policies and procedures" from scrutiny. As noted above, "'clear and convincing evidence' of congressional intent" is required "to preclude judicial review." *Guerrero-Lasprilla*, 140 S. Ct. at 1069. No such intent can be inferred from the statute's plain language.

The District Court's reliance on the absence of the word "written" to modify the nouns policy or procedure in § 1252(a)(2)(A)(iv)'s is self-defeating for an additional reason. The word "regulation" in § 1252(e)(3) similarly lacks the modifier "written". Under the District Court's own interpretation, then, it would have jurisdiction to review both *written* or *unwritten* "regulation[s]…issued by or under the authority of the Attorney General…in violation of law." 8 U.S.C. § 1252(e)(3)(A)(ii). In other words, if the absence of the modifier "written" deprives the District Court of jurisdiction to review unwritten policies and procedures under § 1252(a)(2)(A)(iv), it grants the District Court jurisdiction to review unwritten regulations under 8 U.S.C. § 1252(e)(3)(A)(ii). The government cannot have it both ways. The Unwritten Challenged Actions are such unwritten regulations and the District Court erred when it ruled that they are not reviewable under 8 U.S.C. § 1252(e)(3)(A)(ii) because they were not reduced to writing. Apx.499.

36

Regulation is defined as "[a] rule prescribed for the management of some matter, or for the regulating of conduct; a government precept or direction; a standing rule." The Oxford English Dictionary, Second Edition, J.A. Simpson & E.S.C. Weiner, Volume XIII, Carendon Press – Oxford, 1989, p. 525. As set forth in the SAC, Plaintiffs alleged that the Unwritten Challenged Actions are rules and directions for regulating the asylum process. Apx.45-54. Thus, under the plain language of 8 U.S.C. § 1252(e)(3)(A)(ii), the District Court has jurisdiction to review the Unwritten Challenged Actions if Plaintiffs filed their original action no later than 60 days after the date the Unwritten Challenged Actions were first implemented. 8 U.S.C. § 1252(e)(3)(B). While the District Court did not address this, Plaintiffs alleged in the SAC that the original Complaint was filed within 60 days of the implementation of the Unwritten Challenged Actions. Apx.4. There is no evidence in the record that disputes this. Thus, assuming the allegations in the SAC are true, the District Court has jurisdiction to review the Unwritten Challenged Actions.

Notably, courts have failed to grapple with this issue in the cases cited by the District Court. Apx.499-501. For example, in *L.M.-M.*, Judge Moss failed to quote that portion of § 1252(e)(3)(A)(ii), referring only to the "'written policy directive[s], written policy guideline[s], or written procedure[s],'" portions of § 1252(e)(3)(A)(ii) and omitting any mention of the unmodified noun "regulation." *See* 2020 WL 985376 at *11 (quoting § 1252(e)(3)(A)(ii)). In *America Immigration Lawyers*

*Ass'n v. Reno* ("*AILA*"), the District Court merely concluded "that, based on the clear language of the jurisdictional provision of § 1242(e)(3)(A)(ii), this Court cannot review unwritten policies or practices but rather must limit its review to a 'regulation, a written policy directive, written policy guideline, or written procedure'" without addressing the obvious omission of the adjective "written" before "regulation." 18 F. Supp. 2d 38, 58 (D.D.C. 1998), *aff'd*, 199 F.3d 1352 (D.C. Cir. 2000); *see also Khan v. Holder*, 608 F.3d 325, 331 (7th Cir. 2010) (citing, without analyzing, the district court's decision in *AILA*).

### B. The District Court Erred by Failing to Address that a Bar of Judicial Review of the Unwritten Challenged Actions Is Unconstitutional.

Further, no court has ever addressed whether a bar on review of unwritten directives would be constitutional. It would not—and the District Court failed to grapple with that argument made in Plaintiffs' opposition to the motion to dismiss. ECF 73, at 18-21 (Plaintiffs' Memorandum of Law in Opposition to Partial Motion to Dismiss). Instead, it accepted Defendants' argument that the executive branch may shield its acts from judicial review by adopting secret, unwritten policies. Such conduct encroaches upon Congress's sole authority to "establish a uniform Rule of Naturalization," U.S. CONST. art I, § 8, cl. 4, and upon judicial review. Congress could not have meant § 1252(a)(2)(A) to strip the courts of the power to review, nor Plaintiffs' ability to challenge, secret policies contrary to law.

As set forth in Section 1, *supra,* the presumption of judicial review is deeply rooted in our history and in the separation of powers.  The Constitution mandates: "The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish . . . [and] *shall* extend to *all* Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority." U.S. Const. art. III, §§ 1, 2, (emphasis added).  Thus, while Congress may limit jurisdiction (*e.g.* require that certain claims be brought in this District, or based on certain timing), it cannot wholly remove or bar judicial review of cases that Article III, Section 2 expressly contemplates—some court, supreme or inferior, must be available to hear such cases.[2]

Plaintiffs here are not challenging the outcome of USCIS's decision making or the legality of the Transit Ban; at issue is the *method* by which Defendants are implementing the Transit Ban overall.  "Where plaintiffs challenge an overarching agency action as unlawful – . . . a systemic failure . . . – Supreme Court and Circuit precedent dictate that such a challenge does not fall within Section 1252's

---

[2] *See Crowell v. Benson*, 285 U.S. 22, 60-61, 62 (1932) (It is "untenable" to assume that "constitutional courts may be deprived in all cases of the determination of facts upon evidence [where] a constitutional right may be involved . . . . [T]he essential independence of the exercise of the judicial power of the United States, in the enforcement of constitutional right required that the federal court should determine such an issue . . . .").

jurisdictional bar." *Mons*, 2019 WL 4225322, at *4 (citing *Zadvydas v. Davis*, 533 U.S. 678 (2001) (holding that challenges to the "extent of the Attorney General's authority" to indefinitely detain individuals fall outside the scope of § 1252(a)(2)(B)(ii)); *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 176-77 (D.D.C. 2015) (district courts have jurisdiction to review challenges to policies underlying detention but not discretionary determinations granting or denying bond or parole)).

Congress cannot limit jurisdiction in a way that violates other constitutional rights. As the Supreme Court has emphasized, "Courts should not assume that a claim must proceed through the administrative process if doing so would foreclose all meaningful judicial review." *Jafarzadeh v. Duke*, 270 F. Supp. 3d 296, 310 (D.D.C. 2017) (quoting *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 489 (2010)) (rejecting argument that § 1252 barred review of plaintiffs' constitutional and statutory claims challenging the lawfulness of USCIS' Controlled Application Revise and Resolution Program ("CARRP")). Here, at minimum, "the procedure authorized by Congress" is a form of due process to which Plaintiffs have a right. *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950).

Congress could not intend § 1252 to act as a jurisdictional bar that insulates the government from review so long as the government opts not to use a writing when it abridges the procedure set by Congress. This conclusion "naturally flows from the . . . text of Section 1252: the administrative process is designed to allow

40

an applicant to raise specific claims about his or her removal (and thus judicial review is limited to that same topic), but it is *not designed* to adjudicate broader challenges . . . ." *Duke*, 270 F. Supp. 3d at 310 (addressing USCIS procedures used in resolving plaintiffs' CARRP applications) (emphasis added). This would necessarily not only abridge Due Process, but also negate the effect of the exact same underlying law that Congress was enacting, which cannot be what Congress intended.

### C. Defendant Cuccinelli Lacked the Authority to "Adopt" the Challenged Actions As Required Under 8 U.S.C. § 1252(a)(2)(A)(iv).

Even if § 1252(a)(2)(A)(iv) could apply to the Challenged Actions, Defendant Kenneth T. Cuccinelli lacked the authority to adopt the Challenged Actions, thus none of the Challenged Actions were "adopted" pursuant to § 1252(a)(2)(A)(iv) and the District Court was not precluded from reviewing the Challenged Actions.

In its opposition to Defendants' motion to dismiss, filed on February 28, 2020, Plaintiffs asserted that none of the Challenged Actions—written or unwritten—could fall within the ambit of the jurisdiction-limiting language in § 1252(a)(2)(A)(iv), because none had been "adopted by the Attorney General." 8 U.S.C. § 1252(a)(2)(A)(iv); ECF 73, at 9 (Plaintiffs' Memorandum of Law in Opposition to Partial Motion to Dismiss). Plaintiffs asserted, and the District Court agreed, that since 2003, after the creation of the Department of Homeland Security,

the "adopted" language in Section 1252(a)(2)(A)(iv) has referred to adoption by the DHS Secretary and/or Director of USCIS, rather than the Attorney General personally.[3] Apx.489. Plaintiffs also asserted, and it is uncontested, that Defendant Cuccinelli purported to act in the capacity of Director of USCIS for the time period during which all Challenged Actions were implemented. ECF 73, at 9-10 (Plaintiffs' Memorandum of Law in Opposition to Partial Motion to Dismiss). Plaintiffs argued in their opposition that, for several reasons, Cuccinelli's appointment violated the FVRA, and, as a result his actions had no force and effect so he could not have "adopted" the Challenged Actions, and the plain language of Section 1252(a)(2)(A)(iv) did not preclude review.

Two days after Plaintiffs filed the opposition, in a separate case, Judge Randolph Moss of the District Court for the District of Columbia ruled that Defendant Cuccinelli's appointment violated the FVRA and set aside two directives issued by USCIS because Defendant Cuccinelli did not have the authority to adopt them. *See L.M.-M. v. Cuccinelli*, No. 19-cv-2676, 2020 WL 985376 at *8 (D.D.C.

---

[3] *See* Homeland Security Act of 2002, Pub. L. 107-296, § 451(b)(3), 116 Stat. 2135, 2196 (2002), codified at 6 U.S.C. § 271(b)(3) (giving USCIS authority over asylum applications); *id*. § 456(a)(1), 116 Stat. at 2200, codified at 6 U.S.C. § 275(a)(1) (deeming all federal laws related to functions transferred to USCIS as giving authority to the Director of USCIS rather than the individuals specified in the text); *id*. § 1517, 116 Stat. at 2311, codified at 6 U.S.C. § 557 (references to officials whose functions were transferred to DHS are "deemed to refer to the Secretary, other official, or component of [DHS] to which" the function was transferred).

Mar. 1, 2020).  Plaintiffs filed a Notice of Supplemental Authority on March 5, 2020.

(Dkt. # 74).  On April 16, 2020, Judge Moss entered a partial final judgment as to

the individual plaintiffs' FVRA claims pursuant to Federal Rule of Civil Procedure

54(b).  *See L.M.-M. v. Cuccinelli*, No. 19-cv-2676, 2020 WL 1905063, at *3 (D.D.C.

Apr. 16, 2020).  The government appealed from the partial final judgment but there

is no stay of that partial final judgment.  Accordingly, at the time that the District

Court issued the Opinion in this case on April 27, 2020, there was (and is) a District

Court decision holding that Defendant Cuccinelli's appointment violated the FVRA

and that his actions at the time of his purported appointment had no force and effect.

*Id.*

> In the April 27, 2020 Opinion, the District Court stated that:

> [W]hether Acting Director Cuccinelli had the authority to promulgate policies affects the validity of the policies; it does not bear on the question of the Court's power to review them.  Indeed, the court in *L.M.-M.* addressed jurisdiction separately; it exercised its jurisdiction to strike down certain written policies, but with respect to unwritten policies, it found that 8 U.S.C. § 1252(a)(2)(A)(iv) applied, and it did not have jurisdiction to review an unwritten policy even though it was attributed to Cuccinelli.  This Court agrees that it must first determine whether it has jurisdiction to review the Challenged Actions at all, and that the allegedly unlawful nature of Acting Director Cuccinelli's appointment does not relieve it of its obligation to consider the applicability of § 1252(a)(2)(A)(iv) as Congress intended.

Apx.490 (internal citation omitted).

The District Court's reasoning is erroneous.  The court in *L.M.-M.* addressed

jurisdiction separately – *before* it could rule on whether Defendant Cuccinelli's

appointment violated the FVRA – because it first had to determine whether the plaintiffs had standing and whether it had jurisdiction. *L.M.-M.*, 2020 WL 985376 at *8. After it decided that the plaintiffs had standing and it had jurisdiction to review some of their claims, it held that Defendant Cuccinelli's appointment violated the FVRA and set aside two directives issued by USCIS as having no force and effect. *Id.* at *23-*24. Accordingly, the District Court here should have considered Defendant Cuccinelli's unlawful appointment and Judge Moss's ruling that this rendered his actions void *ab initio*, 5 U.S.C. § 3348(d)(1), as part of the jurisdictional analysis.

If the policies purportedly "adopted" by Defendant Cuccinelli have no force and effect—even if formalized in writing—the jurisdiction-limiting language of § 1252(a)(2)(A)(iv) cannot be triggered. By its plain language, § 1252(a)(2)(A)(iv) can *only* apply to a policy ***adopted by the Attorney General***. It naturally follows that since Defendant Cuccinelli could not have legally "adopted" any of the Challenged Actions—written or unwritten—they are not "policies and procedures adopted by the Attorney General", 8 U.S.C. § 1252(a)(2)(A)(iv), and the District Court was not stripped of jurisdiction to review them. The unlawful nature of Defendant Cuccinelli's appointment, and the withdrawal of the force and effect of the policies he purportedly "adopted" eliminate the applicability of § 1252(a)(2)(A)(iv) to the Challenged Actions.

Therefore, the District Court erred in finding that it lacked jurisdiction to review the Challenged Actions—written or unwritten—purportedly "adopted" by Defendant Cuccinelli.

## V.  8 U.S.C. § 1252(e)(3) Supplies Jurisdiction for All of Plaintiffs' Claims.

Alternatively, even if Plaintiffs' claims fell within the scope of §1252(a)(2)(A)(iv)—they do not—§ 1252(e)(3) serves as an independent basis for subject matter jurisdiction.  The District Court identified two requirements to establish jurisdiction under § 1252(e)(3): (1) existence of a "writing" underlying the challenged action; and (2) that the lawsuit be "filed no later than 60 days after the date the challenged [writing] . . . is first implemented.'"  Apx.491-92, 501.  The District Court erred in applying this standard to find jurisdiction lacking over all but one of the Challenged Actions (and even then, in finding jurisdiction as to only some Plaintiffs but barring later-joined Plaintiffs).

Plaintiffs have identified several bases establishing § 1252(e)(3) jurisdiction here.  First, jurisdiction to review Challenged Action No. 9 (Mandatory Fraud Review) is undisputed, and the District Court erred by barring later joined Plaintiffs' claims.  Second, Plaintiffs timely filed suit against the Challenged Actions for which the government concedes the existence of written policies or procedures.  Third, despite the government's failure to disclose documents relevant to other Challenged Actions, Plaintiffs have identified written policies.

**A. The Court Erred by Barring Later-Joined Plaintiffs' Claims as to Challenged Action No. 9.**

With respect to Challenged Action No. 9—which challenged the requirement, undisputedly implemented on August 23, 2019, that any positive determination be reviewed by the USCIS Fraud Detection and National Security Directorate—the District Court correctly found that all original Plaintiffs filed timely claims sufficient to confer jurisdiction. Apx.505. The District Court erred, however, in finding that the claims of the Plaintiffs added to the SAC and the proposed Joinder Plaintiffs were untimely as they were not filed within 60 days of August 23, 2019. Apx.506-12.

The District Court's exclusive reliance on *AILA*, 199 F.3d at 1356-57, is misplaced. There, the Court merely affirmed the dismissal of plaintiffs who were joined after the 60-day filing window where *no plaintiff* had a timely, viable claim. *Id.* ("[W]e have appeals by the individual aliens who filed late and for that reason had their claims dismissed, and by the two non-asylum seekers . . . who filed timely but lost for failure to state a cause of action. We see no reason to disturb the district court's analysis, and so we affirm the dismissal of these claims." (citing *AILA*, 18 F. Supp. 2d at 46-47, 52-60).

Here, the Plaintiffs added to the SAC and the Joinder Plaintiffs joined the original Plaintiffs' action, which was timely filed as to Challenged Action No. 9, such that the District Court has subject matter jurisdiction over all Plaintiffs' claims.

46

Apx.506.  There is no legal basis for precluding the later-added Plaintiffs from joining that timely-filled action, as § 1252(e)(3)'s 60-day filing deadline is specific to the filing of the "action" relative to the date the challenged policy is implemented, rather than tied to the filing of individual claims.  8 U.S.C. § 1252(e)(3).  Where multiple plaintiffs assert claims seeking precisely the same type of relief—such as here—and where the court has subject matter jurisdiction to consider the claims of at least one of those plaintiffs (as the District Court found here with respect to the original Plaintiffs) the court need not address its jurisdiction to consider the claims of the remaining plaintiffs.  *See, e.g.*, *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 53 n.2 (2006) ("[T]he presence of one party with standing is sufficient to satisfy Article III…."); *Clinton v. City of New York*, 524 U.S. 417, 434-35 (1998) (similar); *Bowsher v. Synar*, 478 U.S. 714, 721 (1986) (similar); *Sec'y of the Interior v. Californ*ia, 464 U.S. 312, 319 n.3 (1984) (similar).  Thus, "Plaintiffs need only demonstrate that the Court has jurisdiction under § 1252(e)(3) over the claims of at least one of the individual plaintiffs" to invoke the Court's jurisdiction.  *O.A. v. Trump*, 404 F. Supp. 3d 109, 139 (D.D.C. 2019).

This makes good sense.  Otherwise, the government could simply moot one plaintiff's timely challenge to an unlawful policy by taking that plaintiff out of expedited removal proceedings after the 60-day filing period elapsed, thus precluding later-joined plaintiffs—and, indeed, anyone—from ever challenging that

policy, effectively insulating it from review.  "That reading of the statute would attribute to Congress an intent to empower the government to avoid an unfavorable decision at any time," and it is "doubt[ful] that Congress intended such an arbitrary result." *Id.*

Because this "*action*" was timely filed by at least one Plaintiff within 60 days of Challenged Action No. 9's implementation, the District Court has jurisdiction over all Plaintiffs' challenges to that Action and erred by dismissing all Plaintiffs joined to the SAC.

For the same reason, the Court erred in denying Plaintiffs' motions for joinder.  Apx.506-12.  The Joinder Plaintiffs plainly satisfy Rule 20(a)(1)'s commonality requirements as they are bringing the exact same claims to Challenged Action 9 that the District Court found timely-filed by the original Plaintiffs (as well as the exact same claims that the District Court improvidently found it lacked jurisdiction over, a finding this Court should reverse).  *See Disparte v. Corporate Executive Bd.*, 223 F.R.D. 7, 10 (D.D.C. 2004).  The result of the District Court's denial of the joinder motions is that the Joinder Plaintiffs would be precluded from joining actions challenging—and thus subject to removal under—policies and procedures that could later be determined to be unlawful.  The Court should not sanction the application of the unlawful Challenged Actions to the Joinder Plaintiffs when viable claims over those Challenged Actions have

already been filed, as there is "no authority to support the proposition that a Court may declare an action unlawful but have no power to prevent that action from violating the rights of the very people it affects." *Grace*, 344 F. Supp. 3d at 144.

### B. Plaintiffs' Claims Are Timely.

#### 1. Equitable Tolling Applies

The District Court erroneously rejected Plaintiffs' argument that equitable tolling applies to § 1252(e)(3)'s filing requirement. In doing so, it relied on a single, nonbinding district court decision from 1998—*AILA*—and did not account for applicable intervening Supreme Court authority, *United States v. Kwai Fun Wong*, 575 U.S. 402 (2015).

The Supreme Court's holding in Wong has clear applicability here. As the District Court acknowledged, "In that case, the Court held that there is a presumption that filing deadlines, including deadlines for suits against the United States, are subject to equitable tolling." Apx.501 (quoting *Kwai Fun Wong*, 575 U.S. at 408). But the District Court declined to apply such a presumption as to § 1252(e)(3) on the grounds that "the Supreme Court's holding in Wong was limited to the Federal Tort Claims Act," finding itself constrained to follow *AILA*'s "binding precedent" instead. Apx.501. *Kwai Fun Wong* is not so limited, and *AILA* is not binding.

In *Kwai Fun Wong*, far from stating that its holding was limited to the Federal Tort Claims Act, the Court noted that "most time bars are non-

jurisdictional." 575 U.S. at 408. Because "filing deadlines" are "'quintessential claim-processing rules" that "'seek to promote the orderly progress of litigation'" they generally "do not deprive a court of authority to hear a case." *Id.* (quoting *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011)). Accordingly, "[t]he Government must clear a high bar to establish that a statute of limitations is jurisdictional" and identify a "clear statement" by Congress to that effect. *Id.* "Absent such a clear statement, courts should treat the restriction as nonjurisdictional." *Id.* (internal quotation marks omitted); *see also id.* at 410 ("Congress must do something special, beyond setting an exception-free deadline, to tag a statute of limitations as jurisdictional and so prohibit a court from tolling it.").

There is no such clear statement with respect to § 1252(e)(3). *See Make the Road*, 405 F. Supp. 3d at 26 (§ 1252(e)(3) "is not couched in jurisdictional terms"). The District Court identified none in relying on *AILA*. That 1998 district court decision held that § 1252(e)(3)'s 60-day filing deadline is "jurisdictional"— without identifying any clear statement by Congress to that effect—and dismissed the claims of plaintiffs who filed outside the 60-day window. 18 F. Supp. 2d at 46-47. As noted above, on appeal the Court simply affirmed dismissal, seeing "no reason to disturb the district court's analysis," without further comment. 199 F.3d at 1356-57. The district court's opinion is *AILA* is thus nonbinding and outdated,

as it is inconsistent with the Supreme Court's decision in *Wong* and has been called into question by recent decisions in this Circuit. *See Make the Road*, 405 F. Supp. 3d at 26 ("*AILA* . . . fails to capture the current state of the law").

Absent a clear statement of Congressional intent, equitable tolling applies to § 1252(e)(3) and this Court should reverse the District Court's finding to the contrary.

### 2. Plaintiffs' Claims Were Brought Within 60 Days

***Challenged Action No. 2***.    The District Court found the "writing" requirement satisfied as to Challenged Action No. 2 "which alleges that the officers conducting the asylum interviews have not been adequately trained." Apx.503.    The District Court found (i) that a "Memorandum of Agreement between the U.S. Customs and Border Protection (CBP) and U.S. Citizenship and Immigration Services (USCIS) signed on July 10, 2019" (the "July MOA") governed Border Patrol Agents' training; (ii) that "[a]fter being trained [under the July MOA], Border Patrol Agents began conducting interviews at the South Texas Family Residential Center in Dilley, on or about September 9, 2019;" and (iii) and that the July MOA had been "updated . . . on January 30, 2020." Apx.503-04.  On these findings, Plaintiffs' claims as to Challenged Action No. 2 are timely.

The Court erred in holding that the July MOA's signing date—"July 10, 2019"—constituted the "first implementation" of the policy from which §

1252(e)(3)'s 60-day filing clock began to run, as opposed to when Border Patrol Agents began conducting interviews pursuant to the training they received under the July MOA in September 2019. ECF 73, at 35-37 (Plaintiffs' Memorandum of Law in Opposition to Partial Motion to Dismiss). Neither Defendants nor the District Court cited any authority for the proposition that the *signing date* of a policy, rather than the date it is put into practical effect, constitutes "implementation," as the word brooks no such interpretation. Rather, "Merriam-Webster's Collegiate Dictionary defines 'implement' as 'carry out, accomplish; esp[ecially] to give practical effect to and ensure of actual fulfillment by concrete measures[.]' Merriam-Webster's Collegiate Dictionary 624 (11th ed. 2003)." *McAleenan*, 405 F. Supp. 3d at 31. Were it otherwise, the government could simply put all policies into effect by signing them 60 days before disclosing them, and thereby insulate them from review. It is unlikely that Congress intended such an arbitrary result. *See O.A.*, 404 F. Supp. 3d at 138 (rejecting similar "reading of the statute"); *Padilla*, 2019 WL 7486849, at *1 (similar).

Independently, even accepting that the signing date of a written policy constitutes its implementation, the District Court failed to address why the fact that the July MOA was "updated . . . on January 30, 2020"—in other words, re-implemented as of that date—does not render Plaintiffs' claims timely.

***Challenged Action No. 1***.  The District Court found the "writing" requirement satisfied as to Challenged Action No. 1, which "alleges that officials at the border avoid meaningfully orienting migrants to applicable standard[s] and procedures."  Apx.501.  Specifically, Plaintiffs identified a 2019 M-444 Form, "which is provided to a noncitizen before an interview and describes the process and standards involved," that "became outdated and inaccurate on July 16, 2019, the day the [Transit Ban] took effect."  Apx.501-02.  Despite Plaintiffs bringing suit within 60 days of July 16, the date on which the government began implementing the policy of providing inaccurate information to interviewees via the 2019 M-444 form, the District Court relied on the date the form was issued— "May of 2019"—to find Plaintiffs' claims time-barred.  Apx.501-02.  For the reasons noted above, this interpretation is unsupported and cannot be squared with the plain meaning of Congress's use of the term "implement" in § 1252(e)(3).

The District Court's ruling on Challenged Action No. 1 should also be rejected because in accepting Defendants' "den[ial] that there was any new policy—much less, a written policy—regarding the continued use of the Form M-444", Apx.502, the Court impermissibly "accept[ed] the government's theory of the case [on the merits]: that the credible fear policies are not 'new.'"  *Grace*, 344 F. Supp. 3d at 119-20 (rejecting identical argument).  In resolving a Rule 12(b)(1) motion the District Court should have "'assume[d] that on the merits the plaintiffs would be

successful in their claims.'" *Id.* (quoting *City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003)).

### C. Plaintiffs Have Identified Written Policies.

The District Court rejected Plaintiffs claims as to Challenged Action Nos. 3, 4, 5, 6, 7, 10, and 11 based on its finding that the policies Plaintiffs are challenging are not in "writing." Apx.500. For the reasons explained above, if this conclusion is correct, then jurisdiction exists under 28 U.S.C. § 1331, as the government cannot shield itself from suit merely by adopting unwritten policies. Moreover, there was no basis to find that, as a matter of law, there were no written policies underlying the Challenged Actions.

For each of the Challenged Actions, Plaintiffs presented significant evidence of systematic, uniform changes in policies post-dating the Transit Ban from which the presence of written—albeit undisclosed—directives can be inferred. ECF 73, at 30-34 (Plaintiffs' Memorandum of Law in Opposition to Partial Motion to Dismiss) ("As the evidence shows, in the period following the Transit Ban, Defendants and their agents began to systematically engage in all eleven Challenged Actions. As Plaintiffs pleaded and have shown, this shift in conduct was not a 'tendency' or 'trend' or the result of a couple of 'bad apple' officers—it was lockstep, near universal action."). Notwithstanding such evidence, the District Court took the government's representation—provided in an affidavit from Ashley

Caudill-Mirillo, the USCIS's Deputy Chief of the Asylum Division—that "there are no writings related to [these] policies" at face value, and ruled on subject matter jurisdiction as a matter of law without allowing Plaintiffs to challenge the government's representation through discovery.

This Court has held that district courts "must bear in mind what procedural protections could be required to assure that a full airing of the facts pertinent to a decision on the jurisdictional question may be given to all parties" and "indicated that ruling on a Rule 12(b)(1) motion may be improper before the plaintiff has had a chance to discover the facts necessary to establish jurisdiction." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 198 (D.C. Cir. 1992). The Court in *Herbert* went on to note that further discovery, and in some cases "hold[ing] evidentiary hearings" may be necessary to "resolv[e] particularly complicated factual disputes rather than to rely on affidavits alone." *Id.*

This is just such a case. There is no basis to dismiss the case now in exclusive reliance on Ms. Caudill-Mirillo's untested affidavit. Indeed, a prior version of Ms. Caudill-Mirillo's affidavit stated that no relevant writings existed other than the ones she attached. ECF 59-1, ¶¶ 23–34 (Caudill-Mirillo Declaration). But that proved to be untrue, as the Deputy Chief subsequently provided a supplemental declaration with more relevant documents, the existence of which the first affidavit disclaimed. ECF 73, at 33 (Plaintiffs' Memorandum of Law in Opposition to

55

Partial Motion to Dismiss). Plaintiffs are entitled to continue to test the government's representations through discovery, which will establish what Defendants' lockstep policies suggest—that they are governed by written documents. A contrary finding would allow Defendants to "shield [their] decisions from judicial review simply by refusing to put those decisions in writing." *Aracely v. Nielsen*, 319 F. Supp. 3d 110, 139 (D.D.C. 2018) (citation omitted).

## CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that this Court reverse the decision of the District Court and remand this case for further proceedings.

Dated:    June 17, 2020

|  |  |
|---|---|
| | Respectfully Submitted, |
| | GREENBERG TRAURIG, LLP |
| RAPID DEFENSE | /s/ Steven G. Barringer |
| NETWORK | By:  Steven G. Barringer |
| Gregory P. Copeland | 2101 L Street, N.W. |
| Sarah T. Gillman | Suite 1000 |
| Rapid Defense Network | Washington, D.C. 20037 |
| 11 Broadway, Suite 615 | barriners@gtlaw.com |
| New York, NY 10004 | |
| Tel: (212) 843-0910 | Caroline J. Heller |
| gregory@defensenetwork.org | 200 Park Ave. |
| sarah@defensenetwork.org | New York, New York 10166 |
| | hellerc@gtlaw.com |
| | |
| | James E. Gillenwater |
| | 333 SE 2nd Avenue, #4400 |
| | Miami, FL  33131200 Park Ave |
| | gillenwaterj@gtlaw.com |

*Counsel for Plaintiffs-Appellants*

56

## Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1. This document complies with the Type-Volume limitations of Fed. R. App. P. 32(a)(7)(B) because, taking into account the exemptions provided in Fed. R. App. P. 32(f), this document contains 12,704 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally-spaced typeface using Microsoft Word 2007 in 14-point Times New Roman font.

Dated:   June 17, 2020                          */s/ Steven Barringer*

                                                *Attorney for Appellants*

# CERTIFICATE OF SERVICE

I, Steven Barringer, hereby certify that on June 17, 2020, a true and correct copy of the foregoing Brief of Plaintiffs-Appellants M.M.V. *et al.* was served electronically upon the below-listed parties via email:

Christopher Hair
Erez R. Reuveni
Assistant U.S. Attorney
District of Columbia
555 4th St. NW
Washington, D.C. 20530
Office: (202) 252-2541
Mobile: (202) 809-5387
Christopher.Hair@usdoj.gov
Erez.R.Reuveni@usdoj.gov

Dated:    June 17, 2020                    */s/ Steven Barringer*

                                          *Attorney for Appellants*