Oral Argument Scheduled: September 11, 2020

## Nos. 20-5106, 20-5129

# IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

M.M.V., *et al.*,
*Plaintiffs-Appellants*,

*v.*

WILLIAM P. BARR, *et al.*,
*Defendants-Appellees*.

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
No. 19-cv-2773
The Hon. Amy Berman Jackson

## BRIEF FOR THE APPELLEES

ETHAN P. DAVIS
Acting Assistant Attorney General
WILLIAM C. PEACHEY
Director
EREZ REUVENI
Assistant Director
Office of Immigration Litigation
District Court Section
United States Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20530

MICHAEL R. SHERWIN
Acting United States Attorney
R. CRAIG LAWRENCE
CHRISTOPHER C. HAIR
Assistant United States Attorneys

*Attorneys for Defendants-Appellees*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**(A)    Parties and Amici**

All parties, intervenors, and amici appearing in this Court are listed in the Brief for Plaintiffs-Appellants.

**(B)    Rulings under Review**

The rulings under review are the opinion and order entered on April 27, 2020 (Dkt. Nos. 96, 97).

**(C)    Related Cases**

This case has not previously been before this Court.  Defendants are aware of one additional case, *D.A.M. v. Barr*, No. 20-cv-01321-CRC (D.D.C.) (Cooper, J.), in which many of the same Plaintiffs in this appeal challenge the legality of effectuating their orders of expedited removal, notwithstanding the motions panel in this case dissolving the administrative stay of removal that prevented their removal.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................. iv

GLOSSARY OF ABBREVIATIONS................................................... xii

INTRODUCTION.................................................................................. 1

STATEMENT OF JURISDICTION .................................................... 3

STATUTES AND REGULATIONS .................................................... 3

STATEMENT OF THE ISSUES ......................................................... 3

STATEMENT OF THE CASE ............................................................. 4

SUMMARY OF THE ARGUMENT ................................................. 18

STANDARD OF REVIEW................................................................. 21

ARGUMENT...................................................................................... 21

I.    The District Court Lacked Jurisdiction Over Plaintiffs' Claims. ......... 21

    A.    The District Court Correctly Found as A Factual Matter that Plaintiffs Had Failed to Identify Written Policies and Correctly Concluded that Section 1252 Therefore Barred Judicial Review................................ 24

    B.    Plaintiffs' Claim That Section 1252(e)(3)'s Limitations on Judicial Review to Written Policies Are Unconstitutional Is Time-Barred and Fails on its Merits................................ 39

    C.    The District Court Correctly Held that Challenged Actions 1, 2, and 6 Were Time-Barred. ................................ 45

II.    The District Court Did Not Abuse its Discretion By Denying Plaintiffs' Joinder Motions................................ 52

CONCLUSION ................................................................................. 55

**CERTIFICATE OF COMPLIANCE** ................................................................. 55

**CERTIFICATE OF SERVICE** ........................................................................ 56

# TABLE OF AUTHORITIES

## CASE LAW

*Aguilar v. ICE*,
  510 F.3d 1 (1st Cir. 2007) ............................................................................... 29

*Aid Ass'n for Lutherans v. USPS*,
  321 F.3d 1166 (D.C. Cir. 2003) ...................................................................... 35

*\*Am. Immigration Lawyers Ass'n (AILA) v. Reno*,
  18 F. Supp. 2d 46 (D.D.C. 1998), *aff'd* 199 F.34d 1356  (D.C. Cir. 2000). 24, 36,
  41, 44, 48, 50, 52

*\*Am. Immigration Lawyers Ass'n (AILA) v. Reno*,
  199 F.3d 1352 (D.C. Cir. 2000) .........1, 4, 5, 24, 25, 36, 38, 40 44, 46, 48, 51, 52

*Am. Petroleum Inst. v. Envtl. Prot. Agency*,
  862 F.3d 50 (D.C. Cir. 2017), *decision modified on reh'g,* 883 F.3d 918 (D.C.
  Cir. 2018) ........................................................................................................ 47

*Amgen, Inc. v. Smith*,
  357 F.3d 113 (D.C. Cir. 2004) ........................................................................ 34

*Barr v. East Bay Sanctuary Covenant*,
  No. 19A230, 2019 WL 4292781 (U.S. Sept. 11, 2019) ............................... 9, 10

*Belizan v. Hershon*,
  434 F.3d 579 (D.C. Cir. 2006) ........................................................................ 39

*Block v. Community Nutrition Institute*,
  467 U.S. 345 (1984) ........................................................................................ 34

*Bowles v. Russell*,
  551 U.S. 205 (2007) ........................................................................................ 41

*\*Breen v. Chao*, 05-CV-0654 (PLF),
  2018 WL 1509077 (D.D.C. Mar. 27, 2018) ............................................... 47, 54

*Capital Area Immigrants' Rights Coal. v. Trump,*
2020 WL 3542481 (D.D.C. June 30, 2020).........................................................9

*Capital Area Immigrants' Rights Coal. v. Trump,*
No. Civ. A. No. 19-2117 (TJK), 2019 WL 3436501 (D.D.C. July 24, 2019) ...... 9

*Carlson v. Landon,*
342 U.S. 524 (1952)...........................................................................................41

*Castro v. DHS,*
835 F.3d 422 (3d Cir. 2016)..................................................................23, 24, 26, 45

*Cheyenne Arapaho Tribes of Okla. v. United States,*
558 F.3d 592 (D.C. Cir. 2009) ...................................................................... 37, 38

*Clark v. Martinez,*
543 U.S. 371 (2005)...........................................................................................31

*Connecticut Nat'l Bank v. Germain,*
503 U.S. 249 (1992).......................................................................................... 28

*Dep't of Homeland Sec. v. Thuraissigiam,*
40 S. Ct. 1959 (U.S. June 25, 2020)................................... 4, 5, 26, 41, 42, 43, 44

*Dugdale v. U.S. Customs & Border Prot.,*
88 F. Supp. 3d 1 (D.D.C. 2015) ..................................................................... 40, 48

*East Bay Sanctuary Covenant v. Barr,*
385 F. Supp. 3d 922 (N.D. Cal. 2019)................................................................. 9

*East Bay Sanctuary Covenant v. Barr,*
391 F. Supp. 3d 974 (N.D. Cal. 2019)................................................................. 9

*East Bay Sanctuary Covenant v. Barr,*
934 F.3d 1026 (9th Cir. 2019)............................................................................. 9

*East Bay Sanctuary Covenant v. Barr,*
---F.3d---, 2020 WL 3637585 (9th Cir. July 6, 2020) ...................................... 10

*FC Inv. Grp. LC v. IFX Markets, Ltd.*,
529 F.3d 1087 (D.C. Cir. 2008) ........................................................ 37

*Garcia de Rincon v. DHS*,
539 F.3d 1133 (9th Cir. 2008) ........................................................... 45

*Grace v. Barr*,
--- F.3d ---, 2020 WL 4032652 (D.C. Cir. July 17, 2020) ................................. 24

*Guerrero-Lasprilla v. Barr*,
140 S. Ct. 1062 (2020) .................................................................. 25

*Harper v. Virginia Dep't of Taxation*,
509 U.S. 86 (1993) ....................................................................... 9

*Herbert v. Nat'l Acad. of Scis.*,
974 F.2d 197 (D.C. Cir. 1992) .....................................20, 21, 25, 36, 45

*Khan v. Holder*,
608 F.3d 325 (7th Cir. 2010) ....................................................... 25, 44

*Klayman v. Nat'l Sec. Agency*,
280 F. Supp. 3d 39 (D.D.C. 2017), *aff'd sub nom. Klayman v. Obama,* 759 F.
App'x 1 (D.C. Cir. 2019) ............................................................... 37

*L.M.-M. v. Cuccinelli*,
--- F. Supp. 3d ---, 2020 WL 985376 (D.D.C. Mar. 1, 2020).....24, 25, 30, 32, 33,
34, 37, 42, 47, 48

*Lansburgh & Brothers v. Clark*,
127 F.2d 331 (D.C. Cir. 1942) ......................................................... 54

*M.K. v. Tenet*,
216 F.R.D. 133 (D.D.C. 2002)......................................................... 53

*Make the Rd. New York v. Wolf*,
2020 WL 3421904 (D.C. Cir. June 23, 2020)....................24, 25, 26, 29, 31, 35

*Make the Rd. New York v. McAleenan*,
405 F. Supp. 3d 1 (D.D.C. 2019) ................................................... 35, 49

*Myers v. Comm'r*,
928 F.3d 1025 (D.C. Cir. 2019) .................................................................... 48

*Naartex Consulting Corp. v. Watt*,
722 F.2d 779 (D.C. Cir. 1983) .............................................................. 21, 54

*Nken v. Holder*,
556 U.S. 418 (2009) ............................................................................... 1, 18

*Patchak v. Zinke*,
138 S. Ct. 897 (2018) ................................................................................. 22

*Rubino v. United States*,
707 F. App'x 716 (D.C. Cir. 2017) ........................................................ 21, 54

*Sadat I. v. Nielsen*,
Civ. A. No. 17-1976, 2019 WL 108854 (D.D.C. Jan. 4, 2019) ................... 53, 54

*Shunaula v. Holder*,
732 F.3d 143 (2d Cir. 2013) ....................................................................... 45

*Sinochem International Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
549 U.S. 422 (2007) .................................................................................. 47

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .................................................................................... 47

*Trudeau v. Fed. Trade Comm'n*,
456 F.3d 178 (D.C. Cir. 2006) .................................................................... 34

*Umbert v. United States*,
No. 18-CV-1336, 2019 WL 4305576 (D.D.C. Sept. 11, 2019) ..................... 52

*United States v. Kwai Fun Wong*,
575 U.S. 402 (2015) .................................................................................. 48

*United States v. Stover*,
329 F.3d 859 (D.C. Cir. 2003) .................................................................... 30

*United States v. Torres,*
115 F.3d 1033 (D.C. Cir. 1997) ............................................................ 49

*United States v. Villarreal Silva,*
931 F.3d 330 (4th Cir. 2019) ................................................................ 41

*United States v. Williams,*
553 U.S. 285 (2008) ............................................................................. 29

*Utility Air Regulatory Grp. v. EPA,*
573 U.S. 302 (2014) ............................................................................. 27

*Vijender v. Wolf,*
No. 19-CV-3337 (APM), 2020 WL 1935556 (D.D.C. Apr. 22, 2020)......... 24, 48

*Yates v. U.S,*
574 U.S. 528 (2015) ............................................................................. 29

## FEDERAL STATUTES

5 U.S.C. § 701(a)(1) ................................................................................ 34

6 U.S.C. § 271(b)(3) ................................................................................ 32

6 U.S.C. § 557 ................................................................................... 6, 32

8 U.S.C. § 1103(a) ................................................................................. 32

8 U.S.C. § 1158 .................................................................................. 4, 5

8 U.S.C. § 1158(a)(1) ................................................................................ 6

8 U.S.C. § 1158(a)(2) ................................................................................ 6

8 U.S.C. § 1158(b)(1)(A) ............................................................................ 6

8 U.S.C. § 1158(b)(2)(C) ............................................................................ 6

8 U.S.C. § 1225(b) ............................................................ 2

8 U.S.C. § 1225(b)(1)............................................... 1, 4, 8

8 U.S.C. § 1225(b)(1)(A)(i) ........................................... 4

8 U.S.C. § 1225(b)(1)(A)(ii) .......................................... 5

8 U.S.C. § 1225(b)(1)(B)(ii) ........................................ 44

8 U.S.C. § 1225(b)(1)(B)(iii)(I) ............................... 5, 6

8 U.S.C. § 1225(b)(1)(B)(iii)(III) ................................. 5

8 U.S.C. § 1225(b)(1)(B)(v) ........................................ 5

8 U.S.C. § 1225(b)(1)(C)......................................... 5, 6

8 U.S.C. § 1225(b)(2)..................................................... 3

8 U.S.C. § 1229a ........................................................... 5

8 U.S.C. § 1252 ............................................................. 8

8 U.S.C. § 1252(a)(2)(A)..................................12, 19, 22

8 U.S.C. § 1252(a)(2)(A)(i)......................... 19, 22, 29, 34

8 U.S.C. § 1252(a)(2)(A)(ii).................................19, 22, 34

8 U.S.C. § 1252(a)(2)(A)(iii) ....................................... 6

8 U.S.C. § 1252(a)(2)(A)(iv).............................13, 19, 22, 34

8 U.S.C. § 1252(a)(3)(A)..................................... 13, 23

8 U.S.C. § 1252(a)(3)(A)(i) ....................................... 28

8 U.S.C. § 1252(a)(3)(A)(ii)............................14, 24, 28, 33

8 U.S.C. § 1252(a)(3)(B) ................................................................ 13, 33

8 U.S.C. § 1252(e)(1) ................................................................ 17, 18

8 U.S.C. § 1252(e)(2) ................................................................6, 23, 44

8 U.S.C. § 1252(e)(3) ................................................ 1, 2, 3, 13, 40, 44, 47

8 U.S.C. § 1252(e)(3)(A) ................................................13, 19, 23

8 U.S.C. § 1252(e)(3)(A)(ii) ................................................ 1, 2

8 U.S.C. § 1252(e)(3)(B) ................................................ 40

28 U.S.C. § 1291 ................................................................ 3

28 U.S.C. § 1331 ................................................................3, 22, 36

## REGULATIONS

8 C.F.R. § 208.30(e)(2) ................................................................ 5

8 C.F.R. § 208.30(f) ................................................................ 5

8 C.F.R. § 235.3 ................................................................ 6

8 C.F.R. § 1003.42(f) ................................................................ 5, 6

8 C.F.R. § 1208.30(g)(2)(iv)(A) ................................................................ 6

## FEDERAL RULES OF APPELLATE PROCEDURE

Fed. R. App. P. 32 ................................................................ 56

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 20 ................................................................ 52

Fed. R. Civ. P. 20(a) ......................................................................... 52, 53

Fed. R. Civ. P. 20(a)(1) ......................................................................... 52

Fed. R. Civ. P. 20(a)(1)(A) ..................................................................... 16

Fed. R. Civ. P. 21 ................................................................................ 53

## PUBLIC LAW

Pub. L. No. 104-208 .............................................................................. 40

## FEDERAL REGISTER

84 Fed. Reg. 33,837 ............................................................................... 7

84 Fed. Reg. 33,843 ............................................................................ 1, 7

69 Fed. Reg. 48877-81 ........................................................................... 4

# GLOSSARY OF ABBREVIATIONS

AILA — *Am. Immigration Lawyers Ass'n v. Reno*, 199 F.3d 1352 (D.C. Cir. 2000) or *Am. Immigration Lawyers Ass'n v. Reno*, 18 F. Supp. 2d 46 (D.D.C. 1998)

APA — Administrative Procedure Act

Apx. — Plaintiffs' Appendix, followed by page numbers

Board — Board of Immigration Appeals

CAT — Convention Against Torture

CBP — Customs and Border Protection

DHS — Department of Homeland Security

Dkt. — Docket Entry for District Court, followed by page numbers

DOJ — Department of Justice

FVRA — Federal Vacancies Reform Act

IJ — Immigration Judge

INA — Immigration and Nationality Act

INS — Immigration and Naturalization Service

Op. — District Court's Memorandum Opinion, Dkt. 97, Apx.469-513

Order — District Court's Order, Dkt. 96, Apx.467-68

| | |
|---|---|
| Rule | Asylum Eligibility and Procedural Modifications, 84 Fed. Reg. 33,829 |
| S.Apx. | Defendants' Supplemental Appendix, followed by page numbers |
| Secretary | Secretary of Homeland Security |
| USCIS | United States Citizenship and Immigration Services |

# INTRODUCTION

Plaintiffs are inadmissible aliens subject to final orders of expedited removal who at the time their final orders were issued were ineligible for asylum or other protections in this country. *See* 8 U.S.C. § 1225(b)(1); 84 Fed. Reg. at 33,843. They challenged those final orders under 8 U.S.C. § 1252(e)(3), which authorizes limited judicial review of "written polic[ies]" implementing the expedited removal system under 8 U.S.C. § 1225(b)(1) if those policies are challenged within "60 days after the date the challenged [policy] is first implemented." 8 U.S.C. § 1252(e)(3)(A)(ii), (B). Plaintiffs alleged eleven "credible fear policies" exist, and that each policy was unlawful under the Administrative Procedure Act (APA), the Immigration and Nationality Act (INA), and the First and Fifth Amendments. The district court dismissed most of the Plaintiffs and claims because Plaintiffs failed to identify "written" policies implementing section 1225(b)(1), because their claims were time-barred under section 1252(e)(3)(B), and because joinder of many Plaintiffs was inappropriate. Op. 1-44. That conclusion followed this Court's precedent in *Am. Immigration Lawyers Ass'n v. Reno (AILA)*, 199 F.3d 1352, 1356-57 (D.C. Cir. 2000). A motions panel of this Court rejected Plaintiffs' request for a stay of their removal pending resolution of this appeal, necessarily concluding that Plaintiffs could not demonstrate a "strong likelihood of success on the merits."

*Nken v. Holder*, 556 U.S. 418, 436 (2009). This Court should now affirm the district court's well-reasoned decision in full.

*First*, the district court correctly held that it lacked jurisdiction over Plaintiffs' challenges to all but one of the alleged credible-fear policies. Op. 24-38. 8 U.S.C. § 1252(e)(3)—the sole possible basis for jurisdiction in this case— authorizes "[j]udicial review of determinations under section 1225(b)," the expedited removal statute, "and its implementation" in D.C. district court, "limited to determinations of," as relevant here, whether such "written" policies "implement[ing]" section 1225(b) are "in violation of law," and only if suit is initiated "no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure ... is first implemented." *Id.* § 1252(e)(3)(A)(ii), (B). After taking evidentiary submissions from both parties, the court found that all but one of the challenged alleged policies either did not exist as a written instrument, or was challenged outside the 60-day limitations period. Op 31-38. Plaintiffs offer no basis to conclude those findings were "clear error," and so the district court decision should be affirmed.

*Second*, the district court correctly concluded that most Plaintiffs—both those previously joined to the case and those whose joinder motions were pending—must be dismissed as improperly joined, because they did not raise a timely challenge to the only alleged policy that remained in the case. Op. 41-42.

All dismissed Plaintiffs failed to plead a claim for relief that satisfied section 1252(e)(3)'s jurisdictional limits. Joinder was therefore futile because "prospective plaintiffs' claims would not survive a motion to dismiss." Op. 42

The Court should therefore affirm the district court's decision and dismiss this appeal.

## STATEMENT OF JURISDICTION

Plaintiffs invoked 28 U.S.C. §§ 1331 and 8 U.S.C. § 1252(e)(3) in the district court as the basis for subject-matter jurisdiction. Apx.6. The district court issued its decision granting the government's partial motion to dismiss on April 27, 2020. Apx.469-512 (Op.), Apx.467-48 (Order). Plaintiffs filed a notice of appeal on April 28, 2020. Apx.513. Thereafter, the district court granted Plaintiffs' motion for a certificate of appealability and entry of final judgment under Rule 54(b). Apx.514-16. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATUTES AND REGULATIONS

Relevant statutes and regulations are included in an addendum.

## STATEMENT OF THE ISSUES

I.     Did the district court correctly dismiss most of the Plaintiffs and claims because (1) Plaintiffs failed to identify "written" policies implementing section 1225(b)(1), and (2) because their claims were time-barred under section 1252(e)(3)(B).

3

II.     Did the district court correctly deny Plaintiffs' motion for joinder by concluding that joinder would be futile where the prospective plaintiffs' claims would not survive a motion to dismiss because of the statute of limitations under section 1252(e)(3)(B).

## STATEMENT OF THE CASE

Legal Background. Congress has authorized the Department of Homeland Security (DHS) to summarily remove from the United States certain inadmissible aliens who have arrived at or illegally crossed the border. *See* 8 U.S.C. § 1225(b)(1); Designating Aliens for Expedited Removal, 69 Fed Reg. 48877-81 (Aug. 11, 2004). Under this summary-removal mechanism—known as "expedited removal"—certain aliens arriving in the United States or who entered illegally who lack valid entry documentation or make material misrepresentations shall be "order[ed] ... removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under [8 U.S.C. § 1158] or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i); *see id.* § 1182(a)(6)(C), (a)(7); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 40 S.Ct. 1959, 2020 WL 3454809, at \*3-5 (U.S. June 25, 2020) (discussing expedited removal system); *AILA*, 199 F.3d at 1360 (same).

If the alien "indicates either an intention to apply for asylum ... or a fear of persecution," the inspecting officer must "refer the alien for" an interview

conducted by an asylum officer.[1] *Id*. § 1225(b)(1)(A)(ii). At the interview, an asylum officer assesses whether the alien has a "credible fear of persecution," meaning "that there is a significant possibility, taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the officer, that the alien could establish eligibility for asylum under [8 U.S.C. § 1158]." *Id*. § 1225(b)(1)(B)(v).

If the officer determines that the alien has a credible fear, the officer refers the alien to full removal proceedings under 8 U.S.C. § 1229a where the alien may apply for asylum and other protection from removal. *Id.* § 1225(b)(1)(B)(ii); 8 C.F.R. § 208.30(f). These removal proceedings provide more extensive procedures than expedited removal, *compare id.* § 1229a *with id.* § 1225(b)(1), including a right to appeal to the Board of Immigration Appeals (Board) and a federal appellate court. *Id.* § 1252(a)(1).

If the asylum officer determines that the alien lacks a credible fear, the alien may seek *de novo* review before an immigration judge (IJ). *Id.* § 1225(b)(1)(B)(iii)(I), (III); *see Thuraissigiam*, 2020 WL 3454809, at *4. If the IJ concludes that the alien has established a credible fear, the asylum officer's decision is vacated and the alien is placed in full removal proceedings. 8 C.F.R. § 1003.42(f). If the IJ finds that the alien lacks a credible fear, the alien is

---

[1] Aliens are also screened for eligibility for withholding of removal and protection

"removed from the United States without further hearing or review." 8 U.S.C. § 1225(b)(1)(B)(iii)(I); 8 C.F.R. § 1208.30(g)(2)(iv)(A). The INA precludes further review by the Board or any court of the credible-fear determination. 8 U.S.C. §§ 1225(b)(1)(C), 1252(a)(2)(A)(iii), 1252(e)(2); 8 C.F.R. § 1003.42(f).

Third-Country-Transit Rule (the "Rule"). Generally, an alien "who is physically present in the United States or who arrives in the United States ... may apply for asylum in accordance with [section 1158] or, where applicable, section 1225(b)." 8 U.S.C. § 1158(a)(1). Asylum "*may* [be] grant[ed] to an alien who has applied," *id*. § 1158(b)(1)(A) (emphasis added), if the alien satisfies certain standards and is not subject to an application or eligibility bar, *id*. § 1158(a)(2), (b)(1)(B), (b)(2). The "Attorney General [and the Secretary of Homeland Security] may by regulation establish additional limitations and conditions, consistent with [section 1158], under which an alien shall be ineligible for asylum." *Id*. § 1158(b)(2)(C).[2]

On July 16, 2019, the Attorney General and the Acting Secretary issued the Rule, which provides that, with limited exceptions, "any alien who enters, attempts to enter, or arrives in the United States across the southern land border on or after July 16, 2019, after transiting through at least one country outside the alien's

under the Convention Against Torture (CAT). 8 C.F.R. §§ 208.30(e)(2), 235.3.
[2] References to the Attorney General refer to the Secretary with respect to functions transferred to DHS from the Department of Justice. 6 U.S.C. § 557.

6

country of citizenship, nationality, or last lawful habitual residence en route to the United States, shall be found ineligible for asylum." 84 Fed. Reg. at 33,843. The Rule provides that "[a]liens determined to be ineligible for asylum by virtue of falling subject to the third-country-transit bar ... would still be screened, but in a manner that reflects that their only viable claims could be for statutory withholding or [CAT] protection." 84 Fed. Reg. 33,837. Thus, after an applicant is determined to be ineligible for asylum because he is subject to the Rule, the asylum officer must then assess whether "further proceedings on a possible statutory withholding or CAT protection claim are warranted," which imposes the higher "reasonable fear" standard, rather than the "credible fear" standard. *Id*.

The Rule carefully explains how the "screening process established by the [Rule] will proceed." 84 Fed. Reg. at 33,837. The asylum officer first "ask[s] threshold questions to elicit whether an alien is ineligible for a grant of asylum pursuant to the third-country-transit bar." *Id.* "If there is a significant possibility that the alien is not subject to the eligibility bar (and the alien otherwise demonstrates that there is a significant possibility that he or she can establish eligibility for asylum), then the alien will have established a credible fear." *Id.* However, if "an alien lacks a significant possibility of eligibility for asylum because of the third-country transit bar, then the asylum officer will make a negative credible-fear finding." *Id.* Thereafter, "[t]he asylum officer [applies] the

7

reasonable-fear standard to assess the alien's claims for statutory withholding of removal or CAT protection." *Id.* at 33,838. An alien subject to the Rule who "clears the reasonable-fear screening" is placed in full removal proceedings, where they may pursue their claims for withholding of removal or CAT protection, and also challenge whether they were "incorrectly identified as subject to the third-country-transit bar." *Id.* "Such aliens can appeal the immigration judge's decision in these proceedings to the Board and then seek review from a Federal court of appeals." *Id.* "Conversely, an alien who is found to be subject to the third-country-transit asylum eligibility bar and who does not clear the reasonable-fear screening standard can obtain review of both of those determinations before an immigration judge, just as immigration judges currently review negative credible-fear and reasonable-fear determinations. *Id.* "If the immigration judge finds that either determination was incorrect, then the alien will be placed into [full removal] proceedings." *Id.* "If, however, the immigration judge affirms both determinations, then the alien will be subject to removal without further appeal, consistent with the existing process under [8 U.S.C. §§ 1225(b)(1) and 1252]."

On July 24, 2019, a district court in this Circuit denied a request for a temporary nationwide restraining order enjoining operation of the rule, concluding that "plaintiffs [had] not shown a likelihood of irreparable harm entitling them to a temporary restraining order," and further conveying "strong doubts that the

8

plaintiffs will be able to successfully show that the . . . Rule exceeds the Attorney General's authority." *Capital Area Immigrants' Rights Coal. v. Trump*, No. Civ. A. No. 19-2117 (TJK), 2019 WL 3436501, at *4 (D.D.C. July 24, 2019).[3] That same day, a district court in California enjoined the Rule nationwide. *East Bay Sanctuary Covenant v. Barr*, 385 F. Supp. 3d 922 (N.D. Cal. 2019). The Ninth Circuit stayed the injunction outside the Ninth Circuit. 934 F.3d 1026 (9th Cir. 2019). The district court thereafter restored the nationwide scope of the injunction. 391 F. Supp. 3d 974 (N.D. Cal. 2019). On September 11, the Supreme Court stayed the district court's injunctive orders "in full," allowing the Rule to go into effect nationwide. *Barr v. East Bay Sanctuary Covenant*, No. 19A230, 2019 WL 4292781 (U.S. Sept. 11, 2019). That stay remains in effect "pending disposition of the Government's appeal" and "the Government's petition for a writ of certiorari, if such writ is sought."[4] *Id.*

---

[3] The district court later issued a decision vacating the Rule for failure to follow notice-and-comment procedures on June 30, 2020. *See Capital Area Immigrants' Rights Coal. v. Trump*, 2020 WL 3542481 (D.D.C. June 30, 2020). Plaintiffs in this case, however, are not parties to that case, and received final orders of removal not subject to further direct review when the Rule was valid, and so those orders are not impacted by this decision. *See Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97 (1993) ("interpretation of federal law ... must be given full retroactive effect in *all cases still open on direct review*") (emphasis added). In any event, Plaintiffs expressly disclaim, repeatedly, challenging their orders based on the Rule in this case, and so that issue is not presented here. *See* S.Apx.5, 12; Op. 35.

[4] The Ninth Circuit affirmed the injunction on July 6, 2020. *East Bay Sanctuary Covenant v. Barr*, ---F.3d---, 2020 WL 3637585 (9th Cir. July 6, 2020). That injunction remains stayed per the Supreme Curt's order. *See* 2019 WL 4292781.

This Lawsuit. On September 16, 2019, Plaintiffs—126 inadmissible aliens apprehended at or shortly after crossing the border illegally—filed suit, alleging that the government had issued various unlawful policies implementing the Rule. Dkt. 1. All Plaintiffs received negative credible fear determinations based on their ineligibility for asylum under the Rule, and their failure to demonstrate a reasonable fear of persecution or torture. *See id.* On September 25, 2019, Plaintiffs filed a motion for temporary restraining order (TRO), seeking a stay of their removal pending resolution of their case. Dkt. 13. An emergency duty judge issued an administrative stay that day to preserve the status quo pending briefing of the motion. Dkt. 16.

The same day, the district court Calendar and Case Management Committee deemed the case "related" to *Capital Area Immigrants' Rights Coalition*, and so assigned it to Judge Kelly. However, Plaintiffs took the position before Judge Kelly that they "are not challenging the legality of the [Rule] itself, nor are they challenging the direct implementation of that [Rule] in the expedited removal process." S.Apx.5. Relying on that concession Judge Kelly concluded the cases were not related because "Plaintiffs repeatedly make clear in their complaint that they do not challenge the July 16 Rule." S.Apx.12. "Plaintiffs have chosen to challenge alleged regulations and policies separate and apart from the July 16 Rule—a choice that they must be held to as the parties litigate their claims."

S.Apx.12-13. Judge Kelly concluded that "if Plaintiffs' allegations are mistaken—that is, if the alleged procedures are actually just direct applications of the July 16 Rule—Plaintiffs have conceded that that is outside the bounds of their complaint." S.Apx.13. Thereafter, the case was assigned to Judge Amy Berman Jackson.

On October 17, 2019, Plaintiffs filed a first amended complaint, adding 31 Plaintiffs, who also received negative credible fear determinations based on the Rule, and their failure to demonstrate a reasonable fear of persecution or torture. Dkt. 28. The district court issued another administrative stay of removal. On December 5, 2019, Plaintiffs filed a second amended complaint and moved to add 98 Plaintiffs, also subject to negative credible fear determinations, Dkt. 47, which the court granted, Apx.1-68, along with another administrative stay. That operative complaint alleges that the government issued eleven policies that alter the credible-fear process, Apx.44-53, ¶¶ 141-59; Op. 8-12, asserting that these policies were "contrary to the Refugee Act, the [INA], and the Administrative Procedure Act [("APA")]," were "arbitrary and capricious" under the APA, violate the First and Fifth Amendments, did not undergo "notice-and-comment procedures," and "fail[ed] to provide [] necessary procedural safeguards" to implement "non-refoulement" obligations. Apx.60-66, ¶¶ 174-200. Plaintiffs again disclaimed any challenge to the Rule itself or its implementation. Apx.4, 6, ¶ 6 & nn. 2, 4.

11

The district court held a hearing on the TRO motion on December 18, 2019, but never ruled on it. Thereafter, the government partially moved to dismiss most of the Plaintiffs and claims for lack of subject matter jurisdiction. Dkt. 72-1. While that motion was pending, Plaintiffs filed five motions for joinder of 65 new Plaintiffs, Dkts. 78, 86, 88, 91, 94, and the court extended the administrative stay to all proposed new Plaintiffs. Op. 18. As of April 27, 2020 the total number of Plaintiffs and proposed Plaintiffs subject to the district court's administrative stay numbered 270 individuals.

On April 27, the district court issued a memorandum opinion granting the government's partial motion to dismiss, denying the pending joinder motions, and lifting the administrative stays for all Plaintiffs and potential Plaintiffs other than the 18 Plaintiffs whose claims remained in the case. Dkts. 96 (Op.), 97 (Order).

The court first held that it lacked jurisdiction over all but one of the challenged policies. Op. 19-41. The court concluded that the INA, through 8 U.S.C. § 1252(a)(2)(A) and (e)(3), eliminated jurisdiction to review any challenge "relating to Section 1225(b)(1)," *i.e.*, any order of expedited removal or credible fear determination, other than as permitted under 8 U.S.C. § 1252(e)(3). Op. 20-22. The court held that 8 U.S.C. § 1252(a)(2)(A)(iv), which bars review of "procedures and policies adopted by the Attorney General [or Secretary of Homeland Security] to implement the provisions of section 1225(b)(1)" "except as provided in

12

subsection [1252](e)," barred review of all claims unless explicitly permitted by section 1252(e)(3). *Id.* As to section 1252(e)(3), which allows judicial review of "[c]hallenges on the validity of the [expedited removal] system," the court concluded that the statute only permitted review of "'written'" policies, and required any action challenging such policies to be initiated "'no later than 60 days after the date'" the challenged policies were "first implemented." Op. 23-24 (quoting 8 U.S.C. § 1252(e)(3)(A), (B)).

The court then reviewed evidentiary submissions, including declarations from both parties. Op. 24-38; Apx.69-123, S.Apx.15-260. Based on those submissions, the court found that seven of eleven of Plaintiffs' alleged credible-fear policies did not exist. Op. 24-32. As framed by the district court, those alleged policies are: "Challenged Action # 3: 'Issue Summary Negative Determinations to Eliminate Supervisory Review and Concurrence and to Avoid Developing a Complete Written Record,'" "Challenged Action # 4: 'Limit Fact-Finding Relevant to a Significant Possibility of Eligibility for Asylum, Withholding of Removal, and Relief Under the Convention Against Torture,'" "Challenged Action # 5: 'Make Interviews Adversarial,'" "Challenged Action # 7: 'Apply RFI Standards Without RFI Protections,'" "Challenged Action # 8: 'Do Not Apply the Most Favorable Precedent in CFI Proceedings,'" "Challenged Action # 10: 'Withholding Facts Relied Upon in Issuing the Credible Fear Determination,'" and "Challenged Action

13

# 11: 'Abandon Child-Sensitive Treatment in Credible Fear Proceedings.'"'" Op 26. The court found that Plaintiffs' declarant's testimony concerning isolated "examples of occasions when plaintiffs [allegedly] experienced" the alleged policies amounted to mere "assumption[s]" that failed to articulate persuasive "evidence to bridge the gap between instances of certain conduct—or even an apparently consistent or settled practice—and the existence of a *written* directive calling for that conduct." Op. 27 (emphasis added); *see also id.* 28-32. Because "it is plaintiffs' burden to establish jurisdiction," *id.*, that factual finding meant the court "lacks jurisdiction to review Challenged Actions ## 3, 4, 5, 7, 8, 10, and 11, because they do not fall within the exception to the ban on judicial review contained in § 1252(e)(3)(A)(ii)," which permits review only of "written" policies. Op. 31.

Next, the district court addressed whether Plaintiffs had timely filed their challenges to "Challenged Actions" "## 1, 2, 6, and 9," which the court described as "Avoid Meaningfully Orienting Migrants to Applicable Standard and Procedures," "Proceed Without Required Staffing, Training, or Guidance," "Limit Migrants' Right to Meaningful Consultation," and "Mandatory Concurrence Review by the Fraud Detection Unit," respectively. Op. 8-11. The court concluded that section 1252(e)(3)(B)—which requires that "[a]ny action instituted under this paragraph must be filed no later than 60 days after the date the challenged section,

14

regulation, directive, guideline, or procedure ... is first implemented"—was "not a discovery rule," that the "sixty days begin on the 'effective date' of the regulation or written policy," Op. 33, and that this Court had "concluded that the sixty-day bar is jurisdictional." *Id.* (quoting and citing *AILA*, 1199 F.3d at 1355).

Applying this Court's precedent, the district court then made findings concerning when each of the remaining challenged actions was first implemented. Op. 33-38. The court found that two of the challenged policies, even if written, were first implemented in "May 2019" (Challenged Action #1), Op. 33-34, and "July 10, 2019" (Challenged Action #6), Op. 35-37, more than sixty-days prior to the initiation of suit on September 16, 2019. Op. 33-37. The court further found that Challenged Action #2" was implemented no later than "July 8, 2019," also more than sixty-days prior to the suit's initiation, but that Plaintiffs had "disclaimed any challenge" to that policy in any event. Op. 34-35. Finally, with respect to "Challenged Action # 9, the requirement that any positive determination be reviewed by the USCIS Fraud Detection and National Security Directorate," the district court found that "the date of first implementation" was "August 30, 2019." Op. 37. Accordingly, the court concluded it had "jurisdiction to hear this claim as it was brought by the Plaintiffs named in the original complaint." *Id.* However, the court concluded that it lacked jurisdiction over "the ninety-eight plaintiffs added to the second amended complaint, which was filed on December 5, 2019, or to

anyone who has sought joinder thereafter." Op. 37-38. Therefore, the court held, "since the challenge to action # 9 is the only one remaining under § 1252(e)(3)(A), the Court must limit the case to those plaintiffs who brought their claims in accordance with § 1252(e)(3)(B), and it will dismiss the plaintiffs added on December 5, 2019 or thereafter." *Id.*

Next, the court concluded that because "the lawsuit has been narrowed to consist of a single claim challenging the written requirement that a positive fear determination must be subjected to a Fraud Detection review, individuals who have not had favorable determinations overturned due to that allegedly unlawful process are no longer properly joined in the case." Op. 39-40. "Because Challenged Action # 9 is the only remaining action, the plaintiffs who were not subject to review by the Fraud Detection Unit do not assert 'any right to relief ... arising out of the same transaction [or] occurrence'" as the claim remaining in the case, "and there is no longer any pending claim that would support the requested delay in the execution of their removal orders." Op. 41 (quoting Fed. R. Civ. P. 20(a)(1)(A)).

Next, the district court denied Plaintiffs' five joinder motions, because none of the "sixty-five proposed plaintiffs allege that ... they were subject to the only claim that is moving forward – Challenged Action # 9." Op. 41-42. The court reasoned that "a joinder motion does not resuscitate claims that are barred by the statute of limitations, and futility is grounds to deny a motion to join a plaintiff

16

where the prospective plaintiffs' claims would not survive a motion to dismiss because of the statute of limitations." Op. 42. Accordingly, the court issued an order dismissing all but 18 Plaintiffs from the case, denied "the motions for joinder", and lifted "the administrative stays extended to the proposed plaintiffs ... because the proposed plaintiffs' claims are well outside the sixty-day limitations period set forth in § 1252(e)(3)(B)." Op. 43; Order 1-2

Plaintiffs immediately noticed this appeal, Apx.513, and sought an emergency stay of the court's order. Dkt. 102. The district court denied the stay for the "reasons stated in the memorandum opinion" because "the Court has not been presented with anything new to consider," and separately held that 8 U.S.C. § 1252(e)(1)—which provides that "no court may—(A) enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1) of this title except as specifically authorized in a subsequent paragraph of this subsection"—"precluded [the court] from staying the removal orders of those plaintiffs who have been dismissed from the case." Dkt. 106 at 3-7.

That same day, the motion panel granted an administrative stay of removal pending resolution of Plaintiffs' emergency motion to stay removal in this Court. On May 15, 2020, the motions panel dissolved the administrative stay and denied the emergency motion for a stay, reasoning that Plaintiffs "have not satisfied the

17

stringent requirements for a stay pending appeal. *See Nken v. Holder*, 556 U.S. 418, 434 (2009)." Order (5/15/20). The motions panel therefore at a minimum must have concluded that Plaintiffs failed to make a "strong showing that [they are] likely to succeed on the merits." *Nken*, 556 U.S. at 434. Judge Henderson wrote separately that she "would deny the stay" because "the court is without authority to grant it" under "8 U.S.C. § 1252(e)(1)." Order (5/15/20).

## SUMMARY OF THE ARGUMENT

This Court should affirm the district court's decision and order.

I.      The district court correctly held that it lacked jurisdiction over Plaintiffs' challenges to all but one of the alleged credible-fear policies because Plaintiffs failed to identify reviewable "written" policies implementing section 1225(b)(1), and that their claims were time-barred under section 1252(e)(3)(B). Op. 24-38. Title 8 U.S.C. § 1252(a)(2)(A), titled "Matters not subject to judicial review," provides that, for "[r]eview relating to section 1225(b)(1)"—including any order of expedited removal or credible fear determination issued under section 1225(b)(1)—"*[n]otwithstanding any other provision of law ...* no court shall have jurisdiction to review *... except as provided in subsection (e)* [*i.e.,* section 1252(e)]," "to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1)," "a decision ... to invoke the provisions of such section," or

18

"procedures and policies adopted ... to implement the provisions of section 1225(b)(1) of this title." 8 U.S.C. § 1252(a)(2)(A)(i), (ii), (iv) (emphasis added). Section 1252(a)(2)(A) thus removes from federal courts *any* jurisdiction to review issues "relating to section 1225(b)(1)," other than as explicitly permitted by section 1252(e). Section 1252(e)(3), in turn, authorizes "[j]udicial review of determinations under section 1225(b) of this title and its implementation" in D.C. district court, "limited to determinations of—(i) whether [section 1225(b)], or any regulation issued to implement such section, is constitutional; or (ii) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General [or Secretary] to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law." 8 U.S.C. § 1252(e)(3)(A). Such suits "must be filed no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure ... is first implemented." *Id.* § 1252(e)(3)(B).

Applying these provisions, the district court correctly held that all but claims concerning "Challenged Action # 9, the requirement that any positive determination be reviewed by the USCIS Fraud Detection and National Security Directorate," were barred under section 1252(e)(3), either because Plaintiffs challenged unwritten alleged policies or because they were time-barred. Op. 24-38.

Based on review of evidentiary submissions from both parties, the court found that "it lacks jurisdiction to review Challenged Actions ## 3, 4, 5, 7, 8, 10, and 11" because it found that at best, they involved unwritten policies or as applied challenges to failures to act by individual officers in individual cases. Op. 31-32. The district court also correctly held that Challenged Actions 1, 2, and 6 were time-barred under section 1252(e)(3)(B). Op. 33-38. Again, the court heard evidence from both parties and found that claims challenging all three policies, even if they existed in writing, were time-barred because their dates of implementation, May 2019, July 8, 2019, and July 10, 2019, respectively, were more than sixty days prior to the date the lawsuit was initiated. *Id.* Those factual findings are subject to "clear error" review, *Herbert*, 974 F.2d at 197, and Plaintiffs offer nothing in the record that demonstrates clear error.

II. The district court correctly concluded that most Plaintiffs—both those previously joined to the case and those whose joinder motions were pending—must be dismissed as improperly joined, because they did not raise a timely challenge to the only alleged policy that remained in the case. Op. 41-42. All dismissed Plaintiffs failed to plead a claim for relief that satisfied section 1252(e)(3)'s jurisdictional limits. And all "prospective plaintiffs' claims would not survive a motion to dismiss." Op. 42. Thus, the court properly concluded that the granting of a joinder motion does not resuscitate claims that are barred by jurisdictional

provisions and that joinder should be denied as futile. *Id.*; *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 794-95 (D.C. Cir. 1983).

**STANDARD OF REVIEW**

On review of "a motion to dismiss for lack of subject matter jurisdiction," the Court reviews "questions of law" "de novo," but reviews the "district court's factual determinations" under the "clearly erroneous" standard. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992). The Court reviews the district court's denial of a motion for joinder for an "abuse of discretion." *Rubino v. United States*, 707 F. App'x 716 (D.C. Cir. 2017).

**ARGUMENT**

**I.     The District Court Lacked Jurisdiction Over Plaintiffs' Claims.**

The district court correctly held that it lacked jurisdiction over Plaintiffs' challenges to all but one of the alleged credible-fear policies. Op. 24-38. Title 8 U.S.C. § 1252(a)(2)(A), titled "Matters not subject to judicial review," provides that, for "[r]eview relating to section 1225(b)(1)"—including any order of expedited removal or credible fear determination issued under section 1225(b)(1)— "*[n]otwithstanding any other provision of law* ... no court shall have jurisdiction to review ... *except as provided in subsection (e)* [*i.e.*, section 1252(e)]," "to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1)," "a decision ... to invoke the

21

provisions of such section," or "procedures and policies adopted ... to implement the provisions of section 1225(b)(1) of this title." 8 U.S.C. § 1252(a)(2)(A)(i), (ii), (iv) (emphasis added). Section 1252(a)(2)(A) thus squarely removes from federal courts *any* jurisdiction to review issues "relating to section 1225(b)(1)," other than as explicitly permitted by section 1252(e), and thus eliminates section 1331 as a basis for district-court jurisdiction. *See Patchak v. Zinke*, 138 S. Ct. 897, 905 (2018) (phrase "notwithstanding any other provision of law" in jurisdictional provision encompasses 28 U.S.C. § 1331).

Section 1252(e)(3), titled "[c]hallenges on [the] validity of the system," authorizes "[j]udicial review of determinations under section 1225(b) of this title and its implementation" in D.C. district court, "limited to determinations of—(i) whether [section 1225(b)], or any regulation issued to implement such section, is constitutional; or (ii) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General [or Secretary] to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law."[5] 8 U.S.C. § 1252(e)(3)(A). Such suits "must be filed no later than 60 days after the

---

[5] A second provision, 8 U.S.C. § 1252(e)(2), authorizes limited review in habeas of three discrete issues concerning individual determinations under section 1225(b)(1). That provision is not at issue here.

22

date the challenged section, regulation, directive, guideline, or procedure ... is first implemented." *Id.* § 1252(e)(3)(B).

Under a straightforward application of these provisions, the district court correctly held that all but claims concerning "Challenged Action # 9, the requirement that any positive determination be reviewed by the USCIS Fraud Detection and National Security Directorate," were barred under section 1252(e)(3), either because Plaintiffs challenged unwritten alleged policies or because they were time-barred. Op. 24-38. Section 1252(a)(2)(A) is "abundantly clear" in eliminating jurisdiction over "any claim related to an expedited removal order." *Castro v. DHS*, 835 F.3d 422, 430 (3d Cir. 2016). If jurisdiction exists for "judicial review 'relating to section 1225(b)(1),'" it exists only "as provided in subsection (e)." *Make the Rd. New York v. Wolf*, 2020 WL 3421904, at *7 (D.C. Cir. June 23, 2020); *see Castro*, 835 F.3d at 430 (explaining that if jurisdiction exists, "it exists only under subsection (e) of the statute"); *L.M.-M. v. Cuccinelli*, ---F. Supp. 3d---, 2020 WL 985376, at *9 (D.D.C. Mar. 1, 2020) (similar); *accord Vijender v. Wolf*, No. 19-CV-3337 (APM), 2020 WL 1935556, *5 (D.D.C. Apr. 22, 2020) (same, collecting cases). However, section 1252(e)(3) permits review only of "written" procedures or policies. *See* 8 U.S.C. § 1252(e)(3)(A)(ii). That view is controlling in this Circuit. *See AILA*, 18 F. Supp. 2d at 58 ("this Court cannot review unwritten policies or practices"), *aff'd* 199 F.3d at 1357-58 (affirming

district court's conclusion that section 1252(e) "provided review only for written procedures and thus there was no jurisdiction to challenge the particular practices of immigration officials").[6]

> A. The District Court Correctly Found as A Factual Matter that Plaintiffs Had Failed to Identify Written Policies and Correctly Concluded that Section 1252 Therefore Barred Judicial Review.

The district court, after receiving evidence from both parties and making factual findings based on that evidence, concluded that "it lacks jurisdiction to review Challenged Actions ## 3, 4, 5, 7, 8, 10, and 11" because it found that at best, they involved unwritten policies or as applied challenges to failures to act by individual officers in individual cases. Op. 31-32. Those findings, which this Court "accept[s] ... unless they are clearly erroneous," *Herbert*, 974 F.2d at 197, mean that the district court lacks jurisdiction under section 1252(e)(3). *See AILA*, 199 F.3d at 1357-58; *accord Khan v. Holder*, 608 F.3d 325, 331 (7th Cir. 2010) ("§ 1252(e)(3)(A)(ii) permitted [district court] to review only the regulations as written, not as applied and not ... the agency's alleged failure to follow its own regulations."); *L.M.-M.*, 2020 WL 985376, *11 (similar).

---

[6] This Court's recent decision in *Grace v. Barr*, ---F.3d---, 2020 WL 4032652, *5-8 (D.C. Cir. July 17, 2020), does not alter this analysis. The policies in *Grace* were both written and timely challenged—the only question was whether they "implement[ed]" section 1225(b)(1). *Id.* at *5 ("the only question before us is whether the [challenged policies] qualify as regulations, written policy directives, written policy guidelines, or written procedures *issued to implement* section 1225(b)") (emphasis added).

Plaintiffs' contrary arguments fail. Br. 26-28, 28-33, 34-45. First, Plaintiffs retreat to the "presumption favoring judicial review of administrative action," and contend that section 1252 "'is reasonably susceptible to divergent interpretation,'" which requires "'adopt[ing] the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review.'" Br. 26-27 (quoting *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1069 (2020)). However, as the Supreme Court and this Court recently reaffirmed, the presumption is "overcome by 'clear and convincing evidence' of congressional intent to preclude judicial review." *Guerrero-Lasprilla*, 140 S. Ct. at 1069; *Make the Rd.*, 2020 WL 3421904, at *6 (same). And as explained, there is nothing ambiguous about section 1252 that would lend itself to divergent interpretation. Section 1252(a) and (e) are unambiguous. Section 1252(a)(2)(A)(i) means that, other than as permitted by section 1252(e), "no court shall have jurisdiction to review any ... claim arising from or relating to the implementation or operation of an order of expedited removal." *Thuraissigiam*, 2020 WL 3454809, at *5. And section 1252(a)(2)(A)(iv) means no court may review any "procedures and policies adopted by the Attorney General [or Secretary of Homeland Security] to implement the provisions of section 1225(b)(1)" "except as provided in subsection [1252](e)." "The expedited removal statutes are express and unambiguous. The clarity of the language forecloses acrobatic attempts at interpretation," *Castro*, 835

F.3d at 432, and "makes abundantly clear that if jurisdiction exists to review any claim related to an expedited removal order, it exists only under subsection (e) of the statute." *Id.* at 430. Taken together, these provisions mean if jurisdiction exists for "judicial review 'relating to section 1225(b)(1)," it exists only "as provided in subsection (e)." *Make The Rd.*, 2020 WL 3421904, at *7. And section 1252(e)(3)(A) permits judicial review *only* if a *written* regulation or policy is identified. Thus, to the extent any presumption of judicial review might be relevant, Congress clearly and unambiguously rebutted it by circumscribing prerequisites for that judicial review in section 1252(e)(3).

Next, Plaintiffs contend that section 1252(a) and (e) do not apply because unwritten policies are not formally "adopted" in writing, and so cannot be procedures and policies adopted by the Secretary to implement the provisions of section 1225(b)(1) under section 1252(a)(2)(A)(iv). Br. 34-35; *see also* Br. 35-38. But as the district court correctly held, "a policy can certainly be 'adopted' without being reduced to writing, and [section 1252(a)(2)(A)(iv)] itself does not include the word 'formally' or any other narrowing term." Op. 22. Plaintiffs nevertheless contend that "adopting" a policy or procedure must require formally reducing that policy to writing, because one definition of "adopt" is "to accept formally and put into effect." Br. 34-35 (citing Merriam-Webster's Collegiate Dictionary 16 (10th ed. 1999). But that is not the only definition. The very same dictionary also defines

26

"adopt" as "to take up and practice or use." *Id.* Indeed Plaintiffs' narrow focus on one of *five* definitions of "adopt" in their chosen dictionary ignores section 1252(e)(3)'s plain text, which restores review of what section 1252(a)(2)(A) bars only with respect to *written* policies. Moreover, even if the plain text of the provision is in some way ambiguous, as the district court recognized, it was "required [to] look at the term within the structure and context of the statute. *Utility Air Regulatory Grp. v. EPA*, 573 U.S. 302, 320 (2014)." Op. 22. The structure and context of section 1252 make clear that "Congress knew exactly how to differentiate between written and unwritten policies when it intended to do so" by phrasing section 1252(e)(3)(A)(ii) as it did. *Id.* The statute permits review only of "whether such regulation, or a *written* policy directive, *written* policy guideline, or *written* procedure issued by or under the authority of the Attorney General to implement such section" is lawful. 8 U.S.C. § 1252(e)(3)(A)(ii) (emphasis added). Congress's conscious decision to repeat the adjective "written" three times in a subsequent section of the same statute suggests that if Congress intended the word "adopted" to mean "written," Congress would have said so. *See Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) ("courts must presume that a legislature says in a statute what it means and means in a statute what it says there").

Plaintiffs nevertheless assert that the district court's reading must be wrong because "[t]he word 'regulation' in § 1252(e)(3) similarly lacks the modifier 'written,'" and so "[u]nder the District Court's own interpretation, then, it would have jurisdiction to review both written or unwritten 'regulation[s] issued by or under the authority of the Attorney General in violation of law.'" Br. 36 (quoting 8 U.S.C. § 1252(e)(3)(A)(ii)) (internal omissions omitted). This argument fails for the simple reason that a "regulation" obviously refers to a "regulation issued to implement" section 1225(b)(1), 8 U.S.C. § 1252(e)(3)(A)(i), and such regulations by definition are written, in that they must be published in the Federal Register and are further published in the code of federal regulations. 5 U.S.C. § 552(a). And even were that not self-evident, Plaintiffs' argument fails under the interpretive canon "noscitur a sociis—a word is known by the company it keeps—to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress." *Yates v. U.S*, 574 U.S. 528, 543 (2015); *see United States v. Williams*, 553 U.S. 285, 294 (2008) ("a word is given more precise content by the neighboring words with which it is associated"). Here, all reviewable documents identified by section 1252(e)(3)(A)(ii) are "written," save for a "regulation." Regulation is therefore appropriately read to refer also to a *written* regulation. *See id.*

Even if Plaintiffs were correct in their reading of section 1252(a)(2)(A)(iv)—which they are not—section 1252(a)(2)(A) is not limited to barring review of "adopted" policies. It extends to "any individual determination *or*" "any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1)," 8 U.S.C. § 1252(a)(2)(A)(i) (emphasis added). While the reference to "individual determinations" may refer to "claims arising from individual removal actions," *Make the Rd.*, 2020 WL 3421904, at *8, the rest of that provision sweeps far more broadly. The "relating to" language in section 1252(a)(2)(A)(i) "sweep[s] within its scope claims with [even] only a remote or attenuated connection to the [underlying] removal of an alien," *Aguilar v. ICE*, 510 F.3d 1, 10 (1st Cir. 2007), and so bars all Plaintiffs' claims—which plainly "relat[e] to the implementation or operation" of orders of expedited removal unless section 1252(e) supplies jurisdiction. 8 U.S.C. § 1252(a)(2)(A)(i). Section 1252(a)(2)(A) also reaches any decision "to invoke the provisions of such section," which would encompass claims challenging how that "invocation" was implemented. *See* 8 U.S.C. § 1252(a)(2)(A)(ii). In short, section 1252(a)(2)(A), read with section 1252(e)(3) does not require a "formal" writing to bar judicial review. Instead it permits judicial review *only* if a "written" regulation, policy, or procedure is identified.[7]

---

[7] Plaintiffs' position is also inconsistent with their claim in district court that the

Next, Plaintiffs contend that the challenged policies could not have been "'adopted' pursuant to § 1252(a)(2)(A)(iv)" because "Defendant Kenneth T. Cuccinelli lacked the authority to adopt the Challenged Actions." Br. 41; *see also* Br. 42-45. Specifically, Plaintiffs contend that these policies could not have been lawfully adopted by Defendant Cuccinelli because his appointment violated the Federal Vacancies Reform Act ("FVRA") and any actions taken by officials appointed in violation of the FVRA "have no force or effect." Br. 42. But Plaintiffs allege no FVRA claim in their complaint, so cannot do so now on appeal. *United States v. Stover*, 329 F.3d 859, 872 (D.C. Cir. 2003). Moreover, as the district court explained, "whether Acting Director Cuccinelli had the authority to promulgate policies affects the validity of the policies; it does not bear on the question of the Court's power to review them." Op. 22. Indeed, the FVRA supplies a cause of action, not federal question jurisdiction. *See L.M.-M.,* 2020 WL 985376, *11 (addressing jurisdiction under section 1252(e)(3) before any FVRA merits claim).

Plaintiffs retreat from their FVRA contention to assert that section 1252(a)(2)(A)(iv) "cannot be triggered" because "by its plain language, § 1252(a)(2)(A)(iv) can *only* apply to a policy adopted by the Attorney General." Br. 44. But this argument blatantly misreads the statute. The reference to "Attorney General" in section 1252(a)(2)(A) must be read to encompass actions taken by the

---

policies they challenge *were* reduced to writing, and that is why they fall within the

30

Secretary of Homeland Security or their designee. Although section 1252 as originally codified in 1996 granted this authority to the Attorney General, "that power has since been transferred to the Secretary of Homeland Security." *Make the Rd.*, 2020 WL 3421904, at *1. More specifically, in 2003, the former Immigration and Naturalization Service, which had overseen the expedited removal system under the authority of the Attorney General, ceased to exist. *See Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005). Those authorities "now reside in the Secretary of Homeland Security ... and divisions of his Department (Bureau of Immigration and Customs Enforcement and Bureau of Citizenship and Immigration Services)." *Id.* Accordingly, "with respect to any function transferred by [the Homeland Security Act (HSA)] … and exercised on or after the effective date of this chapter, reference in any other Federal law to any department, commission, or agency or any officer or office the functions of which are so transferred shall be deemed to refer to the Secretary, other official, or component of the Department to which such function is so transferred." 6 U.S.C. § 557; *see also id.* § 251; 8 U.S.C. § 1103(a). The HSA also explicitly transferred the authority to conduct asylum interviews and promulgate policies implementing section 1225(b)(1) with respect to credible fear processing to USCIS. *See* 6 U.S.C. § 271(b)(3); *L.M.-M.*, 2020 WL 985376, at *3.

---

exception to the bar on judicial review. *See* Dkt. 73 at 40.

31

Plaintiffs' contention that section 1252(a)(2)(A)(iv) bars jurisdiction only if the Attorney General is the official acting is thus meritless.

Plaintiffs also contend that the district court erred in dismissing their First Amendment and notice-and-comment claims. Br. 28-33. First, they contend that 1252(a)(2)(A) and (e) do not foreclose a claim that "after Plaintiffs filed this lawsuit, Defendants engaged in retaliatory actions against them," deterring their "First Amendment rights to file this litigation," and that the district court incorrectly dismissed that claim by "view[ing it] as an attack on [a] Challenged Action." Br. 28-30. That is wrong. As the district court explained, one of the five legal theories the operative complaint advanced in challenging the relevant alleged credible fear polices was that "[t]he challenged actions violate the First Amendment and the due process Clause of the Fifth Amendment." Op. 12 (citing Apx.62-64, ¶¶ 183-88). The operative complaint makes clear what Plaintiffs challenge in their First Amendment claim by alleging explicitly that "defendants 'violated [p]laintiffs['] rights under the First Amendment ... by retaliating against [p]laintiffs for their participation in this case," Op. 13 n.3 (quoting Apx.64, ¶ 187), and then in the next paragraph of the complaint asserting that "'[t]he above Challenged Actions must therefore be enjoined and declared as violative of the First Amendment and/or the Fifth Amendment's guarantee of due process ... .'" *Id.* (quoting Apx.64, ¶ 188).

Thus, Plaintiffs clearly chose to allege that the "challenged actions" were unlawful because of, among other things, their allegations of First Amendment Retaliation. Apx.64, ¶¶ 187-88. And each of those "challenged actions" are subject to the limitations of sections 1252(a)(2)(A) and (e), which, as explained, bar *any* claims, constitutional or statutory, "relating to section 1225(b)(1)," other than as "permitted by section (e)." *Both* Plaintiffs' "First Amendment and/or ... Fifth Amendment" claims, *id.* ¶ 188, are thus barred by section 1252 unless Plaintiffs identify a specific, written policy they challenge within 60 days of that policies implementation. 8 U.S.C. § 1252(e)(3)(A)(ii), (B). The district court thus correctly declined to view Plaintiffs' First Amendment claim as a basis to ignore section 1252(e)'s requirements.

Plaintiffs also contend that the district court erred in dismissing their APA notice-and-comment claim directed at the eleven challenged credible fear policies. Br. 31-33. That too is wrong. Again, section 1252(a) sweeps broadly, stripping the district courts of *jurisdiction* "[n]otwithstanding any other provision of law (statutory or nonstatutory)," other than as permitted by section 1252(e). 8 U.S.C. § 1252(a)(2)(A)(i), (ii), (iv). That Plaintiffs might separately have a *cause of action* under the APA if in fact the Court has jurisdiction is beside the point. The Court first must conclude that it has jurisdiction before addressing the merits of Plaintiffs' APA claims. *See L.M.-M.*, 2020 WL 985376, *25 (determining whether the court

has jurisdiction under section 1252 first, before addressing the merits of Plaintiffs' causes of action); *see* Op. 21 (same).

Indeed, it is settled law in this Circuit that the APA "is not a jurisdiction-conferring statute" and provides only "a limited cause of action for parties adversely affected by agency action." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 183, 185 (D.C. Cir. 2006). And even then, the APA is clear that no cause of action exists for *any* judicial review under the APA if "statutes preclude judicial review," 5 U.S.C. § 701(a)(1), which as explained, section 1252 plainly does. *See, e.g.*, *Block*, 467 U.S. at 345 (observing that APA "confers a general cause of action upon persons 'adversely affected or aggrieved by agency action within the meaning of a relevant statute,'" but "withdraws that cause of action to the extent the relevant statute 'precludes judicial review'") (5 U.S.C. APA §§ 701(a)(1) & 702); *Amgen*, 357 F.3d at 113 ("If a no-review provision shields particular types of administrative action, a court may not inquire whether a challenged agency decision is arbitrary, capricious, or procedurally defective."); *see also Aid Ass'n for Lutherans v. USPS*, 321 F.3d 1166, 1173 (D.C. Cir. 2003) (finding that preclusion provision "exempts [agency] from the strictures of the APA in cases involving the APA's procedural requirements"). Plaintiffs are therefore wrong that section 1252 does not bar *all* of their APA claims. Unless Plaintiffs identify a *written* policy that they challenged within 60 days of its implementation—which as explained, they

have not, other than as to Challenge Action # 9—they cannot pursue a notice-and-comment claim under the APA.[8]

Finally, Plaintiffs contend without explanation that the district court was wrong to conclude that "Challenged Action Nos. 3, 4, 5, 6, 7, 10, and 11" did not exist "in writing," because Plaintiffs submitted "evidence of systematic, uniform changes in policies." Br. 54. Plaintiffs appear to contend that because they submitted evidence, only their evidence should matter. But that of course is not how disputed evidentiary submissions on a Rule 12(b)(1) motion work. Instead, because both parties submitted evidence, the Court was required to "resol[ve]" ... disputed facts." *Herbert*, 974 F.2d at 197. In those circumstances, where "the trial court rests not only upon undisputed statements, but *determines disputed factual issues*, we will review its findings as we would any other district court's factual determinations: accepting them unless they are 'clearly erroneous.'" *Id.* (emphasis

---

[8] Plaintiffs rely on *Make the Rd. New York v. McAleenan*, 405 F. Supp. 3d 1, 26 (D.D.C. 2019), to contend that the district court retains jurisdiction to review "claim[s] under the APA, based on allegations that an agency action was arbitrary and capricious or that an agency took action without observing procedures required by law." Op. 33. But that decision was reversed by this Court. *See* 2020 WL 3421904, *1-16. Moreover, that case did not involve the jurisdictional issue presented here: whether Plaintiffs have identified *written* policies and whether they have challenged them within 60-days of implementation. In that circumstance, the relevant and controlling authority is *AILA*, which squarely holds that both are required before a court may review any claims "related to section 1225(b)(1)" 199 F.3d at 1356-59.

added). That is precisely what the district court did here. That Plaintiffs disagree is no basis to find clear error.[9]

Plaintiffs also contend for the first time on appeal that the district court erred in receiving only factual submissions from both parties on jurisdiction, and not permitting "Plaintiffs ... to continue to test the government's representations through discovery." Br. 56. But there is no general entitlement to jurisdictional discovery concerning statutory jurisdiction in a case involving a factual attack on such jurisdiction, like this one, and Plaintiffs cite no authority to the contrary. Whether or not to permit discovery is within the sound discretion of the district court, and the district court's decision to receive written evidence on the question of statutory jurisdiction was not an "abuse of discretion." *See FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1091 (D.C. Cir. 2008). Plaintiffs also did not move for discovery in district court nor did they argue anywhere below that a failure to permit such discovery would be an abuse of discretion, so Plaintiffs cannot now raise this argument for the first time on appeal. Indeed, district courts routinely resolve jurisdictional disputes based on the parties' evidentiary

---

[9] Plaintiffs finally contend that if the district court was right that no written policies were identified, then jurisdiction must exist under 28 U.S.C. § 1331. Br. 54. But as explained, that is precisely the claim the court rejected in *AILA*. *See* 18 F. Supp. 2d at 58 (rejecting claim that "Court would still have federal question jurisdiction under 28 U.S.C. § 1331 over many of these claims."), *aff'd* 199 F.3d at 1356-57. And as explained, section 1252's "notwithstanding" clause precludes finding jurisdiction under 28 U.S.C. § 1331.

submissions, without formal discovery. *See, e.g.*, *L.M.-M.*, 2020 WL 985376, at *11 (making factual findings as to jurisdiction under 1252(e)(3)(A)(ii) and concluding, based on "the declaration of USCIS's Deputy Chief of the Asylum Division," that "USCIS has not promulgated, authorized or implemented any written policy that there shall not be an in person legal orientation for individuals seeking asylum at the Dilley Family Residential Center or any other location").

In any event, to obtain jurisdictional discovery, plaintiffs are required to make a "specific" showing *in the district court* about "what facts additional discovery could produce that would affect the court's jurisdictional analysis." *Cheyenne Arapaho Tribes of Okla. v. United States*, 558 F.3d 592, 596 (D.C. Cir. 2009). "Without such a showing, it would be inappropriate to subject defendants to the burden and expense of discovery before dismissing this case on jurisdictional grounds." *Klayman v. Nat'l Sec. Agency*, 280 F. Supp. 3d 39, 53 (D.D.C. 2017), *aff'd sub nom. Klayman v. Obama*, 759 F. App'x 1 (D.C. Cir. 2019). As the district court found, Plaintiffs' evidentiary submissions failed "to bridge the gap between instances of certain conduct – or even an apparently consistent or settled practice – and the existence of a written directive calling for that conduct." Op. 27. "Even if one accepts the truth of every allegation – as one must do at this stage – the allegations involve precisely the sort of conduct that the Court is unable to supervise – the conduct of specific CBP agents and asylum officers – and it does

not establish the existence of a written policy subject to review." Op. 28. Moreover, "[e]ven if plaintiffs have identified occasions in which the officers have" acted in certain ways in individual cases involving non-parties, "that is not evidence that they have been directed to do so in writing." *Id.* In short, as the district court correctly found, at best, even construing every inference in Plaintiffs' favor, their evidence showed only that in isolated instances of unwritten "as applied" conduct, which controlling precedent in this Circuit says is not subject to judicial review. Op. 31-32 (citing *AILA*, 18 F. Supp. at 58 and 199 F.3d at 352, 356-57). Such evidence does not come close to warranting jurisdictional discovery, even had Plaintiffs moved for it in the district court, which they did not.[10] *See Cheyenne*, 558 F.3d at 596.

---

[10] Plaintiffs also contended, with respect to "Challenged Action # 4," that the drop in positive credible fear determinations after the Rule issued in July, 2019 "must mean that there is some sort of policy in place to limit asylum eligibility." Op. 30; *see* Br. 13. That claim "blurs the distinction between the obvious purpose and effect of the [Rule] itself – which they are not challenging in this case – and what they need to show to obtain judicial review here: the existence of written policies for implementing the [Rule]." *Id.* (internal citations omitted). "An overall reduction in positive credible fear findings is consistent with [the] rule itself, because an individual subject to the [Rule] would be ineligible for asylum and would thus not be able to establish a 'significant possibility . . . [of] eligibility for asylum under section 1158," which is the standard for credible fear. Op. 30 (citations omitted). "Since the overwhelming majority of plaintiffs in this action were subject to the [Rule], this evidence in the declaration is insufficient to establish the likely existence of a written policy." The same flaw required rejecting Plaintiffs' arguments with respect to "Challenged Actions # 3 and # 7," because they challenge the circumstances "imposed by the [Rule] itself," which "are part and parcel of the Ban, and they are not a part of this narrowly crafted lawsuit that is

**B.** Plaintiffs' Claim That Section 1252(e)(3)'s Limitations on Judicial Review to Written Policies Are Unconstitutional Is Time-Barred and Fails on its Merits.

Plaintiffs also contend that if section 1252(e)(3)(A)(ii) is read—as every court to address that provision has read it—to foreclose review of challenges to unwritten policies or as applied challenges to agency conduct, than section 1252(e)(3)(A)(ii) "would be unconstitutional." Br. 38. However, Plaintiffs nowhere advanced this claim in any of their complaints. Dkts 1, 28, 54. They first advanced this argument in their opposition to the motion to dismiss. Dkt. 73 at 18-21. But a party cannot amend their complaint through a brief filed in response to a motion. *Belizan v. Hershon*, 434 F.3d 579, 582 (D.C. Cir. 2006). Moreover, even if Plaintiffs had plead this claim, it would be time-barred. The judicial review provisions implementing the expedited removal procedures have existed in their present form since 1996. *See* Pub. L. No. 104-208 (1996). Plaintiffs' late-breaking claims thus are foreclosed by the statute of limitations in 8 U.S.C. § 1252(e)(3)(B). *See Dugdale v. U.S. Customs & Border Prot.*, 88 F. Supp. 3d 1, 3 (D.D.C. 2015) ("the Court finds that it lacks subject matter jurisdiction over Dugdale's constitutional challenge to the expedited removal system because he did not file it within 60 days after the contested provisions were implemented, as required by 8 U.S.C. § 1252(e)(3).").

---

supposed to be about something else." Op. 31.

In any event, Plaintiffs' claim fails on its merits. To begin, as the district court recognized, this Court's *AILA* decision forecloses this claim. Op. 31-32. In *AILA*, plaintiffs advanced the same argument: "[t]o the extent [plaintiffs] challenge unwritten practices, which [§ 1252(e)(3)(A)(ii)] does not allow, plaintiffs argue that Congress cannot limit review of unwritten policies because this would mean that possibly unconstitutional action by immigration officials would not be reviewable by a court – a result that Congress could not have intended." *Id*. at 58. Although the district court was "troubled by the effects of Congress's decision to immunize the unwritten actions of an agency from judicial review," that court recognized the "clear language of the jurisdictional provision" meant that the court lacked jurisdiction to review unwritten policies and practices. *Id*. This Court affirmed that decision in full, and so it is the law of this Circuit. 189 F.3d at 1357 ("We ... affirm the dismissal of these claims substantially for the reasons stated in the court's thorough opinion") (citing 18 F. Supp. 2d at 46–47, 52–60).

Indeed, it is well-settled that Congress can curtail the jurisdiction and equitable authority of lower federal courts. *See Bowles v. Russell*, 551 U.S. 205, 211 (2007). That principle is especially apt in the immigration context: "The power to expel aliens, being essentially a power of the political branches of government, the legislative and executive, may be exercised entirely through executive officers, with such opportunity for judicial review of their action as Congress may see fit to

40

authorize or permit." *Carlson v. Landon*, 342 U.S. 524, 537 (1952). Thus, "it is well established that Congress is constitutionally authorized to provide for expedited removals without [judicial] review." *United States v. Villarreal Silva*, 931 F.3d 330, 335 (4th Cir. 2019).

The Supreme Court recently affirmed this principle, concluding aliens subject to expedited removal procedures may not challenge the limited judicial review available to them under section 1252(e) under either the Suspension Clause or the Due Process Clause. *See Thuraissigiam*, 2020 WL 3454809, at *3 ("neither the Suspension Clause nor the Due Process Clause of the Fifth Amendment requires any further review of respondent's claims, and IIRIRA's limitations on habeas review are constitutional as applied"). As the Court explained, aliens seeking to challenge their final orders of removal on constitutional grounds have no entitlement to judicial review of their orders of removal. *Id.* The Suspension Clause does not provide for such judicial review, because the writ of habeas corpus protected by the Suspension Clause does not encompass claims seeking to challenge the Executive Branch's decision to remove or exclude an alien from this country. *Id.* at *2, *11-15; *see id.* *15-33. "Habeas has traditionally been a means to secure *release* from unlawful detention," *id.* at *2 (emphasis added), and "simply provide[s][ a means of contesting the lawfulness of restraint and securing release." *Id.* at *12. Aliens seeking to *prevent* their release, to "obtain additional []

41

review of [their] asylum claim[s,]" *id.* at \*2, "fall[] outside the scope of the writ as it was understood when the Constitution was adopted." *Id.* at \*15. Accordingly, Plaintiffs cannot invoke the Suspension Clause as a basis to demand *more* review, let alone any *judicial* review, of their removal orders. *Id.*

The Supreme Court also rejected any claim that section 1252 "violates ... due process by precluding judicial review of [] allegedly flawed credible-fear proceeding[s]." *Id.* at \*17. As the Court explained, "aliens who have *established connections* in this country have due process rights in deportation proceedings." *Id.* \*3 (emphasis added). But "as to foreigners who have never been naturalized, nor acquired any domicil or residence within the United States, *nor even been admitted into the country pursuant to law*, the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law." *Id.* at \*18 (emphasis added); *see id.* ("a concomitant of that power is the power to set the procedures to be followed in determining whether an alien should be admitted"). The Court further explained that the fact that an alien may have illegally entered the country before their apprehension did not change this rule. "[A]n alien who tries to enter the country illegally is treated as an 'applicant for admission,' § 1225(a)(1), and an alien who is detained shortly after unlawful entry cannot be said to have 'effected an entry'" into this country. *Id.* at \*18. Such aliens are "[l]ike an alien detained after arriving at a port of entry," and so are "on the

threshold" of entry to this country, *id.,* and have "only those rights regarding admission," including rights to judicial review, "that Congress has provided by statute." *Id.* And such aliens by definition are not aliens with "established connections in this country" entitled to due process in deportation proceedings. *Id.* *3.

Under a straightforward application of *Thuraissigiam*, Plaintiffs cannot invoke the Due Process Clause to demand more judicial review than that provided by section 1252(e). Like Respondent in *Thuraissigiam*, all Plaintiffs were apprehended at the border or shortly after crossing the border illegally. Apx.44 ¶ 144. They therefore have "only those rights regarding admission that Congress has provided by statute," including any right to judicial review. *Thuraissigiam*, 2020 WL 3454809, *18. In Plaintiffs' case, Congress provided the right to a "determin[ation]" of whether they had "a significant possibility" of "establish[ing] eligibility for asylum," and for limited judicial review of that determination or written policies applied to that determination through sections 1252(e)(2) and (e)(3). 8 U.S.C. §§ 1225(b)(1)(B)(ii), (v), 1252(e)(2), (3). "Because the Due Process Clause provides nothing more, it does not require review of that determination or how it was made." 2020 WL 3454809, at *18; *see also AILA*, 18 F. Supp. 2d at 59-60 ("alien plaintiffs here," who lack "substantial connections to the United States," "cannot avail themselves of the protections of the Fifth

Amendment to guarantee certain procedures with respect to their admission"), *aff'd*, 199 F.3d 1352.

And even without *Thuraissigiam*, every court to address the issue has concluded that section 1252(e)(3) lawfully forecloses judicial review of even constitutional and statutory claims if those claims do not challenge a *written* implementation of section 1225(b)(1). *See, e.g.*, *AILA*, 199 F.3d at 1357-58 (affirming district court's conclusion dismissing constitutional challenges to expedited removal system because section 1252(e) "provided review only for written procedures"); *Khan*, 608 F.3d at 331 (rejecting claim that court must have jurisdiction to review "constitutional and statutory claims arising in expedited removal proceedings" because "§ 1252(e)(3)(A)(ii) permitted [district court] to review only the regulations as written" and courts cannot "disregard jurisdictional limitations"); *accord Castro*, 835 F.3d at 431 (holding that section 1252 bars constitutional claims other than as permitted by section 1252(e)); *Shunaula v. Holder*, 732 F.3d 143, 145–47 (2d Cir. 2013) (similar); *Garcia de Rincon v. DHS*, 539 F.3d 1133, 1138–39 (9th Cir. 2008) (similar).

C.     The District Court Correctly Held that Challenged Actions 1, 2, and 6 Were Time-Barred.

The district court also correctly held that Challenged Actions 1, 2, and 6

were time-barred under section 1252(e)(3)(B).[11] Op. 33-38. Again, the court heard evidence from both parties and found that claims challenging all three policies, even if they existed in writing, were time-barred because their dates of implementation, May 2019, July 8, 2019, and July 10, 2019, were more than sixty days prior to the date the lawsuit was initiated. *Id.* Those factual findings are subject to "clear error" review, *Herbert*, 974 F.2d at 197, and Plaintiffs offer nothing in the record that demonstrates error. As this Circuit has affirmed, "the 60 days ran from a fixed point, the initial implementation of the challenged [policy], rather than from the date of application of [the policy] to a particular alien." *AILA*, 18 F. Supp. at 47, *aff'd* 199 F.3d at 1356–57 (affirming dismissal of plaintiffs "who filed late and for that reason had their claims dismissed"). Thus, because each of these policies were first implemented more than 60 days prior to September 15, 2019, Plaintiffs' claims are time-barred, and the district court lacked jurisdiction over them.

Plaintiffs' contrary arguments fail. Plaintiffs contend that because the district court found that Plaintiffs' claims as to Challenged Action # 9—concerning review by the USCIS Fraud Detection and National Security Directorate—timely, the court has jurisdiction over all claims, including those untimely under section 1252(e)(3)(B), because if "the court has subject matter jurisdiction to consider the

---

[11] Plaintiffs have "disclaimed" challenges to Challenged Action #6. Op. 35.

claims of at least one of those plaintiffs ... the court need not address its jurisdiction to consider the claims of the remaining plaintiff," and may proceed as though it has jurisdiction over all claims and Plaintiffs. Br. 46-48. That is wrong, as this Court held in affirming the dismissal of "appeals by the individual aliens who filed late" in *AILA*, notwithstanding the existence of plaintiffs with claims that were timely. *See* 199 F.3d at 1356–57. Therefore, the district court correctly concluded that the existence of live claims "does not resuscitate claims that are barred by the statute of limitations." Op. 54 (quoting *Breen v. Chao*, 05-CV-0654 (PLF), 2018 WL 1509077, *9 (D.D.C. Mar. 27, 2018)).

Plaintiffs nevertheless contend that because some plaintiffs have Article III standing with respect to their claims challenging Challenged Action # 9, therefore the court has subject matter jurisdiction as to *all* Plaintiffs. Br. 47. But Plaintiffs confuse "Article III standing" with "statutory jurisdiction." *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998). These are two distinct threshold issues. *See id.* To be sure, the district court could have addressed statutory jurisdiction without addressing Article III standing at all. *Am. Petroleum Inst. v. Envtl. Prot. Agency*, 862 F.3d 50, 75 (D.C. Cir. 2017), *decision modified on reh'g*, 883 F.3d 918 (D.C. Cir. 2018) ("because we dispose of their challenge by concluding that we are without statutory jurisdiction, we have no reason to address Industry Intervenors' contention that Environmental Petitioners lack Article III

standing"); *see generally Sinochem International Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007). But the existence of Article III standing for a plaintiff does not mean all plaintiffs also satisfy statutory jurisdiction for all their claims. *See id.* Thus, regardless of whether a single Plaintiff has Article III standing, the court cannot exercise jurisdiction over claims by Plaintiffs that are statutorily barred by a jurisdictional limitations period, like section 1252(e)(3)(B). *See L.M.-M*, 2020 WL 985376, at *8 (in a section 1252(e)(3) case, analyzing statutory jurisdiction and standing separately, holding that "the Court concludes that the individual Plaintiffs have Article III standing," and so "need not decide whether [other plaintiffs] also ha[ve] standing to pursue those same claims and to seek the same relief," but separately holding that Plaintiffs "claims fall within the Court's statutory jurisdiction").

Next, Plaintiffs contend that section 1252(e)(3)(B)'s limitations period is subject to "equitable tolling," Br. 49-50. *AILA* holds otherwise. *See* 199 F.3d at 1356-57. In *AILA* the district court concluded, and this Court affirmed, that Section 1252(e)(3)(B)'s "60–day requirement is jurisdictional rather than a traditional limitations period." 18 F.Supp.2d at 47, *aff'd* 199 F.3d at 1356-57; *accord Vijender*, 2020 WL 1935556, *3-6 & n.5 (collecting cases); *Dugdale*, 88 F. Supp. 3d at 8–9; *L.M.-M.*, 2020 WL 985376, at *11. Even without *AILA*, section 1252(e)(3) expressly "conditions" jurisdiction on compliance with its timing

requirement, and accordingly equitable tolling is unavailable. *See United States v. Kwai Fun Wong*, 575 U.S. 402, 412 (2015) (limitations period is jurisdictional where statute "conditions the jurisdictional grant on the limitations period"); *Myers v. Comm'r*, 928 F.3d 1025, 1035 (D.C. Cir. 2019) (similar, if "grant of jurisdiction is followed by ... [a] clause that expressly conditions jurisdiction upon timely filing").[12]

Plaintiffs further contend that their claims concerning "Challenged Action No. 2 'which alleges that the officers conducting the asylum interviews have not been adequately trained,'" was filed timely because the date the action was first implemented was "when Border Patrol Agents began conducting interviews pursuant to the training they received under the July MOA in September 2019." Br. 51-52. The district court found otherwise, concluding that the effective date was July 10, 2019, and Plaintiffs do not explain why that was clearly erroneous. Op. 35-36. More specifically, the court found as follows: (1) "Border Patrol Agents completed training in May of 2019," (2) border patrol agents "conducted credible fear interviews from June 5, 2019 to June 20, 2019," (3) "between June 20, 2019

---

[12] Plaintiffs, relying on a district court case, *Make the Rd.*, assert that "'*AILA* ... fails to capture the current state of the law.'" Br. 51 (citing *Make the Rd.*, 405 F. Supp. 3d at 26). *Make the Rd.*, however, did not address whether the 60-day time limit was subject to equitable tolling. *See id.*. And it certainly was in no position to declare that controlling Circuit precedent that every other district court in this circuit has followed was not binding law. *See United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997) ("district judges, like panels of [this Circuit], are

and July 11, 2019, CBP and USCIS developed the July Memorandum Agreement," (4) the MOA was "signed on July 10, 2019," and (5) the agreement provided that '[t]his agreement is effective upon signature of both parties." Op. 34-37. Because the time-bar lapses "60 days after the date the challenged [policy] is first implemented," the Court found Plaintiffs' challenge untimely because it was filed more than 60-days after the date the MOA was signed. Op. 36-38.

Plaintiffs' argument also runs headlong into *AILA*'s controlling precedent: "Congress designed the statute so that the 60 days ran from a fixed point, *the initial implementation of the challenged provisions*, rather than from the date of application of IIRIRA to a particular alien." 18 F. Supp. 2d at 46 (emphasis added), *aff'd* 199 F.34d at 1356-57. Plaintiffs nevertheless assert that such a reading would allow the government to "put all policies into effect by signing them 60 days before disclosing them, and thereby insulate them from review." Op. 52. But as the district court found, "even if one were to assume that the date the policy became public was the 'date of implementation' for purposes of the statutory deadline, plaintiffs' claim would still be untimely here because CBP agents resumed conducting interviews – and therefore, their role was known – on July 15." Op. 37 (citing S.Apx.100, ¶ 8). Plaintiffs offer no plausible, let alone clear, reason to conclude that finding was erroneous. Plaintiffs point out that CBP agents had not

obligated to follow controlling circuit precedent.").

yet conducted interviews at Dilley or completed their training to do so before September. Br. 52. Plaintiffs further suggest that this policy was not implemented at Dilley, where they were detained, until September 2019. Br. 51. But the jurisdictional time limit does not begin to run when a written policy is applied in a particular geographical region or to particular individuals; it begins upon "first implementation," that is, the first date the policy became effective. *See AILA*, 199 F.3d at 1355. Thus, the claim is untimely.[13]

Finally, Plaintiffs argue that "Challenged Action No. 1, which 'alleges that officials at the border avoid meaningfully orienting migrants to applicable standard[s] and procedures,'" was timely filed because Plaintiffs filed their suit within 60 days of July 16, 2019, the date the Rule became effective and in Plaintiffs view rendered the "M-444 Form" outdated. Br. 53-54. Again, the district court found otherwise, concluding this alleged policy was first implemented in May 2019, Op. 33, and Plaintiffs present no evidence of clear error. Moreover, as the district court concluded, Plaintiffs' claim really asserts that Defendants should have updated the form once the Rule became effective. Op. 34. But Plaintiffs identify no *written* directive to use an outdated form, and so Plaintiffs' claim that

---

[13] Plaintiffs assert that the fact that "the July MOA was "updated … on January 30, 2020" means their claims are timely. Br. 52 (alteration in original). But the operative complaint was filed December 16, 2019. Apx.1. Plaintiffs' offer no authority for the proposition that a limitations period that has long lapsed somehow is nevertheless satisfied by actions updating a policy at some point in the future.

the agency "fail[ed]" to act is not reviewable. *See AILA*, 18 F. Supp. 2d at 58, *aff'd* 199 F.3d at 1356-57.

**II.  The District Court Did Not Abuse its Discretion By Denying Plaintiffs' Joinder Motions**

Plaintiffs' briefly contend, Br. 48-49, that the district court erred in denying their joinder motions after it found that it lacked jurisdiction over most of the plaintiffs and claims. That is wrong, and the district court did not abuse its discretion in concluding that the Plaintiffs who had been joined who no longer had a valid claim should be dismissed and that the Plaintiffs with pending joinder motions who no longer had viable claims should not be joined to the case. Op. 39-43.

Federal Rule of Civil Procedure 20 states that "Persons may join in one action as plaintiffs if:"

> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

> (B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(1). "Prong one of Rule 20(a) is satisfied when the court concludes that the [p]laintiffs' claims are logically related." *Umbert v. United States*, No. 18-CV-1336, 2019 WL 4305576, at *7 (D.D.C. Sept. 11, 2019). "Prong

two is satisfied if there is some common question of law or fact in the plaintiffs' claims, [although] not all issues have to be common to all plaintiffs.'" *Id*.

Federal Rule of Civil Procedure 21 separately states that while "misjoinder of parties is not a ground for dismissing an action," the court may "[o]n motion or on its own ... on just terms, add or drop a party." Fed. R. Civ. P. 21. This rule allows the Court to dismiss a party if they do not meet the requirements set forth in Rule 20. *M.K. v. Tenet*, 216 F.R.D. 133, 137 (D.D.C. 2002) ("In determining whether the parties are misjoined, the joinder standard of [Rule] 20(a) applies."). Even when parties meet the requirements of Rule 20, Rule 21 permits a court to sever specific parties from an action "upon a sufficient showing of prejudice to the defendant, delay, or potential for jury confusion." *Sadat I. v. Nielsen*, Civ. A. No. 17-1976, 2019 WL 108854, at \*4 n.7 (D.D.C. Jan. 4, 2019).

Applying these straightforward standards the district court determined that all Plaintiffs who had previously been joined to the case who no longer had valid claims should be dismissed. Op. 39. As the court explained, "Now that the lawsuit has been narrowed to consist of a single claim challenging the written requirement that a positive fear determination must be subjected to a Fraud Detection review, individuals who have not had favorable determinations overturned due to that allegedly unlawful process are no longer properly joined in the case." Op. 34-35. Plaintiffs' sole response is to claim that at one point they "satisf[ied] Rule

20(a)(1)'s commonality requirements as they are bringing the exact same claims to Challenged Action 9 that the District Court found timely." Br. 54. But that response completely ignores the district court's authority under Rule 21 to drop parties where the circumstances of the case change. *See Sadat I.*, 2019 WL 108854, at *4 n.7.

Finally, Plaintiffs provide no argument that the district court erred in denying the "five motions for joinder seeking to add a host of other claimants," Op. 41, and so have waived that claim. Even if they preserved that issue, granting joinder would be futile because "prospective plaintiffs' claims would not survive a motion to dismiss because of the statute of limitations," Op. 42, and that was not an "abuse of discretion." *Rubino*, 707 F. App'x at 716. "The Court's granting of a joinder motion does not resuscitate claims that are barred by the statute of limitations[,] [a]nd futility is grounds to deny a motion to join a plaintiff where the prospective plaintiffs' claims would not survive a motion to dismiss because of the statute of limitations." *Breen*, 2018 WL 1509077, at *10; *accord Naartex*, 722 F.2d at 794–95 (finding that denial of the joinder motion was justified because such an action would be futile); *see Lansburgh & Brothers v. Clark*, 127 F.2d 331, 333 (D.C. Cir. 1942) (Rule 20 "does not affect the respective rights of the parties" and "[t]he causes remain as separate and as distinct as if commenced separately").

Accordingly, the district court did not abuse its discretion in denying the motions for joinder and in severing and dismissing previously-joined Plaintiffs from the case.

## CONCLUSION

The Court should affirm the district court's order dismissing this case.

Dated: July 17, 2020

Respectfully submitted,

ETHAN P. DAVIS
Acting Assistant Attorney General

MICHAEL R. SHERWIN
Acting United States Attorney

WILLIAM C. PEACHEY
Director

R. CRAIG LAWRENCE
CHRISTOPHER C. HAIR
Assistant United States Attorneys

By: /s/ *Erez Reuveni*
EREZ REUVENI
Assistant Director
Office of Immigration Litigation
District Court Section
United States Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20530
Phone: (202) 307-4293
e-Mail: erez.r.reuveni@usdoj.gov

555 Fourth Street, NW
Washington D.C. 20530
Phone: (202) 252-2541
e-Mail: christopher.hair@usdoj.gov

*Attorneys for Defendants-Appellees*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion complies with the type-volume limitations of Federal Rule of Appellate Procedure 32 because it contains 12,994 words, including footnotes. This motion complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32 because it has been prepared in a proportionally-spaced typeface using Microsoft Word 14-point Times New Roman font.

*/s/ Erez Reuveni*
EREZ REUVENI
Assistant Director
United States Department of Justice
Civil Division

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2020, I electronically filed the foregoing with the Clerk of Court by using the appellate CM/ECF system, which will provide electronic notice and an electronic link to this document to all attorneys of record.

*/s/ Erez Reuveni*
EREZ REUVENI
Assistant Director
United States Department of Justice
Civil Division
