# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

M.M.V. et al**,**
*Plaintiffs-Appellants,*
v.
WILLIAM P. BARR, et al**,**
*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
Case No. 1:19-cv-02773-ABJ
The Honorable Amy Berman Jackson

## CORRECTED REPLY BRIEF OF PLAINTIFFS-APPELLANTS M.M.V. ET AL.

RAPID DEFENSE NETWORK

Gregory P. Copeland
Sarah T. Gillman
Rapid Defense Network
11 Broadway, Suite 615
New York, NY 10004

GREENBERG TRAURIG LLP

Steven G. Barringer
2101 L. Street, N.W.
Washington, D.C. 20037

Caroline J. Heller
200 Park Ave.
New York, New York 10166

James E. Gillenwater
333 SE 2nd Avenue, #4400
Miami, FL 33131

August 7, 2020

*Attorneys for Plaintiffs-Appellants*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

SUMMARY OF ARGUMENT…………………………………………….…2

ARGUMENT ........................................................................................................3

**I.** The Court Starts with the Presumption of Judicial Review............................3

**II.** This Court Should Reverse the District Court's Dismissal of the Plaintiffs' Adequately Pleaded First Amendment Retaliation Claim Because the Court Has Jurisdiction Over that Claim....................................................................4

**III.** This Court Should Reverse the District Court's Dismissal of Plaintiffs' Fourth Claim for Violations of the APA Because Section 1252(a)(2)(A) Does Not Prohibit Review of Challenges to the *Process* by which the Challenged Actions were Created .........................................................5

**IV.** The Court Has Jurisdiction over Plaintiffs' Remaining Claims Because There is No Clear and Convincing Evidence That Congress Intended to Preclude Judicial Review of The Unwritten Challenged Actions ...................8

    A. The Presumption of Judicial Review Requires a Finding That Congress Did Not Intend Section 1252(a)(2)(A)(iv) to Preclude Review of Unwritten Policies and Procedures .....................................8

    B. The Secret Challenged Actions Were Not "Adopted" by Defendant Cuccinelli Who Lacked the Authority to Do So ................................14

**V.** Section 1252(e)(3) Supplies Jurisdiction for All Plaintiffs' Claims.............15

    A. The Court Erred by Barring Later-Joined Plaintiffs' Claims as to Challenged Action No. 9.....................................................................15

    B. Plaintiffs' Claims Are Timely .........................................................18

        1. Equitable Tolling Applies .......................................................18

        2. Plaintiffs' Claims Were Brought Within 60 Days ....................21

CONCLUSION ...................................................................................................27

**Page(s)**

**Federal Cases**

*Am. Nat. Ins. Co. v. Fed. Deposit Ins. Co.*,
    642 F.3d 1137 (D.C. Cir. 2011)……………………………………………….5

*American Immigration Lawyers Association v. Reno*,
    18 F. Supp. 2d 38 (D.D.C. 1998), *aff'd*, 199 F.3d 1352
    (D.C. Cir. 2000)………………………………………..11, 15, 16, 19, 20, 21

*Andrx Pharm., Inc. v. Biovail Corp. Int'l*,
    256 F.3d 799 (D.C. Cir. 2001)……………………………………………....5

*Breen v. Chao*,
    No. 05-cv-0654, 2018 WL 1509077 (D.D.C. Mar. 27, 2018)…………………..17

*Capital Area Immigrants' Rights Coalition v. Trump*,
    Nos. 19-cv-2117, 19-cv-2530 (TJK), 2020 WL 3542481
    (D.D.C. June 30, 2020)……………………………………………………...1

*Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*,
    316 F. Supp. 3d 349 (D.D.C. 2018)………………………………………...2

*Demore v. Kim*,
    538 U.S. 510 (2003)……………………………………………………….12

*Department of Homeland Security v. Thuraissigiam*,
    Case No. 19-161, 2020 WL 3454809 (U.S. June 25, 2020)………………...11, 12

*E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*,
    950 F.3d 177 (3d Cir. 2020) (per curiam)………………………………………10

*Envtl. Def. v. Leavitt*,
    329 F. Supp. 2d 55 (D.D.C. 2004)………………………………………………1

*Grace v. Barr*,
    19-5013, 2020 WL 4032652 (D.C. Cir. July 17, 2020)…………...7, 13, 16, 26, 27

*Grace v. Whitaker*,
344 F. Supp. 3d 96 (D.D.C. 2018),
*aff'd in relevant part*, 2020 WL 4032652 (D.C. Cir. July 17, 2020)…………...27

*Jafarzadeh v. Duke*,
270 F. Supp. 3d 296, 310 (D.D.C. 2017)………………………………………9, 10

*Khan v. Holder*,
608 F.3d 325 (7th Cir. 2010)……………………………………………………11

*Kucana v. Holder*,
558 U.S. 233 (2010)………………………………………………………...4, 8

*L.M.-M. v. Cuccinelli*,
No. 19-cv-2676, 2020 WL 985376 (D.D.C. Mar. 1, 2020)…………………..6, 14

*Make the Rd. New York v. McAleenan*,
405 F. Supp. 3d 1 (D.D.C. 2019)………………………………………………7, 19

*Make the Road New York v. Wolf*,
962 F.3d 612 (D.C. Cir. 2020)…………………………………..…3, 4, 7

*McNary v. Haitian Refugee Center, Inc.*,
498 U.S. 479 (1991)…………………………………………………………..9

*Mons v. McAleenan*,
No. 19-cv-1593, 2019 WL 4225322 (D.D.C. Sept. 5, 2019)…………………7

*Nat'l Min. Ass'n v. U.S. Army Corps of Engineers*,
145 F.3d 1399 (D.C. Cir. 1998)…………………………………………………1

*O.A. v. Trump*,
404 F. Supp. 3d 109 (D.D.C. 2019)………………………………16, 17, 21

*Padilla v. ICE*,
2019 WL 7486849 (W.D. Wash. Feb. 12, 2019)………………………………10

*Superintendent, Mass. Correctional Institution at Walpole v. Hill*,
472 U.S. 445 (1985)……………………………………………………………13

*U.S. v. Goodner Bros. Aircraft, Inc.*,
966 F.2d 380 (8th Cir. 1992)……………………………………………………1

*United States v. Kwai Fun Wong,*
    575 U.S. 402 (2015)……………………………………………………...18, 19, 20, 21

*Zadvydas v. Davis,*
    533 U.S. 678 (2001)…………………………………………………….7, 12

**Federal Statutes**

5 U.S.C. § 3348(d)(1)…………………………………………………………14

8 U.S.C. § 1225(b)(1)…………………………………………………..6, 12, 25

8 U.S.C. § 1252……………………………………………………...1, 2, 3, 6, 9

8 U.S.C. § 1252(a)………………………………………………………...6

8 U.S.C. § 1252(a)(2)(A)…………………………………...3, 4, 5, 6, 8, 9, 10

8 U.S.C. § 1252(a)(2)(A)(iii)……………………………………………7, 11

8 U.S.C. § 1252(a)(2)(A)(iv)…………………………………...4, 7, 9, 11, 12, 13, 14

8 U.S.C. § 1252(e)(3)……………………………3, 6, 11, 13, 15, 16, 17, 18, 19, 21, 26

8 U.S.C. § 1252(e)(3)(A)…………………………………………………...13

8 U.S.C. § 1252(e)(3)(A)(ii)……………………………………………25, 26

8 U.S.C. § 1252(e)(3)(B)………………………………16, 18, 19, 20, 21, 22, 24, 26

28 U.S.C. § 1331……………………………………………………1, 3, 4, 8

**Rules**

D.C. Cir. Rule 41(b)……………………………………………………2

Fed. R. App. P. 12.1……………………………………………………2

Fed. R. Civ. P. 12(b)(1)……………………………………………………27

**Regulations**

84 Fed. Reg. 33,829 (July 16, 2019)…………………………………...1, 2, 24, 25

**Constitutional Provisions**

U.S. Const. Article I, § 8, cl. 4.................................................................10

U.S. Const. amend. I ..............................................................2, 4, 5

U.S. Const. amend. V.................................................................11

**Other Authorities**

THE FEDERALIST NO. 48 (James Madison) (Clinton Rossiter ed. 1961)...........10

# GLOSSARY OF ABBREVIATIONS

APA .................................................................... Administrative Procedure Act

Apx .................................................................................................Appendix

CAT .............................................................................. Convention Against Torture

CBP...........................................................................Customs and Border Protection

FVRA.........................................................................Federal Vacancies Reform Act

INA .......................................................................Immigration and Nationality Act

Transit Ban .......................................Asylum Eligibility and Procedural Modifications

USCIS........................................................ U.S. Citizenship and Immigration Services

The Court's inquiry starts, as always, with the presumption that executive determinations are subjected to judicial review. Neither the District Court nor Defendants identify any clear or convincing evidence that, in enacting 8 U.S.C. § 1252, Congress intended to preclude judicial review of secret policies and procedures whether written or unwritten. In fact, the text of section 1252, demonstrates that Congress preserved District Court jurisdiction under 28 U.S.C. § 1331 over Plaintiffs' claims. None of the arguments in Defendants' Brief ("Opp. Br.") are to the contrary. Rather, Defendants reiterate legal positions this Court has previously rejected and fail to meaningfully address Plaintiffs' arguments.

Plaintiffs are families—fathers, mothers, and children—who fled persecution and violence in their home countries to seek asylum in the United States. On arrival, Plaintiffs were subjected to the now vacated "Asylum Eligibility and Procedural Modifications" rule, 84 Fed. Reg. 33,829 (July 16, 2019) ("Transit Ban").[1]  Plaintiffs

---

[1] The Transit Ban has been vacated as unlawfully promulgated. *See Capital Area Immigrants' Rights Coalition v. Trump*, Nos. 19-cv-2117, 19-cv-2530 (TJK), 2020 WL 3542481 (D.D.C. June 30, 2020). Under well-settled law, the Transit Ban "has no 'force or effect of law' and therefore is void *ab initio.*" *U.S. v. Goodner Bros. Aircraft, Inc.*, 966 F.2d 380, 384 (8th Cir. 1992) (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 313, (1979)). Vacatur of a rule restores the status quo for **every** party affected by the unlawful rule. *See Nat'l Min. Ass'n v. U.S. Army Corps of Engineers*, 145 F.3d 1399, 1409 (D.C. Cir. 1998); *Envtl. Def. v. Leavitt*, 329 F. Supp. 2d 55, 64 (D.D.C. 2004) (citing *Indep. U.S. Tanker Owners Comm. v. Dole*, 809 F.2d 847, 854 (D.C. Cir. 1987)). As set forth in a Rule 28j letter to this Court dated July 14, 2020,

were also subjected to unlawful, clandestine policies and procedures, both written and unwritten, "to implement the Transit Ban" that eviscerated the "credible fear" process: the Challenged Actions. Apx.475. Compounding their injuries, Defendants retaliated against Plaintiffs for exercising their First Amendment Rights in filing this action. The District Court has jurisdiction to review all of Plaintiffs' claims and this Court should reverse the decision of the District Court and remand this case.

## SUMMARY OF ARGUMENT

Instead of addressing the multiple bases for judicial review advanced in Plaintiffs' brief, Defendants merely reiterate the District Court's conclusion that 8 U.S.C. § 1252 strips jurisdiction over nearly all Plaintiffs' claims. That holding was erroneous, and Defendants' unsupported defense of it fails.

*First*, Defendants ignore the presumption of judicial review.

---

and as Defendants acknowledge, the Challenged Actions were all "issued to implement[] the [Transit Ban]." Opp. Br. at 10. Because the Transit Ban is void *ab initio*, the Challenged Actions are likewise void *ab initio*. *See Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 316 F. Supp. 3d 349, 417 (D.D.C. 2018) (agency action taken "in reliance on the invalid challenged regulation . . . is inherently contrary to law."). Defendants concede that "All Plaintiffs received negative credible fear determinations . . . under the [Transit Ban.]" Opp. Br. at 10. This provides an independent jurisdictional basis over Plaintiffs' claims, as the Challenged Actions were never lawfully adopted, and thus are not governed by 8 U.S.C. § 1252. On July 20, 2020, Plaintiffs' moved the District Court for an indicative ruling to consider this new jurisdictional evidence. If the District Court grants such relief, Plaintiffs will file a motion to remand with this Court. *See* Fed. R. App. P. 12.1; D.C. Cir. Rule 41(b).

2

*Second*, Defendants cannot articulate any basis for barring review of Plaintiffs' adequately-pled First Amendment retaliation claim.

*Third*, Defendants' argument that section 1252 bars Plaintiffs' APA claim challenging the *process* by which secret policies were created and implemented has been squarely addressed and rejected by this Court and others.

*Fourth*, Defendants fail to identify clear and convincing evidence that section 1252 precludes jurisdiction to challenge secret, unlawfully-adopted policies and procedures, as required to displace the presumption of review.

*Fifth*, section 1252(e)(3) independently supplies jurisdiction for all Plaintiffs. The plain language of the statute does not preclude later-filing Plaintiffs from joining a timely-filed action, and the statutory filing-deadline is not a "jurisdictional" limit. Finally, the deadline should run from a policy's implementation, rather than its signing date.

## ARGUMENT

### I.  The Court Starts with the Presumption of Judicial Review.

Defendants take previously rejected, position that "[s]ection 1252(a)(2)(A)… removes from federal courts *any* jurisdiction to review issues 'relating to section 1225(b)(a), other than as explicitly permitted by section 1252(e), and thus eliminates section 1331 as a basis for district-court jurisdiction." Opp. Br. at 22; *see also id.* at

23.[2] To the contrary, as this Court recently stated, "[o]n the question of jurisdiction, we decide this case against the backdrop of 'a familiar principle of statutory construction: the presumption favoring judicial review of administrative action.'" *Make The Rd. New York v. Wolf*, 962 F.3d 612, 623 (D.C. Cir. 2020) (quoting *Guerrero-Lasprilla v. Barr*, ⸺ U.S. ⸺, 140 S. Ct. 1062, 1069 (2020); *Kucana v. Holder*, 558 U.S. 233, 251 (2010)).

The Court in *Make the Road* explained how the presumption is applied "when interpreting a jurisdiction-stripping provision." *Id.* at 624. This Court should follow the same well-reasoned analysis and hold that section 1252(a)(2)(A)'s "text and statutory structure expressly preserve the district court's jurisdiction under 28 U.S.C. § 1331" over Plaintiffs' claims. *Id.* at 624-25.

## II. This Court Should Reverse the District Court's Dismissal of the Plaintiffs' Adequately Pleaded First Amendment Retaliation Claim Because the Court Has Jurisdiction Over that Claim.

Defendants do not deny either that the District Court has jurisdiction over a properly pleaded First Amendment Retaliation claim or that the court was required to "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be

---

[2] Respondents made the same argument verbatim in *Make the Road New York v. Wolf*, (Case No. 19-5298, Document #1821238, Br. at 23-24), and this Court rejected it. *See* 962 F.3d 612, 624-25 (D.C. Cir. 2020).

derived from the facts alleged." *Am. Nat. Ins. Co. v. Fed. Deposit Ins. Co.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks omitted); *see* Opp. Br. at 32-33. There is likewise no dispute that the First Amendment extends to noncitizens and protects them from retaliatory punishment. Nor do Defendants contest that Plaintiffs properly stated the elements of a First Amendment Claim.

Defendants instead reiterate the District Court's erroneous decision that the First Amendment claim was an attack on the Challenged Action, over which section 1252(a)(2)(A)(iv) barred review. Opp. Br. at 32-33 (citing Apx.481). The District Court based its decision solely on a limited reading of Plaintiffs' request for relief and, in doing so, inexplicably ignored the preceding paragraphs in the Second Amended Complaint, which specified all elements of a First Amendment Claim. Apx.58-61. Thus, the District Court erred in failing to: (1) liberally construe the allegations in the Second Amended Complaint; and (2) give Plaintiffs the benefit of all inferences as required in considering dismissal. *Andrx Pharm., Inc. v. Biovail Corp. Int'l*, 256 F.3d 799, 805 (D.C. Cir. 2001). Plaintiffs adequately pleaded the elements of Plaintiffs' independent First Amendment claim.

**III. This Court Should Reverse the District Court's Dismissal of Plaintiffs' Fourth Claim for Violations of the APA Because Section 1252(a)(2)(A) Does Not Prohibit Review of Challenges to the *Process* by which the Challenged Actions were Created.**

Defendants' assertion that the APA does not *confer* jurisdiction (Opp. Br. at 33-35) is irrelevant, as Section 1252(a)(2)(A)(iv) does not *strip* jurisdiction over

Plaintiffs' Fourth Claim for violations of the APA ("APA Claim"). *Make the Road*, 962 F.3d at 624-25. Defendants are similarly incorrect that Plaintiffs must identify a written policy underlying their APA Claim (Opp. Br. at 34-35), as that puts the cart before the horse. Any requirement to identify a written policy derives from section 1252(e)(3), but this presupposes that section 1252(a)(2) applies to strip jurisdiction. It does not. Thus, the Court need not reach section 1252(e)(3).

Defendants do not refute Plaintiffs' specific arguments in their Brief. Instead, Defendants generalize that section 1252(a) "sweeps broadly" and thus must include the APA Claim. Opp. Br. at 33.[3] Yet Defendants do not provide any rationale for why the APA claim falls within the ambit of the jurisdiction-limiting language in § 1252(a)(2)(A). Nor could they; Courts have consistently ruled that sections 1252(a)(2)(A)(i), (ii) and (iii) address individual, as applied challenges to determinations made under section 1225(b)(1). *See* Pls.' Br. at 31-33.

Here, Plaintiffs are not challenging the outcome of USCIS's decision making. The crux of the APA claim is that, in implementing the Challenged Actions, Defendants failed to comply with the APA's rulemaking requirements. This is a

---

[3] Defendants' reliance on *L.M.-M. v. Cuccinelli*, No. 19-cv-2676 (RDM), 2020 WL 985376 (D.D.C. Mar. 1, 2020), fails because the Court was addressing motions for summary judgment, and thus had to determine if it had jurisdiction before it addressed the merits. *Id.*, at *8. Indeed, *L.M.-M.* supports Plaintiffs' position that the District Court erred in lumping all the claims together and failing to analyze whether it had jurisdiction over each claim. *Id.* at * 9.

challenge to the *process* by which the Challenged Actions were created, not to their substance. Apx. 64-65. Defendants do not deny that. "Where plaintiffs challenge an overarching agency action as unlawful—…a systemic failure…—Supreme Court and Circuit precedent dictate that such a challenge does not fall within Section 1252's jurisdictional bar." *Mons v. McAleenan*, No. 19-cv-1593, 2019 WL 4225322, at *4 (D.D.C. Sept. 5, 2019) (citing *Zadvydas v. Davis*, 533 U.S. 678 (2001)); *see also Grace v. Barr*, 19-5013, 2020 WL 4032652, at *5 (D.C. Cir. July 17, 2020) (holding, in case challenging credible fear policies, that "[n]othing in the asylum seekers' complaint required the district court to examine how USCIS officers 'appl[ied]' the challenged policies 'to individual aliens.'" (quoting 8 U.S.C. § 1252(a)(2)(A)(iii))); *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 176-77 (D.D.C. 2015) (district courts have jurisdiction to review challenges to policies underlying detention). This Court has ruled twice this year, despite Respondents' erroneous assertions to the contrary, that section 1252(a)(2)(A)(iii) only "forbids review of individual aliens' credible fear determinations, not suits like this that challenge credible fear policies on their face." *Grace*, 2020 WL 4032652, at *5; *see also Make The Rd.*, 962 F.3d at 624-26 & n.7.

As set forth in the opening Brief, Section 1252(a)(2)(A)(iv) is similarly inapplicable. Pls.' Br. at 32-33. *See Make the Rd. New York v. McAleenan*, 405 F. Supp. 3d 1, 26 (D.D.C. 2019), *rev'd on other grounds*, 962 F.3d 612; *Mons*, 2019

7

WL 4225322, at *4.[4]

### IV. The Court Has Jurisdiction over Plaintiffs' Remaining Claims Because There is No Clear and Convincing Evidence That Congress Intended to Preclude Judicial Review of The Unwritten Challenged Actions.

#### A. The Presumption of Judicial Review Requires a Finding That Congress Did Not Intend Section 1252(a)(2)(A)(iv) to Preclude Review of Unwritten Policies and Procedures.

While Defendants acknowledge that the presumption of judicial review can only be overcome by clear and convincing evidence of congressional intent to preclude judicial review, in responding to Plaintiffs' argument that an unwritten policy or procedure cannot be adopted, Defendants object to Plaintiffs' definition of "adopted" and assert that the word has more than one definition. Opp. Br. at 25-26. In doing so, Defendants make Plaintiffs' case for them. If "adopted" has different meanings in this context, then the statute using that word cannot be read to clearly and unambiguously preclude review of unwritten policies and procedures. If Congress had meant "adopted" to include informal, unwritten policies, Congress would have stated it. *See Kucana*, 558 U.S. at 252 (because the presumption of

---

[4] In an attempt to distinguish *Make the Road*, Defendants here—represented by some of the same attorneys who represented the government in that case—point to this Court's order reversing and remanding the district court's order. Opp. Br. at 35 n.8. In *Make the Road*, this Court held that the district court **had jurisdiction** under 28 U.S.C. § 1331 over the plaintiffs' APA claims, but that the Secretary's decision was not subject to APA standards for agency decision-making, which is not the issue in this case. 962 F.3d at 633-634.

judicial review is well-settled, "the Court assumes that 'Congress legislates with knowledge of' it" (quoting *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 496 (1991)). "It therefore takes 'clear and convincing evidence' to dislodge the presumption." *Id.* (internal quotation marks omitted).[5]

Indeed, it defies logic that Congress intended to preclude review of unwritten policies and procedures. Congress in effect would have been inviting the government to hide its policies by not committing them to writing. That cannot have been Congress' intention.

First, section 1252 channels most claims relating to removal orders to an administrative process. But it offers no avenue for Plaintiffs to raise the procedural and constitutional claims asserted in this action. Thus, limiting judicial review of the Unwritten Challenged Actions is not clearly contemplated by § 1252(a)(2)(A)(iv). *See McNary*, 498 U.S. at 493. The court agreed in *Jafarzadeh v. Duke*, rejecting the government's argument that § 1252 barred review of plaintiffs' constitutional and statutory claims challenging the lawfulness of a secret USCIS program and holding that "Courts should not assume that a claim must proceed

---

[5] Moreover, as set forth in Plaintiffs' Brief, a bar on judicial review of unwritten policies would be unconstitutional. Pls.' Br. at 38-41. Defendants misapprehend Plaintiffs' argument, accusing Plaintiffs of trying to prosecute a new claim. This argument is not a new claim but is support for the rationale that Congress could not have meant 8 U.S.C. § 1252(a)(2)(A) to strip the courts of the power to review, nor Plaintiffs' ability to challenge, secret policies contrary to law.

through the administrative process if doing so would 'foreclose all meaningful judicial review.'" 270 F. Supp. 3d 296, 310 (D.D.C. 2017) (quoting *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 489 (2010)); *see also E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 180 (3d Cir. 2020) (per curiam) (section 1252 does not bar jurisdiction where a claim "raises the age-old question: 'If not now, when?' MISHNAH, PIRKEI AVOT 1:14. For [noncitizens] who are challenging their removal from the United States, the answer is usually 'later.' But not always. And not here.… If 'later' is not an option, review is available now."). Similarly, in *Padilla v. ICE*, the court rejected the government's argument that 8 U.S.C. § 1252(a)(2)(A) barred judicial review because "defendants ha[d] not adopted any formal procedure or policy," holding that the government could not "insulate itself from review merely by declining to . . . commit its policies to writing." 2019 WL 7486849, at *1 (W.D. Wash. Feb. 12, 2019). Defendants fail to distinguish either *Jafarzadeh* or *Padilla*.

Second, Congress could not have meant to allow the executive branch to shield its acts from judicial review by adopting secret, unwritten policies. Such conduct encroaches upon Congress's sole authority to "establish a uniform Rule of Naturalization," U.S. CONST. art I, § 8, cl. 4, and would eviscerate judicial review. Indeed, the very reason that the presumption of judicial review is consistently upheld by the Supreme Court is because it is deeply rooted in our history and the separation

10

of powers. To guard against arbitrary government, our founders knew, elections are not enough: "An elective despotism was not the government we fought for." THE FEDERALIST NO. 48, at 311 (James Madison) (Clinton Rossiter ed. 1961). In a government "founded on free principles," no one person, group, or branch may hold all the keys of power over a private person's liberty or property. *Id.* Instead, power must be set against power, "divided and balanced among several bodies ... checked and restrained by the others." *Id.*

Defendants assert that *American Immigration Lawyers Association v. Reno*, 18 F. Supp. 2d 38 (D.D.C. 1998), *aff'd*, 199 F.3d 1352 (D.C. Cir. 2000) ("*AILA*"), forecloses Plaintiffs' arguments on this point. Opp. Br. at 40. To the contrary, the district court in *AILA* addressed neither whether § 1252(a)(2)(A)(iv) stripped judicial review of unwritten policies and procedures—the issue in this appeal—nor described its interplay with § 1252(e)(3). *See AILA*, 18 F. Supp. 2d 38. Further, *AILA* concerned individual, as-applied challenges, presumably subject to the separate jurisdictional bar in § 1252(a)(2)(A)(iii). *See* 199 F.3d at 1356.[6]

*Department of Homeland Security v. Thuraissigiam,* Case No. 19-161, 2020 WL 3454809 (U.S. June 25, 2020), is also inapplicable. *Thuraissigiam* addressed whether the Suspension Clause or the Due Process Clause of the Fifth Amendment

---

[6] For this reason, *Khan v. Holder*, 608 F.3d 325, 331 (7th Cir. 2010) (Op. Br. at 44), which cites *AILA* without analysis, is similarly distinguishable.

required further review of the petitioner's as-applied challenges to his final order of removal, which, no matter how many different times or ways Defendants state it, is not the issue here. 2020 WL 3454809, at *3; *see also id.* at *1, *23 ("The question presented is 'whether, as applied to respondent, Section 1252(e)(2) is unconstitutional under the Suspension Clause.") (Breyer, J, concurring in the judgment) (quoting Pet. for Cert. i). Further, *Thuraissigiam* did not, as Defendants suggest, alter the well-settled law that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)); *see Zadvydas*, 533 U.S. at 690. Finally, the Supreme Court's decision is based upon the fact that the petitioner received process to which he was entitled under section 1225(b)(1). Here, in Defendants' telling, *there would no be avenue* for Plaintiffs to challenge unwritten policies and procedures. To preserve the principle that ours is a government of laws, not of men, and that we submit ourselves to rulers only if under rules, this simply cannot be the law.

Whether Congress *may* provide for expedited removals without judicial review is distinct from whether Congress has, in fact, done so. No convincing evidence demonstrates Congress' clear intent to preclude courts from reviewing unwritten policies and procedures based on section 1252(a)(2)(A)(iv).

Defendants lean heavily on the District Court's statement that to the extent there was any ambiguity as to section 1252(a)(2)(A)(iv), section 1252(e)(3) demonstrates that Congress knew how to differentiate between written and unwritten materials because that exception specifically mentions review of "'a written policy directive, written policy guideline, or written procedure.'" Apx.490 (quoting 8 U.S.C. § 1252(e)(3)(A)(i)). Defendants, however, fail to rebut Plaintiffs' articulation of the correct reading of the statutory framework: as section 1252(e)(3)(A) provides an *exception* to § 1252(a)(2)(A)(iv)'s jurisdictional bar—it cannot be read to impose a *further limitation* on the plain language of § 1252(a)(2)(A)(iv). *See Grace*, 2020 WL 4032652, at *6 ("section 1252(a)(2)(A)[] and section 1252(e)(3) [must be read] in harmony with each other" (internal quotation marks omitted)). Otherwise, these provisions, read together, would create the absurd result of insulating all unwritten "policies and procedures" from judicial scrutiny. Defendants cite no convincing evidence that Congress intended to create such a despotic scheme. *See, e.g.*, *Superintendent, Mass. Correctional Institution at Walpole v. Hill*, 472 U.S. 445, 450, (1985) (O'CONNOR, J.) (the Constitution may well preclude granting "an administrative body the unreviewable authority to make determinations implicating fundamental rights."). Accordingly, because the exception to section 1252(a)(2)(A)(iv) provided in section 1252(e)(3)(A) applies no

limitation as to review of unwritten policies, the District Court had jurisdiction to review the Unwritten Challenged Actions.

### B. The Secret Challenged Actions Were Not "Adopted" by Defendant Cuccinelli, Who Lacked the Authority to Do So.

Even if section 1252(a)(2)(A)(iv) could apply to the Challenged Actions, because Defendant Kenneth T. Cuccinelli lacked the authority to adopt them, they were not "adopted" pursuant to section 1252(a)(2)(A)(iv) and the District Court was not precluded from reviewing them.[7] Defendants again parrot the District Court's erroneous holding without addressing Plaintiffs' arguments. The District Court had Judge Moss's ruling in *L.M.-M v. Cuccinelli* in hand before it issued its decision, and thus should have considered that Defendant Cuccinelli's actions are void *ab initio* under 5 U.S.C. § 3348(d)(1). Cuccinelli's lack of authority is part of the jurisdictional analysis. Further, if the policies purportedly "adopted" by Defendant Cuccinelli have no force and effect—even if formalized in writing—the jurisdiction-limiting language of section 1252(a)(2)(A)(iv) cannot be triggered because Defendant Cuccinelli could not have legally "adopted" any of the Challenged

---

[7] Contrary to Defendants' contention, Plaintiffs did argue that the reference to "Attorney General" in section 1252(a)(2)(A)(iv) means only the Attorney General. Opp. Br. at 30-31. Plaintiffs' Brief states: "Plaintiffs asserted, and the District Court agreed, that since 2003, after the creation of the Department of Homeland Security, the 'adopted' language in Section 1252(a)(2)(A)(iv) has referred to adoption by the DHS Secretary and/or Director of USCIS, rather than the Attorney General personally." Pls.' Br. at 41-42.

Actions—written or unwritten. Therefore, contrary to Defendants' response, Plaintiffs did not have to assert a FVRA claim to advance this argument.

The District Court erred in finding that it lacked jurisdiction to review the Challenged Actions—written or unwritten—taken by Defendant Cuccinelli.

## V. Section 1252(e)(3) Supplies Jurisdiction for All Plaintiffs' Claims.

### A. The Court Erred by Barring Later-Joined Plaintiffs' Claims as to Challenged Action No. 9.

Defendants acknowledge that all Plaintiffs named in the original complaint filed timely claims as to Challenged Action No. 9, sufficient to confer jurisdiction. Opp. Br. at 45. But Defendants fail to meaningfully engage with Plaintiffs' argument that this also confers jurisdiction over all later-joined Plaintiffs' claims. *Id.*

Instead, Defendants simply invoke *AILA*'s "dismissal of 'appeals by the individual aliens who filed late,'" *id.* (quoting 199 F.3d at 1356-57), without accounting for the critical distinction identified by Plaintiffs. In *AILA*—unlike here—there was no timely, viable claim that the later filing Plaintiffs could have joined, such that dismissal was appropriate. *See* Pls.' Br. at 45. Defendants' representation regarding "the existence of plaintiffs with claims that were timely," in *AILA*, Opp. Br. at 46, cannot be squared with the facts of that case. All plaintiffs' claims were dismissed with prejudice in *AILA* and the district court entered "final judgment . . . against all named plaintiffs." 18 F. Supp. 2d at 62. Dismissal of all

15

plaintiffs' claims was affirmed on appeal. *See* 199 F.3d at 1357. *AILA* thus lends Defendants no support.

Similarly, Defendants ignore Plaintiffs' textual argument for permitting joinder to a timely-filed action. Section 1252(e)(3)'s 60-day filing deadline is specific to the filing of the "action" relative to the date the challenged policy is implemented, it is not tied to particular individuals' claims. 8 U.S.C. § 1252(e)(3)(B). It is undisputed that a viable "action" was timely-filed as to Challenged Action No. 9.

Defendants offer no response to this dispositive textual argument. To the contrary, Defendants acknowledge that the focus of § 1252(e)(3)'s time limitation is on the filing date of the action rather than "'a particular alien['s]'" claims. Opp. Br. at 45 (quoting *AILA*, 18 F. Supp. at 47). As this Court recently held in *Grace*, "section 1252(e)(3)'s purpose [is] to authorize, as its title makes clear, '[c]hallenges on [the] validity of the [expedited-removal] *system*.'" 2020 WL 4032652, at *8 (emphasis added; alteration in original). Once a timely-filed "action" challenging the "system" has been initiated, there is no textual, precedential, or logical basis for barring additional plaintiffs from joining that systemic challenge.

Defendants next argue that "Plaintiffs confuse 'Article III standing' with 'statutory jurisdiction.'" Opp. Br. at 46-47. But the case Plaintiffs rely on for their "statutory jurisdiction" argument, *O.A. v. Trump*, 404 F. Supp. 3d 109, 139 (D.D.C.

2019) (Pls.' Br. at 47), evinces no such confusion. In that analogous decision, Judge Moss applied the plain language of 8 U.S.C. § 1252(e)(3) and "hornbook law" to hold that where, as here, "multiple plaintiffs assert claims seeking precisely the same declaratory or injunctive relief . . . and where the court has *subject matter jurisdiction* to consider the claims of *at least one* of those plaintiffs, the court need not address its *jurisdiction* to consider the claims of the remaining plaintiffs." *O.A.*, 404 F. Supp. 3d at 139 (emphases added). "As a result, Plaintiffs need only demonstrate that the Court has jurisdiction under § 1252(e)(3) over the claims of at least one of the individual plaintiffs." *Id.*

*Breen v. Chao*, No. 05-cv-0654, 2018 WL 1509077 (D.D.C. Mar. 27, 2018), relied on by both the District Court and Defendants, Opp. Br. at 46, only bolsters Plaintiffs' position that § 1252(e)(3) permits subsequent joinder to a timely-filed action. In *Breen*, the court held that "prospective plaintiffs' claims . . . relate[d] back to the original complaint, which defendants do not dispute was timely filed," because (i) "Defendants had 'fair notice' of the scope of the case and understood that the [challenged] action had affected numerous individuals," and (ii) "permitting the prospective plaintiffs to join the case and resolve their disputes on the merits would serve the interests of justice." 2018 WL 1509077 at *11. The same is true here with respect to the Joinder Plaintiffs, and Defendants offer no facts or argument to the contrary. Defendants' own authorities cut against their argument that granting

"joinder would be futile" because the Joinder Plaintiffs' claims are "'barred by the statute of limitations.'" Opp. Br. at 53.[8]

For these unrebutted reasons, the District Court erred in finding that it lacked jurisdiction over all Plaintiffs' claims as to Challenged Action No. 9.

### B.     Plaintiffs' Claims Are Timely.

#### 1.     Equitable Tolling Applies.

Defendants recognize that under *United States v. Kwai Fun Wong*, 575 U.S. 402 (2015), they must show that § 1252(e)(3) "expressly 'conditions' jurisdiction on compliance with its timing requirement" in order to establish that "equitable tolling is unavailable." Opp. Br. at 47-48. But Defendants fail to explain or provide any support for their conclusory, one-line assertion that § 1252(e)(3) meets this test. *Id.* Defendants' primary argument appears to be that, merely because § 1252(e)(3)(B) *contains* a timing requirement, it constitutes an express jurisdictional condition. *Id.*

Accepting that argument, every statutory time bar would be jurisdictional, and thus exempt from equitable tolling—the opposite of the Supreme Court's holding in *Kwai Fun Wong*. *See* 575 U.S. at 403 ("most time bars, even if mandatory and emphatic, are nonjurisdictional").

---

[8] Defendants' assertion that "Plaintiffs provide no argument that the district court erred in denying [joinder] . . . and so have waived that claim," Opp. Br. at 53, is a non-starter. *See* Pls.' Br. at 48-49.

As noted in Plaintiffs' Brief, "'[t]he Government must clear a high bar to establish that a statute of limitations is jurisdictional' and identify a 'clear statement' by Congress to that effect." Pls.' Br. at 50 (quoting *Kwai Fun Wong*, 575 U.S. at 403). Defendants make no attempt to identify a "clear" jurisdictional statement in § 1252(e)(3)(B). Nor could they, because "section 1252(e)(3)—is not couched in jurisdictional terms." *Make the Rd.*, 405 F. Supp. 3d at 26 (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006) (explaining that a statute that "does not speak in jurisdictional terms or refer in any way to . . . jurisdiction" is not jurisdictional)).

To obscure how clearly they fail to meet the "high bar" established by the Supreme Court in 2015 in *Kwai Fun Wong*, Defendants attempt to erect a lower hurdle by straining to import a limitation from the district court's 1998 decision in *AILA*. *See* Opp. Br. at 47. Defendants fail to explain how *AILA*'s holding that section 1252(e)(3)(B)'s "60–day requirement is jurisdictional," 18 F. Supp. 2d at 47, either meets the test set out in *Kwai Fun Wong* or otherwise survives that subsequent, controlling decision. It does not.

In *AILA*, the district court found section § 1252(e)(3)(B)'s deadline to be jurisdictional simply

> because Congress designed the statute so that the 60 days ran from a fixed point, the initial implementation of the challenged provisions, rather than from the date of [their] application . . . to a particular alien.

*Id.* This Court affirmed without any discussion of equitable tolling or whether § 1252(e)(3)(B) was jurisdictional, characterizing the 60-day filing requirement only as a "statutory deadline." *AILA*, 199 F.3d at 1356. Neither decision assessed whether § 1252(e)(3)(B) contains a "clear statement indicating that [it] is the rare statute of limitations that can deprive a court of jurisdiction," as subsequently required by binding precedent in *Kwai Fun Wong*. 575 U.S. at 410; *see also id.* at 403 ("Congress must do something special . . . to tag a statute of limitations as jurisdictional and so prohibit a court from tolling it.").

Moreover, in *Kwai Fun Wong*, the Supreme Court *expressly rejected* an argument similar to the logic the district court applied in the 1998 *AILA* decision—*i.e.*, 1252(e)(3)(B)'s filing deadline is jurisdictional because it is not focused on particular claimants:

> The dissent argues that nonjurisdictional time limits typically mention claimants, whereas § 2401(b) does not. But none of our precedents have either said or suggested that such a difference matters. Rather, in case after case, we have emphasized another distinction—that jurisdictional statutes speak about jurisdiction, or more generally phrased, about a court's powers.

575 U.S. at 411 n.4 (internal citations omitted).[9]

---

[9] Moreover, Defendants' reliance on *AILA*'s holding that § 1252(e)(3)(B) is jurisdictional because it focuses on the filing of an action rather than the claims of "a particular alien," Opp. Br. at 45, contradicts Defendants' other argument against joinder. Either § 1252(e)(3)(B) is not jurisdictional and equitable tolling applies or it is jurisdictional—because it is focused on the filing of an action rather than on

20

*AILA*'s holding that § 1252(e)(3)(B)'s 60-day filing deadline is jurisdictional does not survive *Kwai Fun Wong*, and Defendants' failure to point to the clear jurisdictional statement required by the Supreme Court results in the application of the default "'general rule' that equitable tolling is available in suits against the Government." 575 U.S. at 412. This provides an additional jurisdictional basis for Plaintiffs' claims, and the district court erred in finding equitable tolling unavailable.

2.      Plaintiffs' Claims Were Brought Within 60 Days.

Plaintiffs identified two Challenged Actions in their Brief—No. 1 and No. 2— for which the Court erroneously used a written policy's signing or issuance date as the triggering date from which § 1252(e)(3)'s 60-day filing clock began to run rather than when the policies were "implemented," as the plain language of the statute demands. Pls.' Br. at 51-54. Defendants' attempts to defend both Challenged Actions conflict with the plain language of the statute and applicable case law.

***Challenged Action No. 2***. As for "Challenged Action No. 2, 'which alleges that the officers conducting the asylum interviews have not been adequately trained,'" Opp. Br. at 48, the District Court found that "[t]he clock started to run on July 10, 2019," when a Memorandum of Agreement ("MOA") between the Customs

---

particular aliens' claims—and thus allows for jurisdiction over later-filing aliens who join a timely-filed action. *See O.A.*, 404 F. Supp. 3d at 139. Defendants cannot have it both ways.

and Border Protection ("CBP") and USCIS providing new training guidelines "was signed by both parties." Apx.503-05.[10] Defendants offer no defense of this finding, other than to claim that "Plaintiffs do not explain why [it] was clearly erroneous." Opp. Br. at 48. On the contrary, as noted in Plaintiffs' Opening Brief, the district court's finding is erroneous because § 1252(e)(3)(B)'s plain language triggers the running of the 60-day deadline from a policy's "implementation," not the date on which it was signed. Pls.' Br. at 51-52.

Unable to defend the District Court's reliance on the MOA's signing date, Defendants attempt a sort of "harmless error" argument, asserting that even if the District Court was incorrect, Challenged Action No. 2 was first implemented on "July 15, 2019"—one day outside the 60-day filing window. Opp. Br. at 49. This argument finds no support in the record below. The timeline relied on by Defendants comes from a supplemental declaration of Ashley B. Caudill-Mirillo, Deputy Chief of the USCIS's Asylum Division. Apx.129. Regarding the MOA, Ms. Caudill-Mirillo attested:

> The first cohort of Border Patrol Agents completed training in May 2019, and conducted credible fear interviews from June 5, 2019 to June 20, 2019. Between June 20, 2019 and July 11, 2019, CBP and USCIS developed the [MOA] . . . After the [MOA] was signed on July 11,

---

[10] The MOA provides: "The purpose of this . . . MOA[] is to set forth terms under which USCIS and CBP can foster collaboration . . . for the purposes of training and hearing credible fear (CF) claims and making determinations through the interview process." Dkt. 59-1 at 68, ¶ 3.

> 2019, Border Patrol Agents resumed conducting interviews on July 15, 2019. ***After being trained***, Border Patrol Agents began conducting interviews at the South Texas Family Residential Center in Dilley, on or about September 9, 2019.

*Id.* (emphasis added).

This timeline forecloses Defendants' argument. The credible fear interviews conducted "from June 5, 2019 to June 20, 2019" cannot be used as the MOA's implementation date because the MOA did not exist at that time. *Id.* Nor can July 15, 2019, the date on which "Border Patrol Agents resumed conducting interviews." *Id.* Nothing about Ms. Caudill-Mirillo's declaration can be read to suggest that, in the *four days* between the signing of the MOA and the "resum[ption]" of the interviews conducted before the MOA's creation, the agents received training under the MOA such that it was implemented on July 15. The word "resumed" confirms the opposite—the agents resumed conducting the interviews just as they had before, under their pre-MOA training. And if any doubt remained, the next line confirms that the MOA was not implemented until September 9, when agents first began conducting interviews "*after being trained*" under the MOA. *Id.* (emphasis added).

Plaintiffs' argument, therefore, is not that that the MOA was implemented when it was first applied to them, as Defendants characterize it. Opp. Br. at 50. Plaintiffs' argument is that the record evidence confirms that Challenged Action No. 2 was implemented "on or about September 9, 2019," the date on which agents first began conducting interviews after being trained under the MOA. The district court

erred in counting the 60-day filing deadline from the MOA's signing date rather than the date on which it was implemented, as the plain language of § 1252(e)(3)(B) demands.

***Challenged Action No. 1***. There is no dispute that there is a writing underlying "Challenged Action No. 1, which 'alleges that officials at the border avoid meaningfully orienting migrants to applicable standard[s] and procedures.'" Opp. Br. at 50. That writing is an "M-444 Form," issued on May 17, 2019, which purports to provide "notice [to asylum seekers] explain[ing] what will happen while the U.S. Government is considering your case, what rights you have, and what may happen to you." Apx.133.

It is similarly undisputed that, when the Transit Ban was implemented on July 16, 2019, the M-444 form ceased to provide accurate information to asylum seekers regarding "what will happen" to them under the new regulatory framework ushered in by the Transit Ban. Most notably, the M-444 form makes no mention of the fact that, under the Transit Ban, applicants will be summarily found not to have a credible fear of persecution if they have not previously applied for asylum in a country they passed through en route to the U.S., and instead will be assessed under a higher "reasonable fear" standard. Pls.' Br. at 12-13. Additionally, the M-444 form provides that "a specially trained asylum officer will interview you," Apx.133, when

as noted above, the regime implemented by the Transit Ban allowed for interviews by inadequately-trained CBP agents.

Further, it is not disputed that, notwithstanding the M-444 form becoming inaccurate on July 16, 2019, Defendants "continued us[ing] the form" after that date. Dkt. 97 at 33. The only dispute, then, is about the implications of that action. Plaintiffs argue that, beginning on July 16, 2019, Defendants' provision of the M-444 form to asylum applicants became unlawful for the first time because it failed to provide accurate information concerning the asylum process to interviewees, as required by 8 U.S.C. § 1225(b)(1). Apx.501. Plaintiffs filed a timely challenge within 60 days of Defendants' first action "in violation of law," as required by § 1252(e)(3)(A)(ii).

Defendants' argument, as the District Court framed it, is that "Defendants deny that there was any new policy – much less, a written policy – regarding the continued use of the Form M-444." Apx.502. According to Defendants, Plaintiffs were required to file a legal challenge to Form M-444 within 60 days of its issuance in May 17, 2019—in other words, before it was unlawful. The District Court accepted Defendants' argument. *Id.* Defendants offer only a half-hearted defense of the District Court's decision, arguing that "Plaintiffs present no evidence of clear error." Opp. Br. at 50. But as explained in Plaintiffs' Brief, the District Court's holding was erroneous for multiple reasons.

25

*First*, requiring Plaintiffs to challenge Form M-444 within 60 days of its issuance on May 17, 2019 under § 1252(e)(3)(B)—before it was "in violation of law" and thus before it was even challengeable under § 1252(e)(3)(A)(ii)—is an untenable, damned if you do, damned if you don't, proposition. As this Court recently held regarding "section 1252(e)(3)," courts have an "'obligation to interpret the statute's provisions . . . in harmony with each other.'" *Grace*, 2020 WL 4032652, at *6 (internal quotation marks omitted). Requiring asylum applicants to challenge a written policy *before* it becomes unlawful and finding all claims to be time-barred *after* its application becomes unlawful would render section 1252(e)(3) a dead letter and allow the government to apply unlawful policies in perpetuity.

*Second*, Plaintiffs are not challenging Defendants' "fail[ure] to act," as Defendants' argue. Opp. Br. at 50-51. On July 16, 2019, Defendants began affirmatively acting, unlawfully, by distributing inaccurate information to asylum applicants via form M-444. Such a "sub silentio" change from providing accurate information to inaccurate information is challengeable. *Grace*, 2020 WL 4032652, at *10 ("The government insists that no change occurred, that is, that the two standards are identical. The asylum seekers have the better of the argument.").

*Finally*, in accepting Defendants' "den[ial] that there was any new policy— much less, a written policy—regarding the continued use of the Form M-444" the District Court impermissibly "accept[ed] the government's theory of the case: that

the credible fear policies are not 'new.'" *Grace v. Whitaker*, 344 F. Supp. 3d 96, 119-20 (D.D.C. 2018) (rejecting identical argument), *aff'd in relevant part*, 2020 WL 4032652. Rather than accepting Defendants' argument, in resolving a Rule 12(b)(1) motion the District Court was required to "'assume that on the merits the plaintiffs would be successful in their claims.'" *Id.* (internal quotation marks omitted). Defendants offer no defense of this independent error, which warrants reversal.

## **CONCLUSION**

Plaintiffs respectfully request that this Court reverse the decision of the District Court and remand this case for further proceedings.

Dated: August 7, 2020                    Respectfully Submitted,

RAPID DEFENSE NETWORK        *Counsel for Plaintiffs-Appellants*
Gregory P. Copeland                  GREENBERG TRAURIG, LLP
Sarah T. Gillman                       /s/ Steven G. Barringer
11 Broadway, Suite 615            By: Steven G. Barringer
New York, NY 10004                2101 L Street, N.W., Suite 1000
Tel: (212) 843-0910                 Washington, D.C. 20037
gregory@defensenetwork.org   barringers@gtlaw.com
sarah@defensenetwork.org

                                           Caroline J. Heller
                                           200 Park Avenue
                                           New York, NY 10166
                                           hellerc@gtlaw.com

                                           James E. Gillenwater
                                           333 SE 2d Avenue, #4400
                                           Miami, FL 33131
                                           gillenwaterj@gtlaw.com

*Counsel for Plaintiffs-Appellants*

## Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1. This document complies with the Type-Volume limitations of Fed. R. App. P. 32(a)(7)(B) because, taking into account the exemptions provided in Fed. R. App. P. 32(f), this document contains 6,498 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally-spaced typeface using Microsoft Word 2007 in 14-point Times New Roman font.

Dated: August 7, 2020

/s/ *Steven G. Barringer*
*Attorney for Appellants*

# CERTIFICATE OF SERVICE

I, Steven Barringer, hereby certify that on August 7, 2020, a true and correct copy

of the foregoing Corrected Reply Brief of Plaintiffs-Appellants M.M.V. *et al.* was

served electronically upon the below-listed parties via email:


Erez Reuveni, Esq.
Assistant Director
Office of Immigration Litigation
District Court Section
United States Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20530
erez.r.reuveni@usdoj.gov

Christopher C. Hair, Esq.
Assistant United States Attorney
Civil Division
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C.  20530
christopher.hair@usdoj.gov